1   KAMALA D. HARRIS
    Attorney General of California
2   MARC A. LEFORESTIER
    Supervising Deputy Attorney General
3   KEVIN A. CALIA
    Deputy Attorney General
4   State Bar No. 227406
     1300 I Street, Suite 125
5    P.O. Box 944255
     Sacramento, CA 94244-2550
6    Telephone:  (916) 322-6114
     Fax:  (916) 324-8835
7    E-mail:  Kevin.Calia@doj.ca.gov
    *Attorneys for Defendants Attorney General Kamala*
8   *D. Harris and Secretary of State Alex Padilla*

9                   IN THE UNITED STATES DISTRICT COURT

10                 FOR THE NORTHERN DISTRICT OF CALIFORNIA

11

12

13

14   **VINZENZ J. KOLLER, an individual and**        5:16-cv-07069-EJD
     **Presidential Elector,**

15                                      Plaintiff,

16                  v.                               **OPPOSITION TO MOTION FOR**
                                                     **TEMPORARY RESTRAINING ORDER**
                                                     **AND PRELIMINARY INJUNCTION**
17
     **JERRY BROWN, in his official capacity as**    Date:
18   **Governor for the State of California;**       Time:
     **KAMALA HARRIS, in her official capacity**     Dept:         4
19   **as Attorney General for the State of**        Judge:        The Honorable Edward J.
     **California; ALEX PADILLA, in his official**                 Davila
20   **capacity as Secretary of State for the State** Trial Date:   N/A
     **of California; and DOES 1-10,**               Action Filed:  December 9, 2016
21
                                    Defendants.
22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

Introduction ................................................................................................................... 1

Statement of Facts ......................................................................................................... 1

Applicable Legal Standards .......................................................................................... 2

Argument ....................................................................................................................... 3

     I.     Although Koller Has Not Shown a Likelihood of Success on the Merits, He Does Seek to Raise Substantial Constitutional Questions ..................................... 3

     II.    Koller Fails to Meet His Burden to Demonstrate Irreparable Harm ...................... 7

     III.   The Balance of Hardships and the Public Interest Are Dependent on Resolution of the Merits ...................................................................................... 10

Conclusion ................................................................................................................... 11

i

# TABLE OF AUTHORITIES

<u>**Page**</u>

C ASES

*Alliance for the Wild Rockies v. Cottrell*
   632 F.3d 1127 (9th Cir. 2011)............................................................2, 7

*Breidenthal v. Edwards*
   46 P. 469 (Kan. 1896) .................................................................6

*Caribbean Marine Servs. Co. v. Baldridge*
   844 F.2d 668 (9th Cir. 1988)..........................................................7

*Coalition for Econ. Equity v. Wilson*
   122 F.3d 718 (9th Cir. 1997)..........................................................3

*Cupola v. Bay Area Rapid Transit*
   5 F. Supp. 2d 1078 (N.D. Cal. 1997) ...............................................3

*DISH Network Corp. v. FCC*
   653 F.3d 771 (9th Cir. 2011)..........................................................3

*Lockheed Missile & Space Co. v. Hughes Aircraft Co.*
   887 F. Supp. 1320 (N.D. Cal. 1995) ...............................................2

*McPherson v. Blacker*
   146 U.S. 1 (1892)................................................................4, 7

*Opinion of Justices No. 87*
   34 So. 2d 598, 600 (Ala. 1948) .....................................................6

*Purcell v. Gonzalez*
   549 U.S. 1 (2006).................................................................11

*Ray v. Blair*
   343 U.S. 214 (1952).............................................................4, 5, 7

*Spreckels v. Graham*
   194 Cal. 516 (1924) ................................................................7

*State ex rel. Beck v. Hummel*
   80 N.E.2d 899 (Ohio 1948)..........................................................6

*Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co.*
   240 F.3d 832 (9th Cir. 2001)..........................................................2

