MELODY A. KRAMER, SBN 169984
KRAMER LAW OFFICE, INC.
4010 Sorrento Valley Blvd., Ste. 400
San Diego, California 92121
Telephone (855) 835-5520
kramerlawinc@gmail.com

ANDREW J. DHUEY, SBN 161286
456 Boynton Avenue
Berkeley, CA 94707
Telephone (510) 528-8200
dhueyaj@yahoo.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VINZENZ J. KOLLER, an individual and Presidential Elector,<br><br>Plaintiffs,<br><br>v.<br><br>JERRY BROWN, in his official capacity as Governor for the State of California; KAMALA HARRIS, in her official capacity as Attorney General for the State of California; ALEX PADILLA, in his official capacity as Secretary of State for the State of California; and DOES 1-10;<br><br>Defendants. | Case No. 5:16-cv-07069<br><br>**OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**<br><br>Date: August 17, 2017<br>Time: 9:00 a.m.<br>Dept. 4<br>Hon. Edward J. Davila |

1

**TABLE OF CONTENTS**

2

INTRODUCTION ............................................................................................................... 1

FACTUAL SUMMARY ..................................................................................................... 1

ARGUMENT ..................................................................................................................... 14

I.    DEFENDANTS AND INTERVENOR'S RULE 12(B)(1) MOTIONS TO DISMISS
      SHOULD BE DENIED. ............................................................................................. 14
      A.    Standard for review ......................................................................................... 14
      B.    Plaintiff had, and continues to have, standing in this case. ............................ 15
            1.    This Court has already acknowledged Plaintiff's standing to challenge the
                  constitutionality of elector binding statutes. ......................................... 17
            2.    This case involves personal injury to Plaintiff, not a "personal dilemma"
                  of a public official. ................................................................................. 17

      C.    This lawsuit is not moot because the issues are "capable of repetition, yet escaping
            review." ........................................................................................................... 19
            1.    Issues "capable of repetition, yet escaping review" are an established
                  exception to mootness rules. ................................................................... 20
            2.    Plaintiff need not prove with certainty his future status as an elector for
                  the "capable of repetition, yet escaping review" exception to apply. ....... 21
            3.    The Court and all of the parties have acknowledged the importance of the
                  issues raised in this case. ......................................................................... 23

II.   LEAVE TO AMEND SHOULD BE FREELY GIVEN, IF NEEDED ................................. 24

CONCLUSION ................................................................................................................... 25

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

# TABLE OF AUTHORITIES

2

## Constitution

3

4

U.S. Constitution, Art. II, Sec. 1 ...........................................................................................2,10,16

U.S. Constitution, Twelfth Amendment...........................................................2,7,10,12,13,14,16

5

## Federal Statutes & Rules

6

7

18 U.S.C. § 594 ...............................................................................2,3,4,8,9,12,13,14,16

28 U.S.C. § 1331 .................................................................................................................2

28 U.S.C. § 1391(b)............................................................................................................2

28 U.S.C. § 2201 ................................................................................................................2

28 U.S.C. § 2201(a) .......................................................................................................... 10

28 U.S.C. § 2202 ................................................................................................................2

42 U.S.C. § 1983 ......................................................................................... 1, 16, 20, 21

42 U.S.C. § 1988 .............................................................................................................. 13

Fed.R.Civ.P. 12(b)(1) ............................................................................................ 1,14,15,25

Fed.R.Civ.P. 12(b)(6) ......................................................................................................... 1

Fed.R.Civ.P. 15(b)................................................................................................... 15, 24

8

9

10

11

12

13

## California Statutes

14

15

Elections Code § 6906................................................................... 1,2,3,6,7,9,10,12,13,16

Elections Code § 18002.................................................... 1,2,4,6,7,9,10,12,13,14,16,17,19

Elections Code § 18540 .............................................................................2,3,4,8,9,13,14,16

16

17

## Caselaw

18

*Abdurrahman v. Dayton*, 2016 WL 7428193 (USDC Minn. 2016)..............................................21

19

*Anderson v. Celebrezze*, 460 U.S. 780 (1983).........................................................................20,22

*Baca v. Hickenlooper*, 2016 WL 7384286 ...............................................................................17

20

*Boyd v. District of Columbia*, 465 F.Supp.2d 1 (D.D.C.2006) ...................................................25

*Brown v. Chote*, 411 U.S. 452 (1973) ...............................................................................20,22

21

*Canez v. Guerrero*, 707 F.2d 443 (9th Cir. 1983) .......................................................................21

*Chenault v. Carter*, 332 S.W.2d 623 (Ky. 1960) .......................................................................18

22

*City of South Lake Tahoe v. Cal. Tahoe Reg'l Planning Agency*, 625 F.2d 231

    (9th Cir.1980) ....................................................................................................18

23

*Davis v. Guam*, 785 F.3d 1311 (9th Cir.2015) ............................................................................16

*Drake v. Obama*, 664 F.3d 774 (9th Cir. 2011) ........................................................................18

24

*Dunn v. Blumstein*, 405 U.S. 330 (1972)..................................................................................20

*FEC v. Wisc. Right to Life, Inc.*, 551 U.S. 449 (2007) ..............................................................21,22

25

*Foman v. Davis*, 371 U.S. 178 (1962).......................................................................................24

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167 (2000)............................16

26

*Fund v. Leake*, 524 F.3d 427 (4th Cir. 2008) .............................................................................22

*Gilliam v. Dept. of Justice*, 128 F.Supp.3d 134 (D.C. 2015) .......................................................25

27

*Golden v. Zwickler*, 394 U.S. 103 (1969)..................................................................................20

28

*Green Party v. Reagan,* 838 F.3d 983 (9th Cir. 2016) ...................................................21

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ....................................................16

*Mandel v. Bradley*, 432 U.S. 173 (1977)...............................................................20,22

*Moore v. Ogilvie*, 394 U.S. 814 (1969) ....................................................................20

*Murphy v. Hunt*, 455 U.S. 478 (1982).......................................................................21

*Ray v. Blair*, 343 U.S. 214 (1952)....................................................................8,11,18

*Roe v. Wade*, 410 U.S. 113 (1973) .........................................................................20

*Rosario v. Rockefeller*, 410 U.S. 752 (1973)...............................................................20

*Safe Air for Everyone v. Meyer*, 373 F.3d 1035 (9th Cir. 2004) ........................................15

*Saridakis v. United Airlines*, 166 F.3d 1272 (9th Cir. 1999)..............................................15

*Savage v. Glendale Union High Sch.*, 343 F.3d 1036 (9th Cir. 2003), *cert. denied*, 541 U.S. 1009 ......................................................................................15

*SEC v. Medical Committee for Human Rights*, 404 U.S. 403 (1972) .................................20

*Smith v. Indiana*, 191 U.S. 138 (1903)......................................................................18

*Southern Pacific Terminal Co. v. ICC*, 219 U.S. 498 (1911)...........................................20

*Spencer v. Kemma*, 523 U.S. 1 (1998) ....................................................................21

*Storer v. Brown*, 415 U.S. 724 (1974)..................................................................20,22

*Thomas v. Mundell*, 572 F.3d 756 (9th Cir. 2009) .......................................................18

