1   XAVIER BECERRA
    Attorney General of California
2   MARC A. LEFORESTIER
    Supervising Deputy Attorney General
3   KEVIN A. CALIA
    Deputy Attorney General
4   State Bar No. 227406
     1300 I Street, Suite 125
5    P.O. Box 944255
     Sacramento, CA 94244-2550
6    Telephone: (916) 322-6114
     Fax: (916) 324-8835
7    E-mail: Kevin.Calia@doj.ca.gov
    *Attorneys for Defendants Attorney General Xavier*
8   *Becerra and Secretary of State Alex Padilla, in their*
    *official capacities*
9
                    IN THE UNITED STATES DISTRICT COURT
10
                   FOR THE NORTHERN DISTRICT OF CALIFORNIA
11

12

13

14  **VINZENZ J. KOLLER, an individual and**          5:16-cv-07069-EJD
    **Presidential Elector,**
15
                                    Plaintiff,
16                                                    **OFFICIAL CAPACITY DEFENDANTS'**
                                                      **REPLY IN SUPPORT OF THEIR**
17           v.                                       **MOTION TO DISMISS PLAINTIFF'S**
                                                      **AMENDED COMPLAINT**
18  **JERRY BROWN, in his official capacity as**
    **Governor for the State of California;**
19  **KAMALA HARRIS, in her official capacity**
    **as Attorney General for the State of**           Date:        August 17, 2017
20  **California; ALEX PADILLA, in his official**       Time:        9:00 a.m.
    **capacity as Secretary of State for the State**   Dept:        4
21  **of California; and DOES 1-10,**                   Judge:       The Honorable Edward J.
                                                                    Davila
22                                  Defendants.        Trial Date:  Not Set
                                                      Action Filed: December 9, 2016
23

24

25

26

27

28

1

**TABLE OF CONTENTS**

2

**Page**

3

INTRODUCTION ..................................................................................................... 1

ARGUMENT ............................................................................................................ 2

4

I.    Koller's Claims for Injunctive and Declaratory Relief Related to the 2016
Election Are Moot. ......................................................................................... 2

5

A.    The "Same Party" Requirement Applies in Election Cases. ..................... 3

6

B.    Koller Does Not Meet the "Same Party" Requirement ............................. 6

7

II.    Koller Lacks Standing to Seek Injunctive or Declaratory Relief Related to
Future Elections. ............................................................................................. 9

8

A.    A Theoretical Possibility That Koller Will Someday Be an Elector
Again Is Too Speculative to Support Standing. ........................................ 10

9

B.    Other Contingencies Also Prevent Koller from Showing a
"Certainly Impending" Future Injury. ....................................................... 12

10

C.    Public Officials Do Not Have Standing to Sue Over a Personal
Dilemma Involved In Performing Their Official Duties. ........................... 13

11

CONCLUSION ........................................................................................................ 14

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

i

# TABLE OF AUTHORITIES

**Page**

CASES

*Abdurrahman v. Dayton*
No. 16-cv-4279 (PAM/HB), 2016 WL 7438193 (D. Minn. Dec. 23, 2016)............................7

*Akina v. Hawaii*
835 F.3d 1003 (9th Cir. 2016)............................................................................................4, 6

*Anderson v. Celebrezze*
460 U.S. 780 (1983)............................................................................................................5, 8

*Arizona Green Party v. Reagan*
838 F.3d 983, 987 (9th Cir. 2016)......................................................................................4, 8

*Arizonans for Official English v. Arizona*
520 U.S. 43 (1997)..............................................................................................................10

*Baca v. Hickenlooper*
No. 16-1482, slip op. (10th Cir. Dec. 16, 2016) ................................................................14

*Baker v. Carr*
369 U.S. 186 (1962)............................................................................................................11

*Brown v. Choate*
411 U.S. 452 (1973).............................................................................................................5

*City of South Lake Tahoe v. California Tahoe Regional Planning Agency*
625 F.2d 231 (9th Cir. 1980)..........................................................................................13, 14

*Clapper v. Amnesty Int'l USA*
133 S. Ct. 1138 (2013) .......................................................................................9, 10, 11, 12

*Davis v. FEC*
554 U.S. 724 (2008) .................................................................................................. *passim*

*Drake v. Obama*
664 F.3d 774 (9th Cir. 2011)..............................................................................................14

*Dunn v. Blumenstein*
405 U.S. 330 (1972).............................................................................................................5

*Farris v. Seabrook*
677 F.3d 858 (9th Cir. 2012)..........................................................................................4, 6, 8

## TABLE OF AUTHORITIES
### (continued)

**Page**

*FEC v. Wisc. Right to Life, Inc.*
  551 U.S. 449 (2007) ................................................................................ *passim*

*Friends of the Earth, Inc. v. Laidlaw Envtl. Serv., Inc.*
  528 U.S. 167 (2000) ........................................................................................ 11

*Gest v. Bradbury*
  443 F.3d 1177 (9th Cir. 2006) .......................................................................... 9

*Golden v. Zwickler*
  394 U.S. 103 (1969) ........................................................................................ 11

*Herron for Congress v. FEC*
  903 F. Supp. 2d 9 (D.D.C. 2012) .................................................................... 12

*Honig v. Doe*
  484 U.S. 305 (1988) .......................................................................................... 5

*Los Angeles v. Lyons*
  461 U.S. 95 (1983) ...................................................................................... 9, 11