*Thalheimer v. City of San Diego*
   645 F.3d 1109 (9th Cir. 2011)........................................................3

ii

# TABLE OF AUTHORITIES
### (continued)

Page

*Winter v. Natural Res. Def. Council, Inc.*
555 U.S. 7 (2008) ...............................................................................................2, 3, 8, 10

**STATUTES**

United States Code
Title 3 § 7 .................................................................................................................3
Title 3 § 15 ...............................................................................................................5

California Elections Code
§ 6901........................................................................................................................4
§ 6902........................................................................................................................4
§ 6904........................................................................................................................3
§ 6906................................................................................................................*passim*
§ 7100........................................................................................................................4
§ 7300........................................................................................................................4
§ 8300........................................................................................................................5
§ 8303........................................................................................................................5
§ 18002.............................................................................................................1, 2, 8, 9

Mich. Comp. Laws
§ 168.47.....................................................................................................................9

Minn. Stat.
§ 208.46.....................................................................................................................9

N.C. Gen. Stat.
§ 163-212...................................................................................................................9

Okla. Stat.
§ 26-10-108...............................................................................................................9

**CONSTITUTIONAL PROVISIONS**

United States Constitution
Amendment XII .....................................................................................................3, 5
Article II, § 1 ..................................................................................................3, 4, 5, 6

**OTHER AUTHORITIES**

Beverly J. Ross & William Josephson, *The Electoral College and the Popular
Vote*, 12 J. L. & POLITICS 665, 678 (1996) .................................................4, 5, 6, 7

FairVote, "Faithless Electors," http://www.fairvote.org/faithless_electors....................5

iii

# TABLE OF AUTHORITIES
### (continued)

Page

The Federalist No. 68 (Alexander Hamilton) (available at
https://www.congress.gov/resources/display/content/The+Federalist+Papers)..........................4

Robert J. Delahunty, *Is the Uniform Faithful Presidential Electors Act
Constitutional?*, 2016 Cardoza L. Rev. 165, 189 (2016) ...........................................................6

U.S. Senate, Senate Manual, S. Doc. 1-113 at 1339-89 (available at
https://www.gpo.gov/ fdsys/pkg/SMAN-113/pdf/SMAN-113.pdf) ......................................5, 6

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

iv

**INTRODUCTION**

Hillary Clinton and Tim Kaine won California's popular vote for the offices of President and Vice President by approximately 4.3 million votes.  Accordingly, when the Electoral College meets on December 19, 2016, to select the next President of the United States, California's presidential electors for the Democratic Party, including Plaintiff Vinzenz Koller, will cast their votes.  However, Koller seeks an injunction from this Court to unbind him, and other California electors, from the duty imposed by California's Elections Code to vote for the Democratic candidates.  He contends that by Constitutional design, electors must be free to vote as they wish.

The injunction should be denied.  While the legal questions Koller seeks to raise are substantial, in no event has Koller shown a strong likelihood of success on the merits.  His allegations indicate that in the end he may comply fully with California law; even if he does not, he offers no basis for concluding that his ballots will not be counted; and any prospect of prosecution is highly speculative.  Under these circumstances, Koller cannot demonstrate either any likelihood of irreparable harm, and neither the balance of harms or the public interest favors an injunction.

**STATEMENT OF FACTS**

Plaintiff Vinzenz J. Koller is a Presidential Elector for the Democratic Party in California.  Compl., 1:22-23, ¶¶ 10, 11.  The democratic nominees for President and Vice President won the nationwide and California popular votes.  Compl. ¶ 13.  However, Koller anticipates that Republican candidates Donald Trump and Michael Pence will win the majority of the Electoral College vote when the Electoral College meets on December 19, 2016.  Compl. ¶ 13.