*Thompson v. McCombe*, 99 F.3d 352 (9th Cir. 1996) ...................................................15

*Trentacosta v. Frontier Pac. Aircraft Indus., Inc.*, 813 F.2d 1553 (9th Cir. 1987) ............................................................................................15

*United States v. Munsingwear, Inc.*, 340 U.S. 36 (1950) ...............................................20

*Walker v. United States*, 93 F.2d 383 (8th Cir. 1937) ..................................................18

*Weinstein v. Bradford*, 423 U.S. 147 (1975) .............................................................21

*Wolfe v. Strankman*, 392 F.3d 358 (9th Cir. 2004)......................................................15

Other Authorities

Federalist No. 68 .......................................................................................8,11

**INTRODUCTION**

Plaintiff has pending an Amended Complaint alleged three causes of action, for declaratory relief, and for civil rights violations under 42 U.S.C. § 1983. All of this is based on the core fact that Plaintiff, as a presidential elector for the 2016 presidential election, was coerced, under threat of felony prosecution, to vote for a particular candidate for President and Vice-President, contrary to his rights and obligations under the U.S. Constitution, and contrary to federal statute prohibiting intimidation, threats, and coercion of voters for President and Vice-President. Plaintiff seeks declaratory relief and a permanent injunction holding that California Elections Code §§ 6906 and 18002 violate the U.S. Constitution and federal law.

As detailed below, Plaintiff's Amended Complaint is more than sufficient to withstand the Rule 12(b)(1) and Rule 12(b)(6) challenges raised in by two Defendants and one Intervenor in this case. Plaintiff had, and continues to have standing, to pursue this case. As with many other election cases, the issues raised here fall within the "capable of repetition, yet evading review" exception to the general mootness rules. Furthermore, the issues raised by Plaintiff are not non-justiciable political questions. Plaintiff also has properly and sufficient plead the three causes of action contained within the Amended Complaint and, to the extent the Court may find any deficiencies, Plaintiff stands ready to amend as necessary.

**FACTUAL SUMMARY**

*Amended Complaint Allegations*

Plaintiff Vinzenz J. Koller is a resident of Monterey County, California, and a duly chosen Presidential Elector for the 2016 presidential election. Doc. #83 (Amended Complaint), ¶ 1.

Defendant Kamala Harris was the Attorney General of California and, in such capacity, enforced the laws of the State of California, including Elections Code §§ 6906 and 18002 in December 2016. She has been replaced in her official capacity in the Amended Complaint by Xavier Becerra for prospective injunctive relief, but Harris remains a Defendant in her individual

capacity for past actions. See Doc. #83 ¶ 2. Defendant Xavier Becerra is the Attorney General of California and, in such capacity, enforces the laws of the State of California, including *Election Code* §§ 6906 and 18002. Doc. #83 ¶ 3.

Defendant Alex Padilla is the Secretary of State of California and, as such, gives notice of the time and place for the Presidential Electors to vote, and certifies the results of the Presidential Electors' balloting and votes. He is being sued in his official capacity for prospective injunctive relief, but in his individual capacity for past actions. Doc. #83 ¶ 4.

Defendants Xavier Becerra and Alex Padilla have filed a motion to dismiss (Doc. #88) and are referred to herein as "Official Capacity Defendants." Defendants Kamala Harris and Alex Padilla in their individual capacity have not yet filed their responsive pleadings.

This Court has jurisdiction over the subject matter of this dispute as it relates to a federal question, to wit, a challenge to the constitutionality of a state statute, under 28 U.S.C. § 1331 as well as 28 U.S.C. §§ 2201 and 2202. Doc. #83 ¶ 6. Venue is proper in this Court under 28 U.S.C. § 1391(b). Doc. #83 ¶ 11.

The federal question presented by this case is the constitutionality of *California Election Code* §§ 6906 and 18002, which requires electors to vote "for that person for President and that person for Vice President of the United States, who are, respectively, the candidates of the political party which they represent . . ." and calls for punishment for "willfully neglect[ing] or refus[ing] to perform it" or "knowingly and fraudulently act[ing] in contravention" to be punished by felony fine or imprisonment. Doc. #83 ¶ 7.

These statutes, Elections Code §§ 6906 and 18002, violate Article II of the U.S. Constitution as amended by the Twelfth Amendment. Doc. #83 ¶ 8. These statutes, Elections Code §§ 6906 and 18002, also violate California Election Code § 18540(a) and 18 U.S.C. § 594 which prohibit threats, intimidation, and coercion against presidential electors. Doc. #83 ¶ 9.

Although the 2016 Presidential election is over, litigation involving the rights and duties of presidential electors is capable of repetition, yet evading review, every four years. With the length of a presidential elector's actual service lasting for a single day, and the designation of someone as

being a presidential election never being made more than six weeks prior to that one day, it is impossible for any court case to be completed in time. Doc. #83 ¶ 10.

The United States Constitution was signed on September 17, 1787. That document set forth the means by which the President of the United States would be elected every four years. Doc. #83 ¶ 12. The Constitution does not, nor has it ever, called for election to the office of President by popular vote of the citizens of this country. Doc. #83 ¶ 13. The Constitution has, and always has, called for election to the office of President by Presidential Electors selected by the respective states. Doc. #83 ¶ 14.

The Constitution sets forth qualifications and disqualifications for Presidential Electors, namely, that neither Senators, Representatives, nor person holding an office of trust or profit under the United States, shall be appointed. Doc. #83 ¶ 15. The Constitution sets forth the duties of Presidential Electors, namely, that they shall meet in their respective states, and vote by ballot for two persons, of whom one at least shall not be an inhabitant of the same state with themselves, make a list of all the persons voted for, and of the number of votes for each. Said list is to be signed, certified, and transmitted sealed to the seat of the government of the United States, directed to the President of the Senate. Doc. #83 ¶ 16. The Constitution also sets forth the duties of the President of the Senate when those lists are received. Doc. #83 ¶ 17.

Never has the Constitution reduced the weighty responsibility of choosing the President of the United States to a media circus on the second Tuesday of November every four years.  Doc. #83 ¶ 18. Never has the Constitution allowed for foreign influences, threats, or intimidation to restrain or dictate the votes placed by Presidential Electors. Doc. #83 ¶ 19.

Both federal and state statutes enacted over the years since the Constitution was ratified have reaffirmed the importance of the independence of voters at every level of elected office, from dog catcher on up to the president. These statutes include California Elections Code § 18540(a) and 18 U.S.C. § 594. Doc. #83 ¶ 20. *California Election Code* § 18540(a) penalizes persons who use or threaten to use "force, violence, or tactic of coercion or intimidation" to induce or compel votes "at any election" as a felony punishable by imprisonment. Doc. #83 ¶ 21. *California Election Code* §

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

18540(b) also penalizes persons who arrange for another person to use or threaten to use "force, violence, or tactic of coercion or intimidation" to induce or compel votes "at any election" as a felony punishable by imprisonment. Doc. #83 ¶ 22.