*Mandel v. Bradley*
  432 U.S. 173 (1977) ...................................................................................... 5, 8

*Mayfield v. United States*
  599 F.3d 964 (9th Cir. 2010) .......................................................................... 11

*Moore v. Ogilvie*
  394 U.S. 814 (1969) .......................................................................................... 5

*Munns v. Kerry*
  782 F.3d 402 (9th Cir. 2015) ................................................................ 9, 10, 12

*Murphy v. Hunt*
  455 U.S. 478 (1982) .................................................................................. 3, 5, 7

*North Carolina Right to Life Committee Fund for Independent Political*
  *Expenditures v. Leake*
  524 F.3d 427 (4th Cir. 2008) ............................................................................ 6

*O'Shea v. Littleton*
  414 U.S. 488 (1974) ........................................................................................ 13

*Rosario v. Rockefeller*
  410 U.S. 752 (1973) .......................................................................................... 5

iii

## TABLE OF AUTHORITIES
### (continued)

**Page**

*Sample v. Johnson*
    771 F.2d 1335 (9th Cir. 1985)................................................................................7

*San Diego County Gun Rights Committee v. Reno*
    98 F.3d 1121 (9th Cir. 1996)...................................................................10, 11, 12

*Schaefer v. Townsend*
    215 F.3d 1031 (9th Cir. 2000)...............................................................................6

*Schlesinger v. Reservists Committee to Stop the War*
    418 U.S. 208 (1974)............................................................................................11

*Spencer v. Kemna*
    523 U.S. 1 (1998)..............................................................................................1, 3

*Stelmachers v. Verifone Sys., Inc.*
    No. 5:14-cv-04912-EJD, 2016 WL 6835084 (N.D. Cal. Nov. 21, 2016).................11

*Stop Reckless Economic Instability Caused by Democrats v. FEC*
    814 F.3d 221, 230-31 (4th Cir. 2016) ...............................................................5, 6

*Storer v. Brown*
    415 U.S. 724 (1974)...........................................................................................5, 8

*Van Wie v. Pataki*
    267 F.3d 109 (2d Cir. 2001)...............................................................................5, 7

*Weinstein v. Bradford*
    423 U.S. 147 (1975)..............................................................................................3

*Wittman v. Personhuballah*
    136 S. Ct. 1732 (2016)........................................................................................10

*Wolfson v. Brammer*
    616 F.3d 1045 (9th Cir. 2010)........................................................................4, 6, 8

**STATUTES**

United States Code, Title 42
    § 1983...................................................................................................................2

California Elections Code
    § 6906...................................................................................................... *passim*
    § 18002...........................................................................................................2, 13

1

## TABLE OF AUTHORITIES
**(continued)**

2
**Page**

3   California Government Code

4       § 1222 .................................................................................................................13
    § 67106 ...............................................................................................................13

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# INTRODUCTION

In their opening brief, Attorney General Xavier Becerra and Secretary of State Padilla (the "Official Capacity Defendants"), showed that this Court lacks jurisdiction over Plaintiff Vinzenz J. Koller's claims for injunctive and declaratory relief.  Dkt. No. 88 ("MTD").  The Official Capacity Defendants gave two separate reasons why this Court lacks subject matter jurisdiction over the claims that Koller has asserted against them in his Amended Complaint for Declaratory and Injunctive Relief, Dkt. No. 83 ("Complaint" or "Compl.").  First, Koller's claims for retrospective relief relating to his past service as a presidential elector during the 2016 election are moot.  Second, Koller has failed to demonstrate that he has standing to assert claims for prospective injunctive or declaratory relief relating to future elections in which Koller can only speculate about whether he will be an elector or whether electors will face the same kind of dilemma about how to vote as he claims he faced in the 2016 election.

In response, Koller argues that his case is saved from its apparent mootness by an exception to the mootness doctrine for cases that are "capable of repetition, yet evading review."  Dkt. No. 92 ("Opp.").  He acknowledges that this exception ordinarily requires a two-part showing: (1) the "challenged action was in its duration too short to be fully litigated prior to its cessation or expiration" and (2) there is "a reasonable expectation that the same complaining party would be subjected to the same action again."  Opp. at 21 (citing *Spencer v. Kemna*, 523 U.S. 1, 17 (1998) and *FEC v. Wisc. Right to Life, Inc.*, 551 U.S. 449, 462 (2007)).  Koller argues, however, that "the second-prong requirement is relaxed" in election cases.  But Koller's argument ignores recent Supreme Court and Ninth Circuit cases that have applied the ordinary two-part test in election cases, instead citing to older cases, many of which pre-date the Supreme Court's development of the two-part test.

Koller also largely ignores the Official Capacity Defendants' arguments that he has failed to demonstrate standing to bring his claims for prospective injunctive and declaratory relief.  He does not address or distinguish the governing case law that requires him to show that he is "realistically threatened" by a future repetition of the alleged constitutional violation in order to obtain prospective injunctive or declaratory relief.  He argues that the challenged Elections Code

1 provisions subject him to a personal injury because he could possibly be fined or charged with a

2 crime, under Elections Code section 18002, if he voted in a way that is inconsistent with

3 Elections Code section 6906 in some future election.  However, he does not meaningfully

4 distinguish the governing Ninth Circuit case law that says this kind of speculative and avoidable

5 alleged injury to a public official is insufficient to create standing.