Koller alleges that he "must be allowed to exercise his discretion and free will to vote for whomever he believes to be the most qualified and fit for the office of President and Vice President," based on his knowledge on the day the Electoral College meets.  Compl. ¶ 22.  He intends "to not necessarily vote for Hillary Clinton and Tim Kaine," but to deliberate and potentially choose another qualified candidate.  Compl. ¶ 25.  Koller believes Elections Code sections 6906 and 18002 prevent him from deliberating and from selecting candidates of his choice.  Compl. ¶¶ 21, 24.

1

California Elections Code section 6906 reads as follows:

The electors, when convened, if both candidates are alive, shall vote by ballot for that person for President and that person for Vice President of the United States, who are, respectively, the candidates of the political party which they represent, one of whom, at least, is not an inhabitant of this state.

California Election Code section 18002 reads as follows:

Every person charged with the performance of any duty under any law of this state relating to elections, who willfully neglects or refuses to perform it, or who, in his or her official capacity, knowingly and fraudulently acts in contravention or violation of any of those laws, is, unless a different punishment is prescribed by this code, punishable by fine not exceeding one thousand dollars ($1,000) or by imprisonment pursuant to subdivision (h) of Section 1170 of the Penal Code for 16 months or two or three years, or by both that fine and imprisonment.

Koller challenges the constitutionality of these Elections Code provisions on the grounds that the First and Twelfth Amendments guarantee electors freedom to vote for the candidates of their choice. Compl. ¶ 26. Koller has named Attorney General Kamala D. Harris and Secretary of State Alex Padilla as defendants and seeks injunctive relief to prevent alleged violations of Koller's constitutional rights. Compl. ¶¶ 3, 4, 33.

## APPLICABLE LEGAL STANDARDS

The standard for issuing a temporary restraining order is generally the same as the standard for issuing a preliminary injunction. *See Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001); *Lockheed Missile & Space Co. v. Hughes Aircraft Co.*, 887 F. Supp. 1320, 1323 (N.D. Cal. 1995). In order to prevail on a motion for a preliminary injunction, "a plaintiff must show (1) a strong likelihood of success on the merits, (2) the possibility of irreparable injury to plaintiff if preliminary relief is not granted, (3) a balance of hardships favoring the plaintiff, and (4) that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Alternatively, the Ninth Circuit has held that "[a] preliminary injunction is appropriate when a plaintiff demonstrates that serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011) (internal citation omitted). A plaintiff must make a showing of all four *Winter* factors even under the alternative sliding scale test. *Id.* at 1132, 1135. And a plaintiff must make a showing as to all four even in a

2

case raising issues under the First Amendment.  *Thalheimer v. City of San Diego*, 645 F.3d 1109, 1128 (9th Cir. 2011).

A temporary restraining order or preliminary injunction "is an extraordinary remedy never awarded as a matter of right.  In each case, courts must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief.  In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction."  *Winter*, 555 U.S. at 24 (internal quotations and citations omitted); *see also DISH Network Corp. v. FCC*, 653 F.3d 771, 776-77 (9th Cir. 2011).  Because a preliminary injunction is an extraordinary remedy, the moving party must establish the elements necessary to obtain injunctive relief by a "clear showing."  *Winter*, 555 U.S. at 22.  A plaintiff's burden is particularly heavy when, as here, it seeks to enjoin operation of a statute because "it is clear that a state suffers irreparable injury whenever an enactment of its people or their representatives is enjoined."  *Coalition for Econ. Equity v. Wilson*, 122 F.3d 718, 719 (9th Cir. 1997).  "A strong factual record is therefore necessary before a federal district court may enjoin a State agency."  *Cupola v. Bay Area Rapid Transit*, 5 F. Supp. 2d 1078, 1085 (N.D. Cal. 1997).  In this case, Koller cannot meet his burden and the Court should therefore deny the motion for a preliminary injunction.