18 U.S.C. § 594 likewise, and more specifically, penalizes anyone who "intimidates, threatens, coerces" or attempts the same "for the purpose of interfering with the right of such other person to vote or to vote as he may choose, or of causing such other person to vote for, or not vote for, any candidate for the office of President, Vice President, Presidential elector . . . at any election held solely or in part for the purpose of electing such candidate …." Doc. #83 ¶ 23.

Notwithstanding the Constitutional structure for functioning of Presidential Electors (the "Electoral College") and longstanding state and federal criminalization of any actions to intimidate, threaten, or coerce votes, some individual states have passed laws that do just that – intimidate, threaten, and coerce the votes placed by Presidential Electors for President and Vice President. Two such statutes are those challenged in this case - Elections Code §§ 6906 and 18002. Doc. #83 ¶ 24.

As of the date of filing this case, Plaintiff was a duly authorized Presidential Elector of the Democratic Party and met all qualifications to be an elector. Doc. #83 ¶ 25. Plaintiff had previously served as a Presidential Elector (before 2016) and continues to meet all qualifications to be selected against as a Presidential Elector in subsequent elections, thus being reasonably likely to face the situation addressed herein in a subsequent presidential election. Doc. #83 ¶ 26.

California Elections Code §§ 6906 and 18002 requires electors to vote "for that person for President and that person for Vice President of the United States, who are, respectively, the candidates of the political party which they represent . . ." and calls for punishment for "willfully neglect[ing] or refus[ing] to perform it" or "knowingly and fraudulently act[ing] in contravention" to be punished by fine or imprisonment. Doc. #83 ¶ 27.

The Democratic Presidential and Vice-Presidential candidates for the 2016 presidential election were Hillary Rodham Clinton and Timothy Kaine, respectively. Doc. #83 ¶ 28. The

Republican Presidential and Vice-Presidential candidates for the 2016 presidential election were Donald J. Trump and Michael Pence, respectively. Doc. #83 ¶ 29.

Though the Democratic nominees for President and Vice-President won the nationwide popular vote by over 3 million votes, and won the California popular vote by a large margin, the various state-by-state popular votes indicated that Donald Trump and Michael Pence (the Republican presidential and vice presidential nominees) would win the majority of electoral college votes on December 19, 2016 if the electors in each state vote consistent with the popular vote in their respective states. Doc. #83 ¶ 31.

During the time period between election day (November 8, 2016) and the date for the electoral college voting to occur (December 19, 2016), U.S. intelligence agencies confirmed that they possessed evidence showing foreign interference in the presidential election with the purpose of favoring Donald J. Trump and undermining Hillary R. Clinton in that election. Doc. #83 ¶ 32.

Plaintiff and many other Presidential Electors considered this information of foreign influence in the election to be a matter of grave importance and took affirmative steps to obtain more information from the current President Obama, intelligence agencies, or Congress. Doc. #83 ¶ 33. This is of continued importance because Donald J. Trump has already commenced his campaign for President for the 2020 election, having filed the necessary papers on January 20, 2017, and thus considers himself to be seeking electoral college votes again in less than four years. See Doc. #83 ¶ 30.

Presidential Electors in the states of Arizona, Arkansas, Georgia, Idaho, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Minnesota, Missouri, New Hampshire, New Jersey, New York, North Dakota, Pennsylvania, Rhode Island, South Dakota, Texas, and West Virginia ("Unbound Presidential Electors") were not required to simply place a ceremonial vote consistent with their state's popular vote, and were free to consider the possibility of foreign influence on behalf of one of the presidential candidates or any other circumstance as part of their decision making process before placing their electoral votes. Doc. #83 ¶ 34.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Presidential Electors in the remaining states, including California, Colorado, and Washington ("Bound Presidential Electors"), were coerced into being rubberstamps, not being free to consider the possibility of foreign influence on behalf of one of the presidential candidates or any other circumstance as part of their decision making process before placing their electoral votes. California and 28 other states have laws in place requiring their Presidential Electors to vote consistent with the persons and/or party corresponding to the popular vote in the state and setting forth some type of adverse action to be taken if they do not. Doc. #83 ¶ 35.

On December 19, 2017, Presidential Electors placed their votes in a sufficient number to confirm Donald J. Trump as President. Doc. #83 ¶ 36. By early January 2017, at least three U.S. intelligence agencies reported a high confidence that Russian President Vladimir Putin ordered actions aimed at undermining public faith in the United States' democratic process and denigrating one candidate (Clinton) and giving preference to the other (Trump). Doc. #83 ¶ 37.

On January 20, 2017, Mr. Trump was inaugurated as President and simultaneously began his 2020 presidential campaign. Doc. #83 ¶ 38. By mid-February 2017, additional reports surfaced indicating that Mr. Trump's campaign may have had numerous contacts with Russian intelligence officers during the campaign, raising further questions about the connection between Mr. Trump and the Russian government. Doc. #83 ¶ 39.

California Elections Code § 6906 requires electors to vote "for that person for President and that person for Vice President of the United States, who are, respectively, the candidates of the political party which they represent . . ." Doc. #83 ¶ 40. California Elections Code § 18002 sets for a punishment for "willfully neglect[ing] or refus[ing] to perform" duties under state elections laws or "knowingly and fraudulently act[ing] in contravention" to be punished by fine or imprisonment. Doc. #83 ¶ 41. These statutes contain no exceptions whatsoever, not if the candidate for the political party which they represent died, became physically or mentally unable to assume office, or abducted by aliens. In fact, even if the candidate of their political party was discovered to be a foreign agent, compromised and subject to blackmail by a foreign government, or any manner of

other disqualifying situations, these statutes would still require Presidential Electors to vote for their political party candidate. Doc. #83 ¶ 42.

Likewise, these statutes contain no exceptions that would allow Presidential Electors to vote on a compromise candidate from another party that would ensure that someone unqualified would not be President or Vice-President. Doc. #83 ¶ 43.

These statutes prioritize political party loyalty over the best interests of the United States. Doc. #83 ¶ 44.

*California Election Code* §§ 6906 and 18002 state requirement pre-determining the vote to be cast by Presidential Electors violates the plain language of Article II, Section 1, of the U.S. Constitution, as amended by the Twelfth Amendment, which indicates that there should not be a way to know in advance what the vote will be –

> The executive power shall be vested in a President of the United States of America. He shall hold his office during the term of four years, and, together with the Vice President, chosen for the same term, be elected, as follows:

> Each state shall appoint, in such manner as the Legislature thereof may direct, a number of electors, equal to the whole number of Senators and Representatives to which the State may be entitled in the Congress: but no Senator or Representative, or person holding an office of trust or profit under the United States, shall be appointed an elector.

> The electors shall meet in their respective states, and vote by ballot for two persons, of whom one at least shall not be an inhabitant of the same state with themselves. And they shall make a list of all the persons voted for, and of the number of votes for each; which list they shall sign and certify, and transmit sealed to the seat of the government of the United States, directed to the President of the Senate. The President of the Senate shall, in the presence of the Senate and House of Representatives, open all the certificates, and the votes shall then be counted. The person having the greatest number of votes shall be the President, if such number be a majority of the whole number of electors appointed; and if there be more than one who have such majority, and have an equal number of votes, then the House of Representatives shall immediately choose by ballot one of them for President; and if no person have a majority, then from the five highest on the list the said House shall in like manner choose the President. But in choosing the President, the votes shall be taken by States, the representation from each state having one vote; A quorum for this purpose shall consist of a member or members from two thirds of the states, and a majority of all the states shall be necessary to a choice. In every case, after the choice of the President, the person having the greatest number of votes of the

1
2
electors shall be the Vice President. But if there should remain two or more who have equal votes, the Senate shall choose from them by ballot the Vice President.