6       Applying the proper tests and governing case law, this Court lacks jurisdiction to award the

7 declaratory or injunctive relief sought against Attorney General Becerra or Secretary of State

8 Padilla in their official capacities.  Accordingly, the Court should dismiss Koller's claims against

9 those defendants.

10                                   **ARGUMENT**

11 **I.     KOLLER'S CLAIMS FOR INJUNCTIVE AND DECLARATORY RELIEF RELATED TO THE
        2016 ELECTION ARE MOOT.**
12

13       Koller concedes that his "initial request for a temporary restraining order and injunction as

14 to the December 19, 2016 electoral ballot casting is now moot."  Opp. at 21.  Yet, he argues that

15 "his request for declaratory relief, and the added 42 U.S.C. § 1983 claims in his Amended

16 Complaint claims [sic], requesting declaratory relief, prospective injunctive relief, and damages

17 are not."  Opp. at 21.  Koller's damages claims are not brought against the Official Capacity

18 Defendants, and are the subject of a separate motion to dismiss, Dkt. No. 94.  His claim for

19 "prospective injunctive relief" necessarily focuses on future elections.  The Official Capacity

20 Defendants do not contend that claims about future elections are moot, but that Koller lacks

21 standing to assert such claims, as shown in their opening brief, MTD at 9-13, and below.  Thus,

22 with respect to the Official Capacity Defendants, it is only Koller's claim for declaratory relief

23 that seeks "retroactive relief" based on the 2016 election, Compl. at 2 (preliminary statement).

24       As to his claim for declaratory relief, Koller does not dispute that a decision in his favor

25 would no longer have any effect on his vote as an elector in the 2016 election.  Instead, he seeks

26 to invoke the "capable of repetition, yet evading review" exception to the mootness doctrine,

27 arguing that these issues should be decided now because they "could affect Plaintiff, or other

28 presidential electors in the future."  Opp. at 22.  Showing that a similar issue could recur

1   involving "other presidential electors," however, is not sufficient to demonstrate that this Court

2   has jurisdiction to hear Koller's claim regarding the 2016 election.

3       Koller acknowledges that courts apply a two-part test to determine whether the "capable of

4   repetition, yet evading review" exception applies.  Opp. at 21.  All parties agree that the two parts

5   are:  (1) the "challenged action was in its duration too short to be fully litigated prior to its

6   cessation or expiration" and (2) there is "a reasonable expectation that the same complaining

7   party would be subjected to the same action again."  Opp. at 21 (citing *Spencer*, 523 U.S. at 17

8   and *FEC v. Wisc. Right to Life, Inc.*, 551 U.S. at 462); *see also Murphy v. Hunt*, 455 U.S. 478,

9   482 (1982).  Koller argues, however, that there is a special rule for "election cases" where "the

10  second-prong requirement is relaxed."  Opp. at 21.

11      **A.    The "Same Party" Requirement Applies in Election Cases.**

12      There is no special rule for election cases.  Rather, in recent election cases both the

13  Supreme Court and the Ninth Circuit have applied the ordinary two-part test that the Supreme

14  Court developed in 1975.  *See Weinstein v. Bradford*, 423 U.S. 147, 149 (1975) (describing origin

15  of two-part test).  For example, in *Davis v. FEC*, 554 U.S. 724 (2008), the Supreme Court

16  reviewed a challenge from a self-financed candidate to certain campaign disclosure requirements.

17  The Supreme Court set out the ordinary two-part test.  *Id.* at 735.  It then noted the FEC's

18  concession that the case would be capable of repetition if the candidate "planned to self-finance

19  another bid for a House seat."  *Id.* at 736.  The Supreme Court concluded that a "public statement

20  expressing his intent" to self-finance another campaign for the House satisfied the second prong

21  of the ordinary test, even though this public statement was apparently not in the operative

22  complaint.  *Id.*

23      Likewise, in *FEC v. Wisconsin Right to Life*, the Supreme Court explained that "[t]he

24  second prong . . . requires a 'reasonable expectation' or a 'demonstrated probability' that 'the

25  same controversy will recur involving the same complaining party.'"  551 U.S. at 463.  The Court

26  found that this requirement was met because the plaintiff "credibly claimed that it planned on

27  running materially similar future targeted broadcast ads mentioning a candidate within the

28  blackout period, and there is no reason to believe that the FEC will refrain from prosecuting

3

1  violations of" the challenged statute.  *Id.* (citation and internal quotation marks omitted).  As

2  Koller points out, the Supreme Court did not require "repetition of every 'legally relevant'

3  characteristic" of the advertisements "down to the last detail."  *Id.*  However, the Supreme Court

4  did require a "credibl[e]" claim that the same party would run "materially similar" ads in a future

5  election.  *Id.*

6      The Ninth Circuit has also applied the two-part test in recent election cases.  For example,

7  the Ninth Circuit applied the two-part test in *Akina v. Hawaii*, 835 F.3d 1003 (9th Cir. 2016),

8  which involved a planned election to send delegates to a constitutional convention to discuss

9  Native Hawaiian self-governance.  *Id.* at 1008.  After noting that the capable of repetition

10  exception is "reserved for 'extraordinary cases,'" the Ninth Circuit set out the ordinary two-part

11  test.  *Id.* at 1101.  The court then concluded that the appeal was moot because there was "no