**ARGUMENT**

**I.     ALTHOUGH KOLLER HAS NOT SHOWN A LIKELIHOOD OF SUCCESS ON THE MERITS, HE DOES SEEK TO RAISE SUBSTANTIAL CONSTITUTIONAL QUESTIONS**

Under the Constitution, the people do not vote directly for President or Vice President.  Rather, "[e]ach state shall appoint, in such manner as the Legislature thereof may direct, a number of electors equal to the whole number of Senators and Representatives to which the State may be entitled in Congress."  U.S. Const. art. II, § 1.  On a date chosen by Congress, "[t]he electors shall meet in their respective states and vote by ballot for President and Vice-President."  U.S. Const. amend. XII.  Thus, on December 19, 2016, California's 55 electors will meet in Sacramento to perform their constitutional duty.  3 U.S.C. § 7; Cal. Elec. Code § 6904.

3

1    "Courts and scholars agree that when the Framers drafted and urged adoption of the

2    Constitution, they assumed that the presidential electors would be citizens who would exercise

3    discretion and judgment in casting their votes for President."  Beverly J. Ross & William

4    Josephson, *The Electoral College and the Popular Vote*, 12 J. L. & POLITICS 665, 675 (1996);

5    *see also Ray v. Blair*, 343 U.S. 214, 229 n.16 (1952) (quoting *McPherson v. Blacker*, 146 U.S. 1,

6    36 (1892)).  For example, in Federalist Paper No. 68, Alexander Hamilton stated that it was

7    desirable that the "immediate election [of the president] should be made by men most capable of

8    analyzing the qualities adapted to the station, and acting under circumstances favorable to

9    deliberation, and to a judicious combination of all the reasons and inducements which were

10   proper to govern their choice."  The Federalist No. 68 (Alexander Hamilton) (available at

11   https://www.congress.gov/resources/display/content/The+Federalist+Papers).  Based on this

12   history, Justice Jackson dissented in *Ray*, writing:  "No one faithful to our history can deny that

13   the plan originally contemplated, what is implicit in its text, that electors would be free agents, to

14   exercise an independent and nonpartisan judgment as to the men best qualified for the Nation's

15   highest offices."  343 U.S. at 232 (Jackson, J., dissenting).

16       Any such original conception of how the Electoral College would operate, however, is not

17   the end of the inquiry.  The Constitution expressly gives the states power to determine the manner

18   in which their electors will be appointed, U.S. Const. art. II, § 1, and the Supreme Court has held

19   that the states' power is broad.  *McPherson v. Blacker*, 146 U.S. 1, 35 (1892) ("the appointment

20   and mode of appointment of electors belong exclusively to the states," which have "plenary

21   power" over these matters).  California has chosen to allow political parties to nominate electors.

22   *See*, *e.g.*, Cal. Elec. Code §§ 6901, 7100, 7300.  The candidates for President and Vice President

23   of the parties are then placed on the ballot, and the electors appointed are those associated with

24   the party whose candidates received the most votes from by the voters of the state.  *See*, *e.g.*, Cal.

25   Elec. Code §§ 6901, 6902.  California law has, since at least 1937, *see* former Pol. Code § 1317

26   (1937), instructed the state's electors to vote for the candidates "of the political party that they

27   represent."  Cal. Elec. Code § 6906 (electors "shall vote by ballot for that person for President

28   and that person for Vice President of the United States, who are, respectively, the candidates of

4

the political party which [the electors] represent").  Electors like Koller should know about these instructions when they agree to be nominated as electors by a specific political party.[1]

The Supreme Court has held that it is within the state's constitutional power to require electors to make a pledge to vote for specified candidates.  *Ray*, 343 U.S. at 231.  Specifically, "the Twelfth Amendment does not bar a political party from requiring [a] pledge to support the nominees of [the party's] National Convention."  *Id.*  "A state's or a political party's exclusion" of candidates for elector who will "not pledge to support the party's nominees" is an "exercise of the state's right to appoint electors in such manner, subject to possible constitutional limitations, as it may choose."  *Id.* at 227.