3
4
The Congress may determine the time of choosing the electors, and the day on which they shall give their votes; which day shall be the same throughout the United States. ...

5
Doc. #83 ¶ 45.

6
Furthermore, this state requirement pre-determining the vote to be cast by Presidential

7
Electors violates the Founders' intent that the Presidential Electors be a deliberative and

8
independent body free to cast votes for whomever they deem to be the most fit and qualified

9
candidates.

10
11
12
13
14
15
16
17
See The Federalist, No. 68 (Earle ed., 1937), pp. 441-442: "It was desirable that the sense of the people should operate in the choice of the person to whom so important a trust was to be confided. This end will be answered by committing the right of making it, not to any preestablished body, but to men chosen by the people for the special purpose, and at the particular conjuncture.
"It was equally desirable, that the immediate [presidential election] should be made by men most capable of analyzing the qualities adapted to the station, and acting under circumstances favorable to deliberation, and to a judicious combination of all the reasons and inducements which were proper to govern their choice. A small number of persons, selected by their fellow-citizens from the general mass, will be most likely to possess the information and discernment requisite to such complicated investigations."

Quoted in *Ray v. Blair*, 343 U.S. 214. Doc. #83 ¶ 46.

18
19
20
Ironically, the Constitution and the Founders' intent should be protected under California

Election Code § 18540(a) which makes it a felony offense for "every person who makes use of or

21
threatens to make use of any … tactic of coercion or intimidation, to induce or compel any other

22
23
person to vote … or to vote or refrain from voting for any particular person … at any election, or

because any person voted or refrained from voting at any election or refrained from voting for any

24
particular person …" Doc. #83 ¶ 47.

25
The Constitution and the Founders' intent should also be protected under 18 U.S.C. § 594

26
which makes it a criminal offense to intimidate, threaten, or coerce votes, including specifically

27
votes for President and Vice President. Doc. #83 ¶ 48. Indeed, under the Supremacy Clause, 18

28
U.S.C. § 594 preempts California state law on this issue.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Coercion via statute is no different in result than independent coercion as it interferes with the freedom of speech (to voice questions and concerns about the fitness and qualification for office of any potential candidate for President and Vice President) and the obligation and right to act as part of the Presidential Electors to "analyz[e] the qualities adapted to the station," "act[] under circumstances favorable to deliberation, and to a judicious combination of all the reasons and inducements which were proper to govern their choice" and to "possess the information and discernment requisite to such complicated investigations." Doc. #83 ¶ 49.

Though Hillary Clinton and Timothy Kaine won the majority vote in California and are qualified for office, Plaintiff and fellow Bound Presidential Electors should not have been constitutionally compelled to vote for them if the best interests of the country warranted a different course of action. Plaintiff should have been allowed to exercise his judgment and free will to vote for whomever he believes to be the most qualified and fit for the offices of President and Vice President within the circumstances and with the knowledge known on December 19, 2016, whether those candidates are Democrats, Republicans, or from a third party. Doc. #83 ¶ 50.

Plaintiff was forced, coerced, and intimidated by Defendants into his decision of how to vote for the offices of President and Vice-President. Doc. #83 ¶ 51.

Defendants Kamala Harris and Alex Padilla, under color of state law, failed and refused to disclaim the possibility that Plaintiff would be criminally prosecuted under *California Election Code* §§ 6906 and 18002 if he failed to vote along party lines. Doc. #83 ¶ 52.

Similarly, Defendants Kamala Harris and Alex Padilla, under color of state law, violated *California Election Code* § 18540 and 18 U.S.C. § 594 by intimidating, threatening, and coercing Plaintiff into his decision of how to vote for the offices of President and Vice-President. Doc. #83 ¶ 53.

Furthermore, Defendant Xavier Becerra, as California's new Attorney General and with knowledge of the unconstitutionality of California Elections Code §§ 6906 and 18002, has failed to disclaim any intent to criminally prosecute Presidential Electors in the future, thus prospectively chilling their Constitutional rights and duties. Doc. #83 ¶ 54.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Election Code* §§ 6906 and 18002 call for criminal penalties against Plaintiff if Plaintiff does not place his presidential electoral vote for Hillary Clinton and Tim Kaine. Doc. #83 ¶ 56. Plaintiff's stated intention to not necessarily place his vote for Hillary Clinton and Tim Kaine, but instead to act with the deliberative intent and care for choosing of qualified persons for the office of President and Vice President called for in the U.S. Constitution, created a risk of criminal prosecution by the State of California and thus creates an actual controversy within the meaning 28 U.S.C. § 2201(a). Doc. #83 ¶ 57.

Because Plaintiff has previously served as a Presidential Elector and continues to be eligible to serve as a Presidential Elector in 2020 and future presidential elections, and because the presidential contender who raised particular concerns in the 2016 election already plans to run again in 2020, an actual controversy continues to exist. Doc. #83 ¶ 58.

The threat of criminal prosecution against Plaintiff if he acts in any manner in his capacity as Presidential Elector other than as a rubber stamp or ceremonial vote consistent with the popular vote in California, constitutes a violation of his obligations under the U.S. Constitution, Art. II, Sec. 1, as amended by the Twelfth Amendment, and his rights to freedom of speech under the First Amendment of the U.S. Constitution. Doc. #83 ¶ 59.

The threat of criminal prosecution chilled Plaintiff's exercise of his Constitutional rights and duties, constituting harm. Doc. #83 ¶ 60. Plaintiff therefore requests a declaratory judgment by this Court that California Elections Code § 6906 and the corresponding penalty for violation thereof in California Elections Code § 18002 are unconstitutional and therefore unenforceable against Plaintiff or any other presidential electors. Doc. #83 ¶ 61.

The purpose of the Electoral College, which is made up of electors such as Plaintiff, is to elect the President and Vice President of the United States. There is nothing in the Constitution that permits or requires electors to be bound to vote the same as the popular vote in their states. For the first 100 years of our history, the majority of states did not hold popular votes for the election of president and vice president and, instead, the states themselves appointed the electors who voted for president and vice president. Doc. #83 ¶ 62.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Alexander Hamilton explicitly stated "that that the immediate election should be made by men most capable of analyzing the qualities adapted to the station." Federalist No. 68. The electors (the "men") would be "most likely to possess the information and discernment requisite to such complicated investigations." *Id.* The electors were created so that they, as a deliberative body, would be "detached" and less prone to be influenced by the "heats and ferments" of a raucous election. *Id.* The electors would help ensure "the office of President [would] never fall to the lot of any man who is not in an eminent degree endowed with the requisite qualifications." *Id.* The electors create an "obstacle" to "cabal, intrigue, and corruption" and prevent "foreign powers [from] gain[ing] an improper ascendant in our councils." *Id.* Doc. #83 ¶ 63.