12  reasonable expectation that the plaintiffs will be subject to the same injury again" because the

13  nonprofit organization that had received grant funds to call the election had "disavowed any

14  election."  *Id.*  The court held that the appeal was moot even though it noted that it was "possible,

15  and perhaps even likely, that a different group of individuals who are not parties to this case will

16  try to hold a ratification election with private and public funds.  *Id.* at 1010.  The court concluded

17  that deciding the appeal before any such future controversy took shape "would amount to an

18  impermissible advisory opinion."  *Id.*

19      In contrast, the Ninth Circuit found the capable of repetition exception applied in *Arizona*

20  *Green Party v. Reagan*, because "the Green Party" would "need to requalify as a new party every

21  two election cycles" in the future.  838 F.3d 983, 987 (9th Cir. 2016).  In other words, the case

22  was not moot because the "same party" requirement was satisfied.  *Id.*; s*ee also Wolfson v.*

23  *Brammer*, 616 F.3d 1045, 1053-54 (9th Cir. 2010) (applying two-part test in election case);

24  *Farris v. Seabrook*, 677 F.3d 858, 863 (9th Cir. 2012) (same).

25      These recent cases applying the "same party" requirement control over any contrary, earlier

26  authority that Koller cites to argue that courts have "relaxed" the second prong in election cases.

27  To start, Koller cites numerous cases that predate the development of the two-part test in 1975.

28  *See* Opp. at 20 (citing *Storer v. Brown*, 415 U.S. 724, 737 n.8 (1974), *Brown v. Choate*, 411 U.S.

4

1    452, 457 n.4 (1973), *Rosario v. Rockefeller*, 410 U.S. 752, 756 n.5 (1973), *Dunn v. Blumenstein*,

2    405 U.S. 330, 333 n.2 (1972), and *Moore v. Ogilvie*, 394 U.S. 814, 816 (1969)).  As explained in

3    the Official Capacity Defendants' opening brief, these cases no longer control.  MTD at 6 n.3.

4        The Official Capacity Defendants acknowledge that some confusion over how the capable

5    of repetition test applied to election cases continued after 1975.  Koller cites to examples of

6    election cases after 1975 that addressed mootness in a brief footnote that merely referenced back

7    to footnote 8 in *Storer v. Brown* without any additional analysis.  *See* Opp. at 20 (citing *Anderson*

8    *v. Celebrezze*, 460 U.S. 780, 784 n.3 (1983) and *Mandel v. Bradley*, 432 U.S. 173, 175 n.1

9    (1977)).

10       Cases like these caused Justice Scalia to argue, in a dissent in 1988, that, in "some of [its]

11   election cases," the Supreme Court had "dispens[ed] with the same-party requirement" and

12   "focus[ed] instead upon the great likelihood that the issue will recur *between the defendant and*

13   *the other members of the public at large*."  *Honig v. Doe*, 484 U.S. 305, 335-36 (1988) (Scalia, J.,

14   dissenting).  Justice Scalia noted that "[a]rguably those cases have been limited to their facts, or

15   to the narrow areas of abortion and election rights" by the Supreme Court's "more recent

16   insistence" on a showing that the "'*same complaining party*' would be subjected to the same

17   action again."  *Id.* (quoting *Murphy v. Hunt*, 455 U.S. at 482 and citing other cases).

18       Other plaintiffs have tried to rely on *Honig* to make the same argument as Koller—that the

19   "same party" requirement does not apply in election cases.  That argument has been rejected,

20   especially in light of the recent Supreme Court decisions in *Davis* and *Wisconsin Right to Life*.

21   *See, e.g.*, *Stop Reckless Economic Instability Caused by Democrats* ("*Stop Reid*") *v. FEC*, 814

22   F.3d 221, 230-31 (4th Cir. 2016) (noting "the Supreme Court has actually applied the same-

23   complaining-plaintiff rule in two relatively recent election cases" and concluding "we must leave

24   to the Supreme Court the decision of whether it wishes to create an exception to, or otherwise

25   limit, that rule"); *see also Van Wie v. Pataki*, 267 F.3d 109, 114 (2d Cir. 2001) (concluding that

26   "same party" rule applied in election context).  The Court should reject Koller's argument for the

27   same reasons.

28

1    Koller argues that an earlier case from the Fourth Circuit supports finding an exception to

2    mootness "without any inquiry into the future plans of the plaintiffs to run for office."  Opp. at 22

3    (citing *North Carolina Right to Life Committee Fund for Independent Political Expenditures v.*

4    *Leake*, 524 F.3d 427, 435 (4th Cir. 2008)).  *North Carolina Right to Life*, however, does not

5    support an elimination of the "same party" requirement.  Rather, the Fourth Circuit specifically

6    applied the "same party" test, finding that there was "a reasonable expectation that the challenged

7    provisions will be applied *against the plaintiffs* again during future election cycles."  524 F.3d at

8    435 (emphasis added).  The court merely held that an ex-candidate's specific allegation of "an

9    intent to run again in a future election" was not the only possible way to meet the "same party"

10   requirement.  *Id.*; *see also Stop Reid*, 814 F.3d at 232 (citing *North Carolina Right to Life*).  This

11   is perfectly consistent with *Davis*, which permitted consideration of a "public statement" by the

12   candidate about his intentions to self-fund another campaign that apparently was not included in

13   the operative complaint.  554 U.S. at 736.[1]

14   **B.    Koller Does Not Meet the "Same Party" Requirement**

15   Koller argues that he has been an elector in 2008 and 2016 and that he has "continued

16   eligibility" and is "willing to serve again if asked."  Opp. at 23; *see also* Compl. ¶¶ 25-26, 58.