No court appears to have ever held that it is constitutional to *enforce* a pledge made by an elector.  In *Ray*, the Supreme Court expressly left this question open.  The Court ruled that "even if such promises of candidates for the electoral college are legally unenforceable because violative of an assumed constitutional freedom of the elector under the Constitution, Art. II, § 1, to vote as he may choose in the electoral college, it would not follow that the requirement of a pledge in the primary is unconstitutional."  343 U.S. at 230.  And, though there is significant history of electors who have voted for candidates that did not win their state's popular vote, there have apparently been no efforts to punish any of these electors.  Ross & Josephson, *supra*, at 678-80 (cataloguing history of "faithless electors"); *see also* U.S. Senate, Senate Manual, S. Doc. 1-113 at 1339-89 (available at https://www.gpo.gov/fdsys/pkg/SMAN-113/pdf/SMAN-113.pdf) (recording electoral votes counted between 1789 and 2013); FairVote, "Faithless Electors," http://www.fairvote.org/faithless_electors (cataloguing "faithless electors").  Congress has the constitutional duty and statutory power to count electoral votes.  U.S. Const. amend. XII ("The President of the Senate shall, in the presence of the Senate and House of Representatives, open all the certificates and the votes shall then be counted.");  3 U.S.C. § 15.  The votes of the "faithless electors" have always been counted in Congress.  Ross & Josephson, *supra*, at 679 (noting that

---

[1] California law contains procedures that allow electors to be nominated without pledging themselves to vote for particular candidates for President and Vice President.  *See, e.g.*, Cal. Elec. Code §§ 8300, 8303.  Koller did not seek to follow these procedures.

"Congress counted each of these faithless votes"; only known precedent for not counting electoral

votes involves three votes cast for Horace Greeley after he died between popular vote and

Electoral College vote); *see also* U.S. Senate, Senate Manual, S. Doc. 1-113 at 1339-89 (available

at https://www.gpo.gov/ fdsys/pkg/SMAN-113/pdf/SMAN-113.pdf) (recording electoral votes

counted between 1789 and 2013); *id.* at 1353 ("By resolution of the House, 3 votes cast for

Horace Greeley were not counted.").

Some have argued that it would be unconstitutional for a state to enforce a pledge or

instructions given to an elector.  *See*, *e.g.*, Robert J. Delahunty, *Is the Uniform Faithful

Presidential Electors Act Constitutional?*, 2016 Cardoza L. Rev. 165, 189 (2016) (arguing

Constitution does not empower the state to deprive electors "of all possibility of exercising their

discretion in casting their votes").  Similar reasoning has been adopted by some state courts that

have considered controversies surrounding presidential electors.  *See State ex rel. Beck v.

Hummel*, 80 N.E.2d 899, 909 (Ohio 1948) (each Ohio elector "may vote as he pleases for any

person eligible for the office"; "It is only by force of a moral obligation, not a legal one, that the

presidential electors pledged to certain candidacies fulfill their pledges after election."); *Opinion

of Justices No. 87*, 34 So. 2d 598, 600 (Ala. 1948) ("When the legislature has provided for the

appointment of electors its powers and functions have ended.  If and when it attempts to go

further and dictate to the electors the choice which they must make for president and vice-

president, it has invaded the field set apart to the electors by the Constitution of the United States,

and such action cannot stand."); *Breidenthal v. Edwards*, 46 P. 469, 470 (Kan. 1896) (under

Twelfth Amendment electors are "under no legal obligation to support [particular candidates], but

they may vote for any eligible citizen of the United States" and "neither the secretary of state nor

any court may interfere with them in the performance of their duties").

Others have argued that states have the constitutional power to bind their electors to vote

for particular candidates as part of the power to designate the "manner" of the electors'

appointment, which the Constitution gives exclusively to the states.  *See* U.S. Const. art. II, § 1.