The United States Supreme Court has already partially addressed the question of a state statute that required an elector for a primary election to sign a pledge as to whom they would vote and found the pledge itself constitutional (*Ray v. Blair*, 343 U.S. 214 (1952)), the Supreme Court left open the question of whether enforcement of such pledges, or penalties for violating the pledges, or state statutes dictating what votes would be placed, was constitutional. This question is now ripe for review. Doc. #83 ¶ 64.

Similarly, while Article II, Section 1 provides that states shall "appoint" electors, but the Constitution does not provide that the states shall have the ability to determine for whom those electors will vote. Doc. #83 ¶ 65.

The Electoral College would be rendered superfluous and antithetical to the purpose of the Electoral College as articulated by Alexander Hamilton, for if the electors are merely to vote for the candidate who won the popular vote in their state, then there is no need for the Electoral College at all. While many scholars have advocated for the elimination of the Electoral College, this case does not seek to invalidate the Electoral College; that would be a matter to be changed by constitutional amendment ratified by a sufficient number of states. Doc. #83 ¶ 66.

Declaratory and injunctive relief is necessary to prevent the Defendants from violating Plaintiff's constitutional rights or chilling his exercise of those rights due to the risk of punitive consequence for voting in the broader interest of the country, even if that might not end up aligning

with his loyal party affiliation. Without such relief, Plaintiff's rights and obligations as a Presidential Elector, and his rights to be free from intimidation, threats, and coercion in his voting as protected under state and federal law, will be irreparably harmed. Doc. #83 ¶ 67.

This Court can provide declaratory relief because an actual and substantial controversy now exists between Plaintiffs and the Defendants with respect to Plaintiff's rights and Defendants' rights and duties under *Elections Code* §§ 6906 and 18002, and such controversy is capable of repetition, yet evading review. Doc. #83 ¶ 68.

Plaintiff's constitutional rights have been directly, substantially, and irreparably violated, affected, and injured unless and until this Court declares the state law requiring electors to vote consistent with the popular vote in their state, and penalizing an elector for not doing so, is unconstitutional. Doc. #83 ¶ 69.

At all times relevant to this Amended Complaint, Harris and Padilla were acting under color of state law and through their acts engaged in unlawful intimidation, threatens, and coercion relating to Plaintiff's voting decision for President and Vice President. Doc. #83 ¶ 71.  Defendants Harris and Padilla deprived Plaintiff of his rights under Article II, Section 1, of the U.S. Constitution, as amended by the Twelfth Amendment, by failing and refusing to disclaim any intent to criminally prosecute Plaintiff under California Elections Code §§ 6906 and 18002 if he voted for anyone for President and Vice-President other than Clinton and Kaine. Doc. #83 ¶ 72.

Defendants Harris and Padilla deprived Plaintiff of his rights under Article II, Section 1, of the U.S. Constitution, as amended by the Twelfth Amendment, by failing and refusing to disclaim any intent to criminally prosecute Plaintiff under California Elections Code §§ 6906 and 18002 if he voted for anyone for President and Vice-President other than Clinton and Kaine. Doc. #83 ¶ 73. Defendants Harris and Padilla deprived Plaintiff of his rights under 18 U.S.C. § 594, by failing and refusing to disclaim any intent to criminally prosecute Plaintiff under *California Election Code* §§ 6906 and 18002 if he voted for anyone for President and Vice-President other than Clinton and Kaine. Doc. #83 ¶ 74.

Defendants Harris and Padilla deprived Plaintiff of his rights under California Elections

Code § 18540, by failing and refusing to disclaim any intent to criminally prosecute Plaintiff under California Elections Code §§ 6906 and 18002 if he voted for anyone for President and Vice-President other than Clinton and Kaine. Doc. #83 ¶ 75.

California Elections Code §§ 6906 and 18002 do not serve any significant governmental interest. To the contrary, they actually significantly jeopardize the governmental interests of both the State of California and the United States of America. Doc. #83 ¶ 76; see also ¶ 86.  California Election Code §§ 6906 and 18002 is neither narrowly tailored or the least restrictive means to accomplish any governmental purpose sought to be served by the legislation. Doc. #83 ¶ 77; see also ¶ 87.

Plaintiff's rights to be free from intimidation, treats, and coercion in the process of voting is a clearly established right.  Doc. #83 ¶ 78. Plaintiff was harmed as a result of this conduct, including through the deprivation of constitutional rights, and otherwise as according to proof at trial. Doc. #83 ¶ 79.

Defendants' conduct was a substantial factor in causing harm to Plaintiff. Doc. #83 ¶ 80. Plaintiff additionally seeks compensation for reasonable attorney's fees and costs under 42 U.S.C. § 1988. Doc. #83 ¶ 81.

California Elections Code §§ 6906 and 18002 are unconstitutional on their face and as threatened to be applied, infringing Plaintiff's duties and rights as a presidential elector under Article II, Section 1, of the U.S. Constitution, as amended by the Twelfth Amendment. Doc. #83 ¶ 83.

California Elections Code §§ 6906 and 18002 are unlawful and in violation of 18 U.S.C. § 594 on their face and as threatened to be applied. Doc. #83 ¶ 84. California Elections Code §§ 6906 and 18002 are unlawful and in violation of California Election Code § 18540 on their face and as threatened to be applied. Doc. #83 ¶ 85.

Plaintiff seeks injunctive relief to prohibit Defendants from intimidating, threatening, and/or coercing Plaintiff or other presidential electors in how they vote for President and Vice President. Doc. #83 ¶ 88.

Plaintiff seeks entry of judgment in favor of Plaintiff and against Defendants on all causes of action; entry of an order declaring California Elections Code §§ 6906 and 18002 to be unconstitutional under the U.S. Constitution, Article II, Section 1, as amended by the Twelfth Amendment, in violation of 18 U.S.C. § 594, and/or in violation California Elections Code § 18540; and for an order permanently enjoining the Defendants from prosecuting any presidential elector on the basis of their vote placed for a presidential or vice presidential candidate; as well as compensatory damages and attorney fees. See Doc. #83, Prayer for Relief.

*Procedural Facts*

The Court has already reviewed, and denied, Plaintiff's request for temporary restraining order and preliminary injunction requested in December 2016. The Court found that Plaintiff raised a question serious enough to require litigation. See Doc. #37.

Plaintiff has since filed an Amended Complaint adding two new causes of action and adapting to account for new facts occurring in the interim timeframe.

The Official Capacity Defendants (Attorney General Xavier Becerra and Secretary of State Alex Padilla) have filed a Motion to Dismiss under Fed.R.Civ.P. 12(b)(1). Intervenor California Republican Party has also filed a Motion to Dismiss under Fed.R.Civ.P. 12(b)(1) and 12(b)(6).

For ease of review by the Court, Plaintiff's opposition to both moving parties' Rule 12(b)(1) overlapping arguments are contained within the Opposition to the Official Capacity Defendants' Motion and both the Factual Summary and that those arguments simply incorporated by reference into the Opposition to the Intervenor's Motion.