17   Koller does not dispute that these points do not distinguish him from the many hundreds of

18   people who have previously served as electors or the millions of people who are eligible to serve

19   as an elector in future elections.  Instead, he argues that the Court should hear his claims because

20   "these issues could affect Plaintiff directly, or other presidential electors in the future."  Opp. at

21   22.  He does not offer anything, however, that would show a "reasonable expectation" that the

22

23

24        [1] To the extent that the Ninth Circuit's decision in *Schaefer v. Townsend*, 215 F.3d 1031
     (9th Cir. 2000), cited in *North Carolina Right to Life* (but not cited by Koller), refused to apply
25   the "same party" requirement in election cases, it is no longer viable after the Supreme Court's
     decisions in *Wisconsin Right to Life* and *Davis* and later Ninth Circuit cases applying the ordinary
26   two-part test in election cases.  In 2010, the Ninth Circuit recognized that *Schaefer* may no longer
     be viable, but left "for another case the significance of *Schaefer* in this Circuit."  *Wolfson*, 616
27   F.3d at 1056.  Subsequently, the Ninth Circuit has applied the "same party" requirement in
     election cases without expressly addressing the viability of *Schaefer*.  *See, e.g., Akina*, 835 F.3d at
28   1011; *Farris*, 677 F.3d at 863.

1   same controversy will arise in a future election in which Koller would again be chosen as an

2   elector, as opposed to the many others who share his eligibility and willingness to serve.

3         Koller does not dispute the authorities cited by the Official Capacity Defendants that

4   distinguish between the required "reasonable expectation" and a mere "theoretical possibility."

5   MTD at 8-9 (citing *Murphy*, 455 U.S. at 482, *Sample v. Johnson*, 771 F.2d 1335, 1340 (9th Cir.

6   1985), and *Van Wie*, 267 F.3d at 114-15).  Koller does not cite, much less distinguish, *Sample* or

7   *Van Wie*, and the only thing he says about *Murphy* is that it "dealt with a criminal defendant

8   challenging his entitlement to pretrial bail, a moot point once he was convicted."  Opp. at 21.

9   Koller does not acknowledge the numerous election cases that cite to *Murphy*.  *See, e.g.*, *Wisc.*

10  *Right to Life*, 551 U.S. at 463 (citing *Murphy*); *Van Wie*, 267 F.3d at 114-15 (same).  Nor does he

11  address the substantive point that speculation about theoretical possibilities cannot meet his

12  burden to satisfy the "same party" requirement.  For two separate reasons, Koller's arguments

13  establish no more than a theoretical possibility, rather than the required "reasonable expectation,"

14  that the same controversy will recur in a future election in which he is serving as an elector.

15        First, Koller has not shown that it is reasonably likely that he will be asked to serve again as

16  an elector.  He argues that the Official Capacity Defendants' argument based on *Abdurrahman v.*

17  *Dayton*, No. 16-cv-4279 (PAM/HB), 2016 WL 7438193, at *2 (D. Minn. Dec. 23, 2016), that

18  future Democratic candidates will be less likely to choose him as an elector now that he has

19  "identified himself" as an elector who may not vote for the Democratic Party's nominee is

20  "unfounded speculation."  Opp. at 23.  He claims he could "amend to add further facts that can set

21  that speculation to rest."  Opp. at 23.  If he has facts, he should have included them in his

22  complaint.  It is Koller's burden to show a "reasonable expectation" that the controversy will

23  recur as to him.  As things stand, he does not even allege who chose him to be an elector or why,

24  much less any facts that would show that person would be likely to run again in future primaries,

25  win the most votes in those primaries, or choose Koller from hundreds of thousands or millions of

26  eligible potential electors.

27        These contingencies, which are beyond Koller's control and rest within the discretion of

28  unknown, independent third parties, distinguish Koller's situation from the cases that found other

7

1   election controversies were not moot.  In those cases, the ex-candidates could show that the

2   controversy was likely to recur as to them by showing that they would run for office again—a

3   choice that was entirely within the candidate's control.  *See, e.g., Davis*, 554 U.S. at 736

4   (candidate made "public statement" that he would "self-finance another bid for a House seat");

5   *Wolfson*, 616 F.3d at 1055 (candidate had "declared his intention to seek elected judicial office in

6   the future and declared his desire"); *see also Arizona Green Party*, 838 F.3d at 987 ("the Green

7   Party will need to requalify as a new party every two election cycles"); *Farris*, 677 F.3d at 863-64

8   ("reasonable expectation" that proponents would attempt another recall).  Moreover, many of the

9   early decisions involved minor party or "independent" candidates who were likely to run for

10  office repeatedly and did not face the same level of competition for the party's nomination as a

11  major party candidate would.  *See, e.g., Storer*, 415 U.S. at 727; *Mandel*, 432 U.S. at 174;

12  *Anderson*, 460 U.S. at 782.  In contrast, Koller is likely to face stiff competition from millions of

13  Democrats in California for one of only 55 seats as a presidential elector representing California

14  and he cannot become an elector simply by making his own choice to run for that office.  In these

15  circumstances, Koller should be required to allege more than "eligibility" and "willingness to

16  serve" to show that there is a "reasonable expectation" that he will be chosen as an elector in

17  some future election.