*See*, *e.g.*, Ross & Josephson, *supra*, at 678 ("The states' constitutional power to appoint electors

would appear to include the power to bind them."); *id.* at 696 ("the Court's language and

6

1    reasoning in *Ray v. Blair* strongly imply that state laws directly binding electors to a specific

2    candidate are constitutional").  And some courts have reasoned that the history of electors

3    faithfully voting for the candidates of the political party that won the most votes in the state's

4    election supports a state's power to make presidential electors' duties ministerial.  For example,

5    the California Supreme Court stated:

6          [Presidential electors] have no tenure of office other than transient; they have no
           duties to perform which involve the exercise of judgment or discretion in the slightest
7          degree, and neither are they vested with any portion of the governmental powers of
           sovereignty, either legislative, executive, or judicial.  Their office, if it be an office,
8          has no real existence except for a few hours on the second Monday in January
           following the presidential election.  Their sole function is to perform a service which
9          has come to be nothing more than clerical—to cast, certify and transmit a vote
           already predetermined.  It was originally supposed by the framers of our national
10         constitution that the electors would exercise an independent choice, based upon their
           individual judgment.  But in practice so long established as to be recognized as part of
11         our unwritten law, they have been "selected under a moral restraint to vote for some
           particular person who represented the preferences of the appointing power" (Miller,
12         Const. U. S., p. 149), "simply to register the will of the appointing power in respect of
           a particular candidate" (*McPherson* [146 U.S. at 36]).
13

14   *Spreckels v. Graham*, 194 Cal. 516 (1924).

15         These conflicting views can be seen to raise substantial questions regarding the

16   constitutionality of any potential enforcement of the instructions in California Elections Code

17   section 6906.  However, in no event has Koller shown a strong likelihood of success on the

18   merits.  Moreover, he is not entitled to an injunction for the additional reasons described below,

19   that he cannot show that enforcement is likely, that the balance of hardships tips sharply in his

20   favor, or that an injunction would serve the public interest.  *All. for the Wild Rockies*, 632 F.3d at

21   1134-35.

22   **II.    KOLLER FAILS TO MEET HIS BURDEN TO DEMONSTRATE IRREPARABLE HARM**

23         Actual, immediate, and irreparable injury is a prerequisite to preliminary injunctive

24   relief.  *See, e.g.*, *All. for the Wild Rockies*, 632 F.3d at 1135.  "Speculative injury does not

25   constitute irreparable injury sufficient to warrant granting a preliminary injunction.  A plaintiff

26   must do more than merely allege imminent harm sufficient to establish standing; a plaintiff must

27   *demonstrate* immediate threatened injury as a prerequisite to preliminary injunctive relief."

28   *Caribbean Marine Servs. Co. v. Baldridge*, 844 F.2d 668, 674 (9th Cir. 1988) (emphasis in

                                               7

1    original) (citations omitted).  The mere possibility of harm is not enough.  *Winter*, 555 U.S. at

2    22.  Here, Koller cannot meet these requirements, as he bases his claims on a speculative series of

3    events that have not occurred and may never occur.

4         Koller cannot say with certainty what will happen in the days leading up to December 19,

5    when the electors are scheduled to meet in California, 49 other states, and the District of

6    Columbia, much less what will happen on that day or afterward.  Koller admits he does not even

7    know for whom he will cast his electoral votes on December 19.  Compl. ¶ 22.  His alleged desire

8    to consider casting his votes for someone other than Hillary Clinton and Tim Kaine appears to

9    depend on other electors casting their votes for someone other than Donald Trump and Michael

10   Pence, in contravention of the popular vote in their respective states and their allegiance to the

11   Republican Party, in numbers that are without historical precedent and that are unlikely to

12   occur.  *See* Compl. ¶ 13 (acknowledging that Donald Trump and Michael Pence "will win the

13   majority of electoral college votes on December 19, 2016, if the electors in each state vote

14   consistent with the popular vote in their respective states").  Indeed, Koller admits that he may