**ARGUMENT**

**I.      DEFENDANTS AND INTERVENOR'S RULE 12(B)(1) MOTIONS TO DISMISS SHOULD BE DENIED.**

**A.      Standard for review**

"[A] party may assert the following defenses by motion: … (1) lack of subject-matter jurisdiction; . . ." Fed. R. Civ. P. Rule 12(b)(1).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

"A party invoking the federal court's jurisdiction has the burden of proving the actual

existence of subject matter jurisdiction." *Trentacosta v. Frontier Pac. Aircraft Indus. Inc.* 813 F.2d

1553, 1559 (9th Cir. 1987); cited in *Thompson v. McCombe*, 99 F.3d 352 (9th Cir. 1996).

Rule 12(b)(1) motions to dismiss can be facial or factual.  "In a facial attack, the challenger

asserts that the allegations contained in the complaint are insufficient on their face to invoke federal

jurisdiction.  By contrast, in a factual attack, the challenger disputes the truth of the allegations that,

by themselves, would otherwise invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373

F.3d 1035, 1039 (9th Cir. 2004).  Where a facial attack is made, where the question of whether

subject matter jurisdiction exists does not depend on resolution of a factual dispute, but rather on the

allegations of the complaint, those allegations are assumed to be true and all reasonable inferences

drawn in favor of the plaintiff. *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004); *Savage v.

Glendale Union High Sch.* 343 F.3d 1036, 1039 (9th Cir. 2003); *Saridakis v. United Airlines*, 166

F.3d 1272, 1274 n. 1 (9th Cir. 1999).

In the event that the Court finds any deficiencies in the operative complaint, a court should

"freely give leave to amend when justice so requires." See Fed. R. Civ. P. 15(b); *Foman v. Davis*,

371 U.S. 178, 182 (1962).

Defendants and Intervenor are raising a facial attack to Plaintiff's Amended Complaint (see

Doc. #88, pg. 5:22-24 and Doc. #89, pg. 4:12-13).  Although both briefs make different, circuitous

arguments with different sets of caselaw to support their Rule 12(b)(1) challenges, the arguments can

be synthesized down to the following: (1) standing; (2) mootness; and (3) political question doctrine.

### B. Plaintiff had, and continues to have, standing in this case.

To establish Article III standing, the plaintiff bears the burden of demonstrating the
following three elements: (1) an injury in fact; (2) a causal connection between the
injury and the challenged action; and (3) a likelihood that a favorable decision will
redress the injury.

1

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. Inc.* 528 U.S. 167, 180–81 (2000); see also *Lujan*

2

*v. Defenders of Wildlife*, 504 U.S. 555 (1992).

3

When evaluating standing, the court accepts the material allegations of the complaint as

4

true and construes the complaint in the plaintiffs' favor. *Davis v. Guam*, 785 F.3d 1311, 1314 (9th

5

Cir. 2015).

6

7

In his Amended Complaint, Plaintiff pleads three causes of action. In his First Cause of

8

Action for declaratory relief, Plaintiff is requesting a declaratory judgment that California Elections

9

Code § 6906 and the corresponding penalty for violation thereof in California Elections Code §

10

18002 are unconstitutional and therefore unenforceable against Plaintiff or any other presidential

11

electors. In his Second Cause of Action for a deprivation of civil rights under 42 U.S.C. § 1983,

12

Plaintiff alleges that the Individual Defendants, acting under color of state law, engaged in

13

unlawful intimidation, threats, and coercion relating to Plaintiff's voting decision for President and

14

Vice President, and that he is entitled to damages for that violation. In his Third Cause of Action

15

for a deprivation of civil rights under 42 U.S.C. § 1983, Plaintiff alleges that California Elections

16

Code §§ 6906 and 18002 are unconstitutional on their face and as threatened to be applied, in

17

violation of Plaintiff's rights under 18 U.S.C. § 594, and California Elections Code § 18540, and

18

19

requests prospective injunctive relief.  U.S. Const. art. II, § 1; U.S. Const. amend. XII.

20

Neither Official Capacity Defendants nor Intervenor has specified the particular causes of

21

action they are attacking with their motions to dismiss, and neither acknowledge the existence of,

22

nor reference, the inclusion of two entirely new causes of action contained in the Amended

23

Complaint.

24

25

26

27

28

**1.  This Court has already acknowledged Plaintiff's standing to challenge the constitutionality of elector binding statutes.**

This Court has already acknowledged Plaintiff's standing and found that Plaintiff "has certainly raised a question 'serious enough to require litigation.'"  Doc. #37 (Order on Motion for Temporary Restraining Order), pg. 10:1-2.

The Tenth Circuit, in related case *Baca v. Hickenlooper*, specifically considered and rejected the standing argument that Official Capacity Defendants and Intervenor bring here, the argument that state officials lack Article III standing to challenge the constitutionality of a state statute. "[P]laintiffs allege that Colo. Rev. Stat. § 1-4-304(5) infringes upon their own personal constitutional rights. . . . we conclude that is sufficient to provide them with standing" to challenge the statute. *Baca v. Hickenlooper*, 2016 WL 7384286.

Plaintiff alleges that California Elections Code § 6906 and 18002 infringes upon his own personal constitutional, state, and federal rights. See Doc. #83, ¶¶ 9, 20-24, 51-54, 59-61, et seq. That is sufficient to establish standing.

**2.  This case involves personal injury to Plaintiff, not a "personal dilemma" of a public official.**

Official Capacity Defendants try to argue that Plaintiff is merely a "public official" having a "personal dilemma" about fulfilling his job obligations, but have provided no relevant legal support for that position. In all of the cases cited by Official Capacity Defendants, the distinction between "official" capacity and "personal" capacity for purposes of standing came down to whether plaintiffs personally had something to gain or lose in the situation[1]. *None of them involved a threat of felony prosecution against a plaintiff*, as does this case.

---

[1] *Fitzgerald v. Green*, 143 U.S. 377 (1890), has nothing to do with evaluation of the nature and scope of electors' responsibilities or party standing. It is a habeas corpus case relating to someone jailed for voting for Congressional representatives and presidential electors even though not qualified to vote.  The question presented was whether the state court had jurisdiction for this habeas action. *Id.* at 379.

1    In *Thomas v. Mundell*, 572 F.3d 756 (9th Cir. 2009), a county attorney lacked standing to

2  challenge the existence of separate, Spanish-speaking, DUI courts because any disadvantage to him

3  was institutional, not personal; individual DUI victims lacked standing because their injuries were

4  too generalized. In *City of South Lake Tahoe v. Cal. Tahoe Reg'l Planning Agency,* 625 F.2d 231,

5  233 (9th Cir.1980), a mayor and city councilmen did not have standing to challenge federal agency

6  regulations they were required to enforce in their official capacities; political subdivisions may not

7  challenge validity of state statutes and city officials' "abstract outrage" was insufficient to confer

8  standing. "No consequences, save those of conscience self-imposed by the council members'

9  personal beliefs" would accrue to plaintiffs. *Id.* In *Smith v. Indiana*, 191 U.S. 138 (1903), the

10  distinction between "official" and "personal" interests came down to whether the plaintiff was

11  testing the constitutionality of a law purely in the interest of third persons. In *Drake v. Obama*, 664

12  F.3d 774 (9th Cir. 2011), active and former military personnel, state representatives, federal

13  taxpayers, a claimed relative of President Obama, and political candidates in the 2008 election

14  lacked standing to perpetuate birther claims after Obama's inauguration because of only

15  generalized (or mooted, in the instance of the political candidates), claims of injury.