18       Second, even if Koller could show a reasonable probability that he would be chosen as an

19  elector in some future election, numerous contingencies remain that prevent him from showing

20  that the same controversy is likely to recur in that election.  Koller argues that the "law does not

21  require" him to show that "he is realistically threatened by future repetition of the dilemma faced

22  in the 2016 election."  Opp. at 23.  But that is exactly what the law requires.  He has the burden to

23  show there is "a reasonable expectation" that *he* "would be subjected to the same action again."

24  *Davis*, 554 U.S. at 735.  This requires him to show that he could find himself in a position where

25  he desires to vote contrary to Elections Code section 6906 in some future election.  For example,

26  in *Davis*, the candidate showed that he was likely to "self-finance another bid for a House seat,"

27  not merely that he would run again, given that the challenged laws concerned self-financed

28

1   candidates.  *Id.* at 736.  Likewise, in *Wisconsin Right to Life*, the plaintiff "credibly claimed" that

2   it planned to run "materially similar" advertisements in future elections.  551 U.S. at 463.

3       Koller's only effort to meet his burden on this point is to argue that "the presidential

4   candidate that caused him such great concern" has "already begun his campaign for 2020."  Opp.

5   at 23; *see also* Compl. ¶¶ 38, 58.  But Koller ignores the many contingencies pointed out in the

6   Official Capacity Defendants' opening brief that make the controversy unlikely to recur in a

7   future election in which Koller is an elector.  MTD at 8.  Among many other possibilities,

8   President Trump may not run in 2020, the election may be a landslide for one party or the other,

9   or the candidate that Koller favors may win in enough states that Koller wants electors to vote

10  consistent with the popular vote in their respective states.  In short, Koller's bare allegations about

11  President Trump's plans to run in 2020 do not create a "reasonable expectation" that this

12  controversy will recur in a future election in which Koller is serving as an elector.

13  **II.  KOLLER LACKS STANDING TO SEEK INJUNCTIVE OR DECLARATORY RELIEF
       RELATED TO FUTURE ELECTIONS.**

14

15      As for prospective relief, Koller does not have Article III standing to seek injunctive or

16  declaratory relief relating to some future election.  Koller barely mentions standing in his

17  opposition.  He addresses only one of the three arguments made in the Official Capacity

18  Defendants' opening brief.  He does not cite, let alone distinguish, the governing cases that

19  require him to show that he is "realistically threatened" by a future repetition of the alleged

20  constitutional violation in order to obtain prospective injunctive or declaratory relief.  *See*

21  *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1147 (2013); *Los Angeles v. Lyons*, 461 U.S. 95,

22  104, 109 (1983); *Munns v. Kerry*, 782 F.3d 402, 409 (9th Cir. 2015); *Gest v. Bradbury*, 443 F.3d

23  1177, 1181 (9th Cir. 2006).

24      In an effort to escape his burden to demonstrate that he has standing, Koller argues that this

25  Court "has already acknowledged Plaintiff's standing."  Opp. at 17.  The Court did no such thing.

26  Most significantly, Koller's claims about future elections beyond 2016 were not at issue in his

27  original complaint and were not addressed in this Court's order denying Koller's request for a

28  temporary restraining order or preliminary injunction.  Dkt. No. 37 at 1 (describing timeline for

9

1    2016 election).  Thus, this Court's ruling that Koller had satisfied the first part of the four-part test

2    for obtaining a preliminary injunction by raising a question "serious enough to require litigation,"

3    Opp. at 17 (citing Dkt. No. 37 at 10), has no bearing on whether Koller would have standing to

4    seek prospective injunctive relief regarding future elections after the 2016 election was

5    completed.

6         Moreover, even if Koller had standing at the outset of the case, that is not sufficient to

7    establish this Court's jurisdiction to grant him prospective injunctive or declaratory relief.

8    Rather, Koller's obligation to demonstrate that he suffers an "injury in fact" sufficient to create

9    standing "persists throughout the life of the lawsuit."  *Wittman v. Personhuballah*, 136 S. Ct.

10   1732, 1736 (2016); *Arizonans for Official English v. Arizona*, 520 U.S. 43, 67 (1997) ("an actual

11   controversy must be extant at all stages of review, not merely at the time the complaint is filed").

12   Thus, in *Wittman*, even if Representative Forbes possessed standing when he first intervened, the

13   Court lacked jurisdiction because he did not possess standing at the time of the Supreme Court's

14   decision.  136 S. Ct. at 1737.  Likewise, in *Arizonans for Official English*, even though the

15   plaintiff "had a viable claim at the outset of the litigation," she lost standing when she later left

16   her state job to work in the private sector.  *Arizonans for Official English*, 520 U.S. at 67.  For the

17   same reasons, Koller's status at the outset of the litigation as a "duly chosen Presidential Elector

18   for the 2016 presidential election," Compl. ¶ 1; Opp. at 1, does not establish that he has standing

19   to seek prospective relief regarding future elections now that his service as an elector has ended.

20   Compl. ¶ 10 ("elector's actual service last[s] for a single day"); *see also* Opp. at 2.

21        As shown in the Official Capacity Defendants' opening brief, there are three separate

22   reasons why Koller cannot establish his standing to seek prospective injunctive or declaratory

23   relief.