15   cast his electoral vote for the Democratic Presidential Nominees, Hillary Clinton and Tim

16   Kaine.  *See., e.g.*, ECF No. 4 at 7 ("While he may vote for [Clinton and Kaine] . . ."); *id.* at 5

17   ("Mr. Koller is a long-time and loyal Democrat"); Compl. ¶ 22 (acknowledging that Clinton and

18   Kaine "won the majority of the vote in California and are qualified for office").  If Koller casts

19   his vote for Hillary Clinton and Tim Kaine, there would be no violation of any duty under

20   California law and no basis for any enforcement action under California Elections Code section

21   18002.

22        Finally, even if Koller remains on the Democratic Party's slate of electors and chooses to

23   cast his vote for candidates other than Hillary Clinton and Tim Kaine, there is no basis for

24   concluding that he will suffer any harm.  California law does not invalidate an electoral ballot or

25   direct the state to remove an elector if the elector violates the instructions of Elections Code

26   section 6906.  Unlike other states, California has not adopted a state law that mandates automatic

27   resignation or forfeiture of the elector's office when an elector votes contrary to his or her pledge.

28

8

*Cf.* Mich. Comp. Laws § 168.472;[2] Minn. Stat. § 208.463;[3] N.C. Gen. Stat. § 163-2124;[4] Okla. Stat. § 26-10-108.5.[5]  Accordingly, no matter how Koller casts his electoral ballot on December 19, his ballot will be submitted to Congress, along with the rest of California's electoral votes, for determination of the next President.

Koller argues that he could be subject to potential consequences under Elections Code section 18002.  But Koller provides no evidence that any elector has ever been prosecuted or threatened with prosecution under section 18002.  Moreover, if section 18002 applies to electors at all, it seeks to punish only a person who "willfully neglects or refuses to perform" a "duty under any law of this state relating to elections" or who "knowingly and fraudulently acts in contravention of those laws." Cal. Elec. Code § 18002.  Koller's characterization of his intent to deliberate over his electoral vote does not suggest "willful" or "fraudulent[]" criminal conduct. Nor has he offered any evidence that anyone has suggested there is a risk he would be prosecuted under this section.  And, if he were prosecuted, he would have a full and fair opportunity to defend himself on any available statutory or constitutional grounds.

Any potential harm to Koller is thus highly speculative.  Such a "possibility" of harm, based on a series of speculations, provides no basis for the "extraordinary" relief of a restraining

---

[2] Mich. Comp. Laws § 168.47 ("Refusal or failure to vote for the candidates for president and vice-president appearing on the Michigan ballot of the political party which nominated the elector constitutes a resignation from the office of elector, his vote shall not be recorded and the remaining electors shall forthwith fill the vacancy.")

[3] Minn. Stat. § 208.46 ("Except as otherwise provided by law of this state other than this chapter, the secretary of state may not accept and may not count either an elector's presidential or vice-presidential ballot if the elector has not marked both ballots or has marked a ballot in violation of the elector's pledge.")

[4] N.C. Gen. Stat. § 163-212 ("refusal or failure to vote for the candidates of the political party which nominated such elector shall constitute a resignation from the office of elector, his vote shall not be recorded, and the remaining electors shall forthwith fill such vacancy as hereinbefore provided.")

[5] Okla. Stat. §26-10-108 ("In the event any Presidential Elector fails to meet at the Governor's office at the prescribed time or refuses or fails to vote for the persons nominated for the offices of President and Vice President by the political party which nominated the Presidential Elector, it shall be the duty of the Electors present at the time and place aforesaid to appoint a person to fill such vacancy.")