16    In *Walker v. United States*, 93 F.2d 383 (8th Cir. 1937), the court did not address standing,

17  but rather distinguished an elector's role between state versus federal for purposes of coverage

18  under a federal statute. *Chenault v. Carter*, 332 S.W.2d 623 (Ky. 1960) does not involve standing,

19  and the reference to electors being state officials relates to determination of when their election

20  would be held. Similarly, *Ray v. Blair*, 343 U.S. 214 (1952) does not address standing, its

21  distinction between state and federal officers is dicta.

22    The argument that Plaintiff's interest in this case is merely "official" and not "personal"

23  belies the actual language of the statutes in question. Plaintiff's interest is personal because a

1    violation of California Elections Code § 6906 would, under California Elections Code § 18002,

2    subject him to *personally* being fined, *personally* being thrown in jail, *personally* having a felony

3    conviction, *personally* losing all civil rights denied to persons convicted of felonies, including the

4    rights to vote, own a firearm, work for the government, etc. It doesn't get much more personal than

5    that. If California law treated Plaintiff's actions as being "official," he should have immunity for

6

7    his actions, not punishment.

8            By way of comparison, the Official Capacity Defendants could not have been plaintiffs in

9    this case because, even if they believed that these California statutes were unconstitutional, it is not

10   they who would be subjected to criminal penalties if electoral votes were cast outside of party

11   affiliations. Indeed, even if they acknowledge in the privacy of their own offices that California

12   Elections Code §§ 6906 and 18002 are unconstitutional, they would not have standing to file this

13   case. Plaintiff, however, does have standing.

14

15           Plaintiff had concrete plans to violate California Elections Code § 6906, but was

16   intimidated, threatened, and coerced to do otherwise. See Doc. #83, ¶¶ 51, 60, 71-75. Plaintiff is

17   happy to amend to be even more specific in his allegations on this point, if necessary. To suggest

18   that Plaintiff should simply cave to an unconstitutional law, or "resign with honor" is absurd. There

19   is no honor in simply complying with unconstitutional laws, particularly in this case where

20   presidential electors were faced with a very real danger to the country, a danger that the very

21   Founders of the institution of the electoral college foresaw at the birth of our country, and against

22   which they intended presidential electors to guard against.

23

24           **C.    This lawsuit is not moot because the issues are "capable of repetition, yet escaping review."**

25           The occurrence of the presidential election on December 19, 2016 does not moot this case

26

27   because  (1) the constitutional issues raised meet the "capable of repetition, yet escaping review"

28

19.                    Case No. 5:16-CV-07069

standard; and (2) Plaintiff's Amended Complaint raises new 42 U.S.C. § 1983[2] claims for completed

constitutional violations which are not even argued to be moot post-election.

        1.     Issues "capable of repetition, yet escaping review" are an established exception to mootness rules.

      The usual rule in federal cases is that an actual controversy must exist at stages of appellate

or certiorari review, and not simply at the date the action is initiated. *United States v.*

*Munsingwear, Inc.* 340 U.S. 36 (1950); *Golden v. Zwickler*, 394 U.S. 103 (1969); *SEC v. Medical*

*Committee for Human Rights*, 404 U.S. 403 (1972); *Roe v. Wade*, 410 U.S. 113, 125 (1973).

However, there are defined exceptions to that rule, including issues that are "capable of repetition, yet

escaping review."

      The United States Supreme Court has long ago confirmed that challenges to California

election statutes are not mooted after an election is over.

> The 1972 election is long over, and no effective relief can be provided to the candidates or voters, but this case is not moot, since *the issues properly presented, and their effects on independent candidacies, will persist* as the California statutes are applied *in future elections.* This is, therefore, a case where the controversy is 'capable of repetition, yet evading review.' *Rosario v. Rockefeller*, 410 U.S. 752, 756 n. 5 (1973); *Dunn v. Blumstein*, 405 U.S. 330, 333 n.2 (1972); *Moore v. Ogilvie*, 394 U.S. 814, 816 (1969); *Southern Pacific Terminal Co. v. ICC*, 219 U.S. 498, 515 (1911). The "capable of repetition, yet evading review" doctrine, in the context of election cases, is appropriate when there are "as applied" challenges as well as in the more typical cases involving only facial attacks.

*Storer v. Brown,* 415 U.S. 724, 737 n. 8 (1974) (emphasis added). See also *Mandel v. Bradley,* 432

U.S. 173, 175 n. 1 (1977) (no inquiry as to future plans of candidate to run for office again, yet

case not moot because of election); *Anderson v. Celebrezze,* 460 U.S. 780, 784 n. 3 (1983) (same);

*Brown v. Chote,* 411 U.S. 452, 457 n. 4 (1973) (same).

      The relief sought by a plaintiff is a key factor of distinction in this analysis, a distinction

completely ignored in both the Official Capacity Defendants' and Intervenor's analysis. In *Ariz.*

---

[2] It has just been noticed that the Amended Complaint has several typos, citing "28 U.S.C. § 1983" rather than the intended "42 U.S.C. § 1983."

*Green Party v. Reagan*, 838 F.3d 983 (9th Cir. 2016), the court held that claims related to the specific election cycle were moot (getting Green Party on the ballot), but claims generally challenging the statute were not moot, and were "capable of repetition, yet evading review." In *Canez v. Guerrero*, 707 F.2d 443 (9th Cir. 1983), the subject injunctions were limited by their terms to the conduct of one specific election and appellants suffered no other injury in the election because they won. *Murphy v. Hunt*, 455 U.S. 478 (1982) dealt with a criminal defendant challenging his entitlement to pretrial bail, a moot point once he was convicted. *Weinstein v. Bradford*, 423 U.S. 147 (1975) also dealt with an inmate challenging procedures for consideration of parole, a moot point when he was both paroled and then completely released from supervision. In *Abdurraahman v. Dayton*, 2016 WL 7428193, at *1, plaintiff filed suit after casting his elector vote and sought an injunction precluding state officials from transmitting his ballot to the Senate, an action that had already occurred the date after the vote and before the court held a hearing.

In this case, Plaintiff's initial request for a temporary restraining order and injunction as to the December 19, 2016 electoral ballot casting is now moot, but his request for declaratory relief, and the added 42 U.S.C. § 1983 claims in his Amended Complaint claims, requesting declaratory relief, prospective injunctive relief, and damages, are not.

> 2.   Plaintiff need not prove with certainty his future status as an elector for the "capable of repetition, yet escaping review" exception to apply.

The established "capable of repetition, yet escaping review" exception to the mootness rule, applies where "(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." *Spencer v. Kemma*, 523 U.S. 1, 17; *FEC v. Wisc. Right to Life, Inc.* 551 U.S. 449 (2007).