24        **A.    A Theoretical Possibility That Koller Will Someday Be an Elector Again Is**
         **Too Speculative to Support Standing.**

25

26        Koller does not seriously dispute that a plaintiff does not have standing where the chain of

27   events that might lead to alleged injury is hypothetical, attenuated, or speculative.  *See, e.g.*,

28   *Clapper*, 133 S. Ct. at 1148; *Munns*, 782 F.3d at 409-10; *San Diego County Gun Rights*

                                              10

1    *Committee v. Reno*, 98 F.3d 1121, 1127 (9th Cir. 1996); *Stelmachers v. Verifone Sys., Inc.*, No.

2    5:14-cv-04912-EJD, 2016 WL 6835084 (N.D. Cal. Nov. 21, 2016).  Nor does he challenge the

3    point that a theory of standing that requires "guesswork as to how independent decisionmakers

4    will exercise their judgment" is inadequate.  *See Clapper*, 133 S. Ct. at 1150.  Instead, Koller

5    appears to argue that the capable of repetition exception to the mootness doctrine relieves him of

6    his obligation to demonstrate his standing to seek prospective relief relating to future elections.

7    Opp. at 21 ("Plaintiff need not prove with certainty his future status as an elector for the 'capable

8    of repetition, yet escaping review' exception to apply.").

9         Standing, however, is a constitutional prerequisite to this Court's jurisdiction.  Article III

10   requires Koller to demonstrate a "personal stake in the outcome" for each form of relief that he

11   seeks in order to "assure that concrete adverseness which sharpens the presentation of issues"

12   necessary for the proper resolution of constitutional questions.  *Lyons*, 461 U.S. at 101 (quoting

13   *Baker v. Carr*, 369 U.S. 186, 204 (1962)); *see also Mayfield v. United States*, 599 F.3d 964, 969

14   (9th Cir. 2010) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Serv., Inc.*, 528 U.S. 167, 185

15   (2000)) (plaintiff must demonstrate standing for each form of relief sought).  Moreover, these

16   constitutional constraints on the power of the federal courts are particularly important where, as

17   here, a party seeks resolution of a novel constitutional issue that has not been decided by any

18   appellate court.  *See Schlesinger v. Reservists Committee to Stop the War*, 418 U.S. 208, 221

19   (1974) (discussing significance of concrete injury requirement to constitutional adjudication, "the

20   most important and delicate" responsibility of federal courts); *Golden v. Zwickler*, 394 U.S. 103,

21   110 (1969) ("[n]o federal court . . . has jurisdiction to pronounce any statute, either of a State or

22   of the United States, void, because irreconcilable with the Constitution, *except as it is called upon*

23   *to adjudge the legal rights of litigants in actual controversies*.") (internal quotation omitted).  As

24   the Supreme Court has recently reiterated, "no principle is more fundamental to the judiciary's

25   proper role in our system of government than the constitutional limitation of federal-court

26   jurisdiction to actual cases or controversies."  *Clapper*, 133 S. Ct. at 1146 (citations and internal

27   quotations omitted).  Koller is required to demonstrate standing to proceed in this Court.  *See id.*

28

Koller's "eligibility" and "willing[ness] to serve," Opp. at 23, are not sufficient to establish his standing to seek prospective relief related to future elections.  As the Official Capacity Defendants showed in their opening brief, Koller has not established that his prospects for being chosen as an elector in some future election is anything more than a "theoretical chance."  MTD at 10-11.  Koller does not demonstrate that the chances are more than theoretical or make any effort to distinguish *Clapper*, *Munns*, or *Herron for Congress v. FEC*, 903 F. Supp. 2d 9 (D.D.C. 2012).  Nor does he dispute that unknown, independent decisionmakers will then have complete discretion to select who will serve as electors in 2020 and other future elections.  Koller argues that he "*had* concrete plans to violate California Elections Code § 6906, but was intimidated, threatened, and coerced to do otherwise."  Opp. at 19 (emphasis added).  But he does not argue that he has a concrete plan to violate those statutes in any future election.  Nor could he.  He has no way to know if he will even be chosen as an elector in any specific, future election.  Koller's hope, aspiration, or "willing[ness]" to serve as an elector in some future election is insufficient to give him standing to seek injunctive or declaratory relief.  *See*, *e.g.*, *Clapper*, 133 S. Ct. at 1150; *Munns*, 782 F.3d at 409-10; *San Diego County Gun Rights Committee*, 98 F.3d at 1127.

## B.   Other Contingencies Also Prevent Koller from Showing a "Certainly Impending" Future Injury.

Koller also fails to address the numerous contingencies that would remain, even if he could allege facts to show a substantial probability that he would be an elector in a specific future election.  Koller argues only that "the presidential candidate that caused him such great concern" has "already begun his campaign for 2020."  Opp. at 23; *see also* Compl. ¶¶ 38, 58.  But Koller does not deny that he can only speculate whether those plans will come to fruition.  Moreover, Koller says nothing about who he thinks the Democratic candidate will be or what will happen in the 2020 election that determines which party's electors will serve in the various states.  He does not deny that there are numerous scenarios in which he would be likely to vote for the Democratic candidates and thus avoid any tension with Elections Code section 6906, even if he were chosen to serve as an elector.  See MTD at 12.  Those numerous uncertainties and contingencies prevent

12

1    Koller from showing that it is likely he would want to vote in a way that is inconsistent with

2    Elections Code section 6906 in some future election.

3    **C.   Public Officials Do Not Have Standing to Sue Over a Personal Dilemma Involved In Performing Their Official Duties.**

4

5    Koller argues that this case "involves a personal injury to Plaintiff, not a 'personal

6    dilemma' of a public official." Opp. at 17.  Koller does not deny that electors act as public

7    officials, but argues, instead, that his alleged injury is personal because the California Elections

8    Code sections 6906 and 18002 potentially "subject him to *personally* being fined, *personally*

9    being thrown in jail, *personally* having a felony conviction, [and] *personally* losing all civil rights

10   denied to persons convicted of felonies." Opp. at 19.