9

1    order or injunction seeking to disrupt the long-settled process for casting electoral votes in

2    California.  *See* Winter, 555 U.S. at 22.

3    **III.    THE BALANCE OF HARDSHIPS AND THE PUBLIC INTEREST ARE DEPENDENT ON RESOLUTION OF THE MERITS**

4

5           In order to obtain a preliminary injunction, Koller must also demonstrate that the balance of

6    hardships favors him, and that an injunction is in the public interest.  *Winter*, 555 U.S. at 20.  In

7    this case, these two factors are closely connected to each other, and are also closely related to the

8    resolution of the merits.  Koller asserts that the defendants and the State of California will suffer

9    no hardship if an injunction is granted because having unbound electors "is the design of the

10   Constitution," and that an injunction will serve the public interest in the election of "fit,

11   competent, and qualified candidates" to the offices of President and Vice-President.  ECF No. 4 at

12   15-16.  But this analysis of the equities and the public interest presumes that Koller is correct on

13   the merits of the lawsuit.

14          If Koller is correct that electors' discretion is constitutionally protected, denial of an

15   injunction would impose a hardship upon Koller because Elections Code section 6906 would

16   require him to vote for candidates he does not prefer.  In addition, the lack of an injunction would

17   adversely affect the public interest because California electors would be prevented from

18   performing their full functions, and the presidential and vice-presidential elections would not

19   proceed according to the constitutional design embodied in the Twelfth Amendment.  An

20   injunction would presumably free Koller, and perhaps other California electors, to conduct

21   meaningful deliberations, and would allow them to vote according to their conscience.  An

22   injunction would not, however, affect the status of electors in other states, and so would be

23   inherently limited in effect.

24          This balance of hardships, and the public interest considerations, are inverted if Elections

25   Code sections 6906 and 18002 are instead constitutional, and thus properly may bind electors to

26   select the "candidates of the political party which they represent."  Under this understanding of

27   the merits, Koller would not be harmed by the denial of an injunction, because he would have no

28   right to exercise discretion as an elector.  The denial of an injunction would also serve the public

10

1    interest by allowing longstanding and valid Elections Code provisions to continue in effect,

2    preserving the stability of the electoral process, and having electors continue to honor voter

3    expectations by casting their ballots for the candidates preferred by the majority of California

4    voters.  *See, e.g., Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006) (per curiam) (when faced with a

5    request to interfere with a state's election laws "just weeks before an election," federal courts are

6    "required to weigh, in addition to the harms attendant upon issuance or nonissuance of an

7    injunction, considerations specific to election cases," which often counsel restraint).  In contrast,

8    an injunction against valid Elections Code provisions would substantially harm the public interest

9    and serve no apparent good.

10                                              **CONCLUSION**

11           There is a robust national discussion regarding the issues surrounding the Electoral College

12   process.  Now, on the eve of the Electoral College meeting on December 19, is not the

13   appropriate time to seek to force judicial intervention in that discussion on an emergency

14   basis.  For the foregoing reasons, defendants Attorney General Harris and Secretary of State

15   Padilla respectfully request that the motion for a temporary restraining order and preliminary

16   injunction be denied.

17

18   Dated:  December 14, 2016                    Respectfully Submitted,

19                                                KAMALA D. HARRIS
                                                  Attorney General of California
20                                                MARC A. LEFORESTIER
                                                  Supervising Deputy Attorney General
21

22

23                                                        /s/ Kevin A. Calia
                                                  KEVIN A. CALIA
24                                                Deputy Attorney General
                                                  *Defendants Attorney General Kamala D.*
25                                                *Harris and Secretary of State Alex Padilla*
     SA2016104833
26

27

28

                                                      11

# CERTIFICATE OF SERVICE

Case Name:   **Koller, Vinzenz, J. v. Jerry          No.     5:16-cv-07069
                Brown, et al.**

I hereby certify that on December 14, 2016, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**OPPOSITION TO MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on December 14, 2016, at Sacramento, California.

|                        |                        |
| ---------------------- | ---------------------- |
| Eileen A. Ennis        | */s/ Eileen A. Ennis*  |
| Declarant              | Signature              |

SA2016104833
12526455.doc