In the context of election cases, the second-prong requirement is relaxed. The United States Supreme Court has repeatedly held that ballot-access requirement challenges were not rendered

moot by the occurrence of the election, without any inquiry into the future plans of the plaintiffs to run for office. *Mandel v. Bradley,* 432 U.S. 173, 175 n. 1, 97 S.Ct. 2238, 53 L.Ed.2d 199 (1977). See also *Anderson v. Celebrezze,* 460 U.S. 780, 784 n. 3, 103 S.Ct. 1564, 75 L.Ed.2d 547 (1983) (same); *Brown v. Chote,* 411 U.S. 452, 457 n. 4, 93 S.Ct. 1732, 36 L.Ed.2d 420 (1973) (same); *North Carolina Right to Life Comm. Fund v. Leake,* 524 F.3d 427, 435 (4th Cir.2008). ("[W]e reject, as other circuits have, the argument that an ex-candidate's claims may be 'capable of repetition, yet evading review' only if the ex-candidate specifically alleges an intent to run again in a future election.").

The *FEC v. Wisc. Right to Life* case involved a constitutional challenge to the Bipartisan Campaign Reform Act; a nonprofit advocacy group (WRTL) sued the FEC so it could broadcast advertisements shortly before primary and general elections. Obviously by the time the case got the U.S. Supreme Court, the elections had come and gone. The FEC argued that the case was moot because the election was over and WRTL had not asserted a continuing interest in running the subject advertisements. The FEC argued that "in order to prove likely occurrence of the same controversy, WRTL must establish that it will run ads in the future sharing all 'the characteristics that the district court deemed legally relevant," but the Court disagreed.

> We have recognized that the " 'capable of repetition, yet evading review' doctrine, in the context of election cases, is appropriate when there are 'as applied' challenges as well as in the more typical case involving only facial attacks." *Storer v. Brown,* 415 U.S. 724, 737, n. 8[] (1974). Requiring repetition of every "legally relevant" characteristic of an as-applied challenge—down to the last detail—would effectively overrule this statement by making this exception unavailable for virtually all as-applied challenges. History repeats itself, but not at the level of specificity demanded by the FEC.

*FEC*, at 463.

Plaintiff has more than sufficiently alleged the facts necessary to show that the issue of constitutionality of the subject election laws is "capable of repetition, yet evading review" and that these issues could affect Plaintiff directly, or other presidential electors in the future.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Official Capacity Defendants have gone to great length to try to argue that Plaintiff must show that he both will be an elector again and that he is realistically threatened by future repetition of the dilemma faced in the 2016 election, but the law does not require that.

Plaintiff has alleged his service as a presidential elector in 2008 and 2016, and his continued eligibility and willing to serve again if asked. Doc. #83, ¶¶ 25-26. He even alleged that the same presidential candidate that caused him such great concern, Trump, had already begun his campaign for 2020. Doc. #83, ¶ 30. These allegations must be assumed true and all reasonable inferences drawn in favor of the Plaintiff as a matter of law for purposes of this motion. Official Capacity Defendants' and Intervenor's claim that it is "especially unlikely" that Plaintiff would be chosen now that he "identified himself" as an elector who may not vote for the Democratic Party's nominee, is unfounded speculation. Plaintiff is able to amend to add the further facts that can set that speculation to rest if need be.

3.   The Court and all of the parties have acknowledged the importance of the issues raised in this case.

As noted above, this Court has already found that Plaintiff has raised a question 'serious enough to require litigation.'" Doc. #37 (Order on Motion for Temporary Restraining Order), pg. 10:1-2.

Official Capacity Defendants have stated that the "conflicting views [about the electoral college] can be seen to raise substantial questions regarding the constitutionality of any potential enforcement of the instructions in California Elections Code section 6906. Doc. #29, pg. 7:15-17.

Intervenor GOP asserted that the "issue of whether the requirement... that electors vote for the ... 'candidates of the political party which they represent' is unconstitutional will bear on the Party's rights to core political speech and association under the First Amendment." Doc. #14, pg. 1:18-21. "If California's Presidential Electors Statute is held unconstitutional, the [Republican] Party will be forced—as a matter of practical and political reality—to revamp its process for

23.                                    Case No. 5:16-CV-07069

choosing Presidential Electors by elevating loyalty to individual candidates over other factors such as time of service to the Party itself"). Doc. #14, pg. 3:18-21.

Intervenor Trump asserted that "Plaintiff's lawsuit … threatens to undermine the many laws in other states that sensibly bind their electors' votes to represent the will of the citizens…." Doc. #22, pg. 4:3-5. "[T]he President-Elect and his Campaign have distinct interests, among them (1) ensuring that other states' laws are respected, (2) ensuring that the Electoral College process is honored in the 50 states and the District of Columbia, …"). Doc. #22, pg. 5:28-6:1-3.

Presidential elections are held every four years, yet no presidential elector will be able to both acquire standing to file a suit challenging the subject statutes (by becoming an elector), and reach even trial stage, much less appellate review, before he or she has cast a vote as an elector. If the meeting of the electors and placing of their votes makes a challenge to statutes coercing their votes moot, presidential elector litigation will never survive beyond the emergency motion stage. Not only that, but as all of the parties have acknowledged, the impact of this case goes far wider than merely the rights of presidential electors, but will affect political party actions and even strategy for presidential election campaigns.

Plaintiff's challenge of the constitutionally of California election laws relating to presidential electors, like many other election law issues, is not mooted by the placing of Plaintiff's electoral vote in December 2016. The issues presented here "*capable* of repetition, yet escaping review," and thus should proceed to be litigated.

## II.     LEAVE TO AMEND SHOULD BE FREELY GIVEN, IF NEEDED.

A "court should freely give leave [to amend a complaint] when justice so requires." Fed. R. Civ. P. 15(b). Rule 15(b)'s "mandate is to be heeded." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." [*Foman*, supra] Denying leave to amend is thus an abuse of discretion and

1   "inconsistent with the spirit of the Federal Rules," *id.* unless the court provides a
2   sufficient reason for so doing, such as "futility of amendment, undue delay, bad
    faith, dilatory motive, undue prejudice, or repeated failure to cure deficiencies by
3   previous amendments." *Boyd v. District of Columbia,* 465 F.Supp.2d 1, 3
    (D.D.C.2006) (other citation omitted) (citing *Foman,* 371 U.S. at 182, 83 S.Ct. 227).
4
    *Gilliam v. Dept. of Justice*, 128 F. Supp. 3d 134 (D.C. 2015).
5
6       Although Plaintiff contends that the Amended Complaint is sufficient as it stands to avoid
7   dismissal under either Rule 12(b)(1) or 12(b)(6), Plaintiff does have additional facts at his disposal that
8   he can use to amend the operative complaint further.
9
10                                   **CONCLUSION**
11
        For the reasons set forth above, Plaintiff respectfully requests that the Court deny the
12
13  Official Capacity Defendants' and Intervenor's Motions to Dismiss.
14
15  Dated this 5th day of May, 2017.
16
17                      By:      /s/ Melody A. Kramer
18                               Melody A. Kramer, Esq.
                                 KRAMER LAW OFFICE, INC.
19                               Attorney for Plaintiff
20
21
22
23
24
25
26
27
28