11   Koller's argument does not distinguish this case from *City of South Lake Tahoe v.*

12   *California Tahoe Regional Planning Agency*, 625 F.2d 231, 237 (9th Cir. 1980).  There, the city

13   councilmembers argued that a failure to enforce the regulations at issue "could result in personal

14   criminal liability" under California Government Code sections 1222 and 67106.  *Id.* at 233.  The

15   Ninth Circuit held that possible "criminal liability" did not "transform the councilmembers'

16   abstract disagreement with the legislature" into "judicially cognizable concrete injury." *Id.* at

17   237-38.  The court noted that allowing standing on this theory "would convert all officials

18   charged with executing statutes into potential litigants." *Id.* at 238.  It also held that the

19   councilmembers could not show standing because their alleged injuries were contingent on future

20   events that might not materialize and could be avoided.  *Id.* at 238-39.  Specifically, they would

21   be injured only *if* they violated the regulations at issue and *if* they were prosecuted for the

22   violation.  *Id.* at 238 (quoting *O'Shea v. Littleton*, 414 U.S. 488, 497 (1974)).

23   As in *South Lake Tahoe*, no prosecution has been threatened here, either as to the 2016

24   election or any future election.  Koller alleges only that Secretary of State Padilla and former

25   Attorney General Harris "fail[ed] and refus[ed] to disclaim any intent to criminally prosecute

26   Plaintiff under California Election Code §§ 6906 and 18002 if he voted for anyone for President

27   and Vice President other than Clinton and Kaine." Compl. ¶¶ 72-75; *see also* Compl. ¶ 52.  This

28   is not sufficient to create a "certainly impending" future, personal injury that would confer

13

1   standing to challenge the application of these Elections Code provisions in future elections,

2   especially since Koller has not shown that he is likely to be serving as an elector in any specific,

3   future election.

4        Moreover, Koller does not deny that he would have options that would allow him to avoid

5   any personal criminal liability.  He could, of course, vote in a manner that is consistent with

6   section 6906, as he did in 2016.  *See South Lake Tahoe*, 625 F.2d at 237; *see also Drake v.*

7   *Obama*, 664 F.3d 774, 780 (9th Cir. 2011) (military officers who disputed President Obama's

8   eligibility to serve as president could avoid disciplinary action by "obey[ing] the orders of the

9   Commander-in-Chief").  He could also avoid any personal injury by "resignation with honor."

10  *South Lake Tahoe*, 625 F.2d at 240 (Sneed, J., concurring).  Koller calls Judge Sneed's suggestion

11  "absurd."  Opp. at 19.  He argues that there is "no honor in complying with unconstitutional

12  laws."  Opp. at 19.  But this argument just shows that Koller is pursuing the kind of "abstract

13  outrage at the enactment of an unconstitutional law" that does not confer standing, *South Lake*

14  *Tahoe*, 625 F.2d at 237, rather than truly being concerned about a personal injury such as a

15  possible fine or criminal conviction.  Accordingly, just like the councilmembers in *South Lake*

16  *Tahoe*, Koller lacks Article III standing to seek prospective injunctive or declaratory relief.[2]

17

18

19

20

21

22

23

24        [2] Koller quotes from a Tenth Circuit decision rejecting an argument that Colorado electors

25  lacked standing in *Baca v. Hickenlooper*, No. 16-1482, slip op. at 7 (10th Cir. Dec. 16, 2016), but
    provides a citation to a different district court opinion in that case.  Opp. at 17.  The Tenth

26  Circuit's decision was a preliminary decision on a temporary restraining order issued before the
    2016 election while these plaintiffs were still serving as electors.  *See Baca*, slip op. at 7

27  (emphasizing the "stage of the proceedings" and "preliminary record before us").  In any event,
    the Tenth Circuit did not address *South Lake Tahoe* or its reasoning, which is binding law within

28  the Ninth Circuit.

                                                14

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CONCLUSION**

For these reasons, the Court should dismiss the claims for injunctive and declaratory relief asserted against Attorney General Becerra and Secretary of State Padilla in their official capacities.  The Court lacks subject matter jurisdiction over these claims.  The claims related to the 2016 election are moot and Koller lacks standing to bring claims related to future elections.

Dated:  May 26, 2017                                        Respectfully Submitted,

XAVIER BECERRA
Attorney General of California
MARC A. LEFORESTIER
Supervising Deputy Attorney General


                                        /s/ Kevin A. Calia
KEVIN A. CALIA
Deputy Attorney General
*Attorneys for Defendants Attorney General*
*Xavier Becerra and Secretary of State Alex*
*Padilla, in their official capacities*

15