1  MELODY A. KRAMER, SBN 169984
   KRAMER LAW OFFICE, INC.
2  4010 Sorrento Valley Blvd., Ste. 400
3  San Diego, California 92121
   Telephone (855) 835-5520
4  kramerlawinc@gmail.com

5  ANDREW J. DHUEY, SBN 161286
6  456 Boynton Avenue
   Berkeley, CA 94707
7  Telephone (510) 528-8200
   dhueyaj@yahoo.com
8
   *Attorneys for Plaintiff*
9

10            UNITED STATES DISTRICT COURT

11       FOR THE NORTHERN DISTRICT OF CALIFORNIA

12

13 VINZENZ J. KOLLER, an individual and Presidential   )  Case No. 5:16-cv-07069
   Elector,                                            )
14                                                     )  **OPPOSITION TO INDIVIDUAL**
15                              Plaintiffs,            )  **CAPACITY DEFENDANTS' MOTION**
                                                       )  **TO DISMISS PLAINTIFF'S AMENDED**
16      v.                                             )  **COMPLAINT [Doc. #94]**
                                                       )
17                                                     )
   JERRY BROWN, in his official capacity as            )
18 Governor for the State of California; KAMALA        )  Date: August 17, 2017
   HARRIS, in her official capacity as Attorney General)  Time: 9:00 a.m.
19 for the State of California; ALEX PADILLA, in his    )  Dept. 4
   official capacity as Secretary                      )  Hon. Edward J. Davila
20 of State for the State of California; and DOES 1-10; )
21                                                     )
                               Defendants.             )
22                                                     )

23

24

25

26

27

28

1

**TABLE OF CONTENTS**

2

INTRODUCTION ................................................................................................. 1

3

FACTUAL SUMMARY ....................................................................................... 1

4

ARGUMENT ........................................................................................................ 6

5

I.   STANDARD FOR REVIEW OF FED.R.CIV.P. 12(b)(6) MOTIONS. ............................... 6

6

II.   INDIVIDUAL CAPACITY DEFENDANTS ARE NOT ENTITLED TO ABSOLUTE
      IMMUNITY. ................................................................................................... 7

7

8

III.  INDIVIDUAL CAPACITY DEFENDANTS ARE NOT ENTITLED TO QUALIFIED
      IMMUNITY BECAUSE THEY VIOLATED CLEARLY ESTABLISHED LAW. ............ 8

9

10

    A.   Standard for Qualified Immunity. ................................................... 8

11

    B.   Clearly established federal law – 18 U.S.C. § 594 -- prohibits intimidation,
        threats, coercion or interference with the votes place by presidential electors. ...... 8

12

    C.   Clearly established state law – California Election Code § 18540(a) –
        prohibits intimidation, threats, coercion or interference with any voter. ............... 9

13

    D.   Intimidation of voters comes in many forms, including threats of
        criminal prosecution. ................................................................... 10

14

    E.   Election Code § 6906 is preempted by federal law under the
        Supremacy Clause. ..................................................................... 14

15

16

    F.   Individual Capacity Defendants violated clearly established federal and
        state law. ................................................................................. 15

17

IV.  INDIVIDUAL CAPACITY DEFENDANTS ALSO VIOLATED
      CLEARLY ESTABLISHED CONSTITUTIONAL LAW ................................................ 17

18

19

V.   THE SECOND CAUSE OF ACTION FOR DEPRIVATION OF CIVIL RIGHTS,
      42 U.S.C. § 1983, FOR PAST CONDUCT IS SUFFICIENTLY PLEAD. ........................ 21

20

21

VI.  LEAVE TO AMEND SHOULD BE FREELY GIVEN, IF NEEDED ................................. 22

22

CONCLUSION ................................................................................................... 23

23

24

25

26

27

28

# TABLE OF AUTHORITIES

### Constitution

U.S. Constitution, Art. II, Sec. 1 .......................................................................... 1, 5, 9, 17, 18, 21

U.S. Constitution, Art. VI.................................................................................................... 14

U.S. Constitution, Twelfth Amendment.......................................................................... 17, 18

### Statutes & Rules

18 U.S.C. § 594 ........................................................................................ 2, 6, 9, 14, 15, 22

42 U.S.C. § 1971(b)............................................................................................................ 11

42 U.S.C. § 1983 .................................................................................................... 1, 8, 21

Fed.R.Civ.P. 12(b)(6) ......................................................................................... 6, 7, 16, 21

Fed.R.Civ.P. 15(b) ............................................................................................................. 22

Elections Code § 6906......................................................................................1-6, 14, 17, 19, 21

Elections Code § 18002......................................................................................1-6, 17, 19, 21

Elections Code § 18540....................................................................................2, 6, 9, 1, 15, 19, 22

Election Code § 29630 ....................................................................................................... 11

### Caselaw

*Anderson v. Creighton,* 483 U.S. 635 (1987) ............................................................... 17

*Ashcroft v. al-Kidd*, 563 U.S. 731 (2011)...................................................................... 6

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)........................................................................... 6

*Babbitt v. Farm Workers,* 442 U.S. 289 (1979) ............................................................ 15

*Baker v. McCollan*, 443 U.S. 137 (1979) ...................................................................... 21

*Bantam Books v. Sullivan*, 372 U.S. 58 (1963) ....................................................... 12, 13

*Boyd v. District of Columbia,* 465 F.Supp.2d 1 (D.D.C.2006)   ................................... 22

*Burns v. Reed*, 500 U.S. 478 (1991) ............................................................................... 7

*Conley v. Gibson*, 355 U. S. 41 (1957)........................................................................... 6

*Council for Periodical Distributors Ass'n v. Evans,* 642 F.Supp. 552 (M.D.Ala.1986),

    *aff'd,* 827 F.2d 1483 (11th Cir.1987) ................................................................. 13

*Cousins v. Lockyer*, 568 F.3d 1063 (9th Cir. 2009) ...................................................... 6

*Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 993 (9th Cir. 2010) ................................. 6

*Davis v. Scherer*, 468 U.S. 183 (1984) .......................................................................... 6

*Dombrowski v. Pfister,* 380 U.S. 479 (1965) .............................................................. 13

*Faulkner v. ADT Sec. Servs., Inc.* 706 F.3d 1017 (9th Cir. 2013) ................................. 6

*Ferguson v. Corinthian Colleges, Inc.*, 733 F.3d 928 (9th Cir.2013) ......................... 14

*Foman v. Davis*, 371 U.S. 178 (1962) ......................................................................... 22

*Gilliam v. Dept. of Justice*, 128 F.Supp.3d 134 (D.C. 2015) ...................................... 23

*Hardeman v. Thomas*, 208 Cal.App.3d 153, 170, 256 Cal.Rptr. 158 (1989) .............. 10

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982) .................................................................. 8

*Hines v. Davidowitz*, 312 U.S. 52 (1941) ................................................................... 14

*Holder v. Humanitarian Law Project,* 561 U.S. 1 (2010) ........................................... 16

*Hope v. Pelzer*, 536 U.S. 730 (2002) .......................................................................... 17

*Hurtado v. California*, 110 U.S. 516 (1884) ................................................................ 21

*Imbler v. Pachtman*, 424 U.S. 409 (1976) .................................................................... 7

*Kalina v. Fletcher*, 522 U.S. 118 (1997) ...................................................................... 7

*MedImmune, Inc. v. Genentech, Inc.,* 549 U.S. 118 (2007) ........................................ 15

*Mitchell* v. *Forsyth*, 472 U.S. 511 (1985) ................................................................... 17

*Mullenix v. Luna,*136 S.Ct. 305 (2015) ........................................................................ 8

*NAACP v. Button*, 371 U.S. 415 (1963) ...................................................................... 18

*Nanavati v. Adecco USA, Inc.,* 99 F. Supp. 3d 1072 (N.D. Cal. 2015), *motion to certify appeal*

    *denied*, 14-CV-04145-BLF, 2015 WL 4035072 (N.D. Cal. June 30, 2015) .................... 14

*Penthouse International v. McAuliffe*, 610 F.2d 1353 (5th Cir. 1980) ......................... 13

*PHE, Inc. v. U.S. Dept. of J.,* 743 F. Supp. 15 (D.D.C. 1990) ..................................... 13

*Ray v. Blair*, 343 U.S. 214 (1952) .......................................................................... 19, 20

Case No. 5:16-CV-07069

*Scheuer v. Rhodes*, 416 U.S. 232 (1974) ................................................................................ 6

*Stebbins v. White*, 190 Cal.App.3d 769, 235 Cal.Rptr. 656 (1987) ............................... 11

*Steffel v. Thompson,* 415 U.S. 452 (1974) ............................................................... 15

*Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334 (2014) ..................................... 15

*U.S. v. McLeod*, 385 F.2d 734 (5th Cir. 1967) ................................................... 11, 12

*U.S. v. Tan Duc Nguyen*, 673 F.3d 1259 (9th Cir. 2012) ............................................ 10

*US Term Limits v. Thornton*, 514 U.S. 779 (1995) ..................................................... 20

*United States v. Board of Educ. of Greene County, Mississippi,* 5 Cir. 1964, 332 F.2d 40 .......... 11

*Virginia v. American Booksellers Assn. Inc.,* 484 U.S. 383 (1988) ............................... 15

*Wesberry v. Sanders*, 376 U.S. 1 (1964) .................................................................. 18

*White v. Pauly*, 137 S. Ct. 548, 2017 WL 69170 (2017) ................................................ 8

*Williams v. Rhodes*, 393 U.S. 23 (1968) ............................................................ 18, 20

<u>Other Authorities</u>

Universal Declaration of Human Rights issued by the United Nations in 1948 ........................... 18

The  Federalist No. 68, at 412 (Alexander Hamilton) (Clinton Rossiter ed., 1961) ............ 4, 19

**INTRODUCTION**

Plaintiff, a presidential elector for the 2016 presidential election, was intimidated and coerced, under threat of felony prosecution, to vote for particular candidates for President and Vice-President, contrary to his rights and obligations under the U.S. Constitution, and contrary to clearly established federal and state statutes prohibiting intimidation, threats, and coercion of voters.

Defendants Kamala Harris (former California Attorney General) and Alex Padilla (California Secretary of State) ("Individual Capacity Defendants") are being sued in their individual capacity for past actions, for their role in the coercion of Plaintiff's voting choice for President and Vice President in 2016.  In the pending Motion to Dismiss (Doc. #94), they claim entitlement to dismissal of the causes of action against them on the grounds of absolute or qualified immunity. They are entitled to neither and their Motion to Dismiss the Amended Complaint should be DENIED.

Plaintiff's Amended Complaint is more than sufficient to withstand the Individual Capacity Defendants' challenges raised here. Plaintiff also has properly and sufficient plead the three causes of action contained within the Amended Complaint, including the two claims against the Individual Capacity Defendants and, to the extent the Court may find any deficiencies, Plaintiff stands ready to amend as necessary.

**FACTUAL SUMMARY**

Plaintiff's Amended Complaint alleged three causes of action, for declaratory relief, and for civil rights violations under 42 U.S.C. § 1983. Plaintiff seeks declaratory relief and a permanent injunction holding that California Elections Code §§ 6906 and 18002 violate the U.S. Constitution, federal law, and state law.

*Amended Complaint Allegations*[1]

Plaintiff Vinzenz J. Koller is a resident of Monterey County, California, and a duly chosen Presidential Elector for the 2016 presidential election. Doc. #83 (Amended Complaint), ¶ 1.

Defendant Kamala Harris was the Attorney General of California and, in such capacity, enforced the laws of the State of California, including Elections Code §§ 6906 and 18002 in December 2016. She has been replaced in her official capacity in the Amended Complaint by Xavier Becerra for prospective injunctive relief, but Harris remains a Defendant in her individual capacity for past actions. See Doc. #83 ¶ 2. Defendant Xavier Becerra is the Attorney General of California and, in such capacity, enforces the laws of the State of California, including *Election Code* §§ 6906 and 18002. Doc. #83 ¶ 3.

Defendant Alex Padilla is the Secretary of State of California and, as such, gives notice of the time and place for the Presidential Electors to vote, and certifies the results of the Presidential Electors' balloting and votes. He is being sued in his official capacity for prospective injunctive relief, but in his individual capacity for past actions. Doc. #83 ¶ 4.

The Constitution does not, nor has it ever, called for election to the office of President by popular vote of the citizens of this country. Doc. #83 ¶ 13. The Constitution has, and always has, called for election to the office of President by Presidential Electors selected by the respective states. Doc. #83 ¶ 14.  Both federal and state statutes enacted over the years since the Constitution was ratified have reaffirmed the importance of the independence of voters at every level of elected office, from dog catcher on up to the president. These statutes include 18 U.S.C. § 594 and California Elections Code § 18540(a). Doc. #83 ¶ 20.

Notwithstanding the Constitutional structure for functioning of Presidential Electors (the "Electoral College") and longstanding state and federal criminalization of any actions to intimidate, threaten, or coerce votes, some individual states have passed laws that do just that – intimidate, threaten, and coerce the votes placed by Presidential Electors for President and Vice President.

---

[1] A more thorough description of the Amended Complaint allegations is contained in the concurrently pending Opposition to Intervenor California Republican Party's Motion to Dismiss Plaintiff's Amended Complaint(Doc. #92).

1    Two such statutes are those challenged in this case - Elections Code §§ 6906 and 18002. Doc. #83

2    ¶ 24.

3         California Elections Code § 6906 requires electors to vote "for that person for President and

4    that person for Vice President of the United States, who are, respectively, the candidates of the

5    political party which they represent . . ." and Elections Code § 18002 calls for punishment for

6    "willfully neglect[ing] or refus[ing] to perform it" or "knowingly and fraudulently act[ing] in

7    contravention" to be punished by fine or imprisonment. See Doc. #83 ¶ 27.

8         During the time period between election day (November 8, 2016) and the date for the

9    electoral college voting to occur (December 19, 2016), U.S. intelligence agencies confirmed that

10   they possessed evidence showing foreign interference in the presidential election with the purpose

11   of favoring Donald J. Trump and undermining Hillary R. Clinton in that election. Doc. #83 ¶ 32.

12   Although not attached to the Amended Complaint, the facts can be amended to attach the

13   unclassified intelligence report confirming these findings.

14        Plaintiff and many other Presidential Electors considered this information of foreign

15   influence in the election to be a matter of grave importance and took affirmative steps to obtain

16   more information from the current President Obama, intelligence agencies, or Congress. Doc. #83

17   ¶ 33.  Presidential Electors in 21 states ("Unbound Presidential Electors") were free to consider the

18   possibility of foreign influence on behalf of one of the presidential candidates or any other

19   circumstance as part of their decision-making process before placing their electoral votes. See Doc.

20   #83 ¶ 34. Presidential Electors in the remaining 29 states, including California, ("Bound

21   Presidential Electors"), were not free to consider these facts. Instead, they were coerced by state

22   statutes into being mere rubberstamps of their political parties. See Doc. #83 ¶ 35.

23        These statutes contain no exceptions whatsoever, not if the candidate for the political party

24   which they represent withdrew, became physically or mentally unable to assume office, or

25   abducted by aliens. In fact, even if the candidate of their political party was discovered to be a

26   foreign agent, compromised and subject to blackmail by a foreign government, or any manner of

27   other disqualifying situations, these statutes would still require Presidential Electors to vote for

28   their political party candidate. Doc. #83 ¶ 42.

Likewise, these statutes contain no exceptions that would allow Presidential Electors to vote on a compromise candidate from another party that would ensure that someone unqualified would not ascend to the offices of President or Vice-President. Doc. #83 ¶ 43.

These statutes prioritize political party loyalty over the best interests of the United States. Doc. #83 ¶ 44. They also defeat the original intent of the founders of this county.  Alexander Hamilton explicitly stated "that that the immediate election should be made by men most capable of analyzing the qualities adapted to the station." Federalist No. 68. The electors (the "men") would be "most likely to possess the information and discernment requisite to such complicated investigations." *Id.* The electors were created so that they, as a deliberative body, would be "detached" and less prone to be influenced by the "heats and ferments" of a raucous election. *Id.* The electors would help ensure "the office of President [would] never fall to the lot of any man who is not in an eminent degree endowed with the requisite qualifications." *Id.* The electors create an "obstacle" to "cabal, intrigue, and corruption" and prevent "foreign powers [from] gain[ing] an improper ascendant in our councils." *Id.* Doc. #83 ¶ 63.

Plaintiff was forced, coerced, and intimidated by Defendants into his decision of how to vote for the offices of President and Vice-President. Doc. #83 ¶ 51. Plaintiff should have been allowed to exercise his judgment and free will to vote for whomever he believes to be the most qualified and fit for the offices of President and Vice President within the circumstances and with the knowledge known on December 19, 2016, whether those candidates are Democrats, Republicans, or from a third party. Doc. #83 ¶ 50.

Individual Capacity Defendants Kamala Harris and Alex Padilla, under color of state law, failed and refused to disclaim the possibility that Plaintiff would be criminally prosecuted under California Election Code §§ 6906 and 18002 if he failed to vote along party lines. Doc. #83 ¶ 52.

At the initial hearing in this case on December 16, 2016, explained to the Court that although there have not been any known prior prosecutions under this statute (see Doc. #36, pg. 6:15-20, 22:25-23:4) the landscape with respect to "faithless electors" seemed to be changing. See Doc. #36, pg. 6:15-20, and referenced Doc. #33. In court briefings, the Defendants said it was

unlikely they would prosecute (see Doc. #29), but when directly asked about their intent in open court, they did not disclaim the threat of prosecution.

> THE COURT:  DOES THE STATE OF CALIFORNIA – CAN YOU SPEAK FOR THE STATE OF CALIFORNIA THIS MORNING AND INFORM US WHETHER OR NOT, IF AN INDIVIDUAL VOTES CONTRARY TO THEIR PLEDGE, WHETHER OR NOT THE PROSECUTION DIVISION OF THE ATTORNEY GENERAL'S OFFICE WOULD ENGAGE AND IS GEARED UP TO ENGAGE IN PROSECUTION OF AN INDIVIDUAL?
>
> MR. CALIA: THE STATE OF CALIFORNIA CANNOT GIVE AN ELECTOR PERMISSION IN ADVANCE TO VIOLATE HIS PLEDGE, THE INSTRUCTION OF SECTION 6906.

Doc. #36, pg. 23:5-13.

These Defendants, under color of state law, violated 18 U.S.C. § 594 and California Election Code § 18540 by intimidating, threatening, and coercing Plaintiff into his decision of how to vote for the offices of President and Vice-President. Doc. #83 ¶ 53.

The threat of criminal prosecution chilled Plaintiff's exercise of his Constitutional rights and duties, constituting harm. Doc. #83 ¶ 60. Plaintiff therefore requests a declaratory judgment by this Court that California Elections Code § 6906 and the corresponding penalty for violation thereof in California Elections Code § 18002 are unconstitutional and therefore unenforceable against Plaintiff or any other presidential electors. Doc. #83 ¶ 61.

California Elections Code §§ 6906 and 18002 do not serve any significant governmental interest. To the contrary, they actually significantly jeopardize the governmental interests of both the State of California and the United States of America. Doc. #83 ¶ 76; see also ¶ 86.  California Election Code §§ 6906 and 18002 is neither narrowly tailored or the least restrictive means to accomplish any governmental purpose sought to be served by the legislation. Doc. #83 ¶ 77; see also ¶ 87.

Plaintiff's rights to be free from intimidation, treats, and coercion in the process of voting is a clearly established right.  Doc. #83 ¶ 78. California Elections Code §§ 6906 and 18002 are unconstitutional on their face and as threatened to be applied, infringing Plaintiff's duties and rights as a presidential elector under Article II, Section 1, of the U.S. Constitution, as amended by

1   the Twelfth Amendment. Doc. #83 ¶ 83. California Elections Code §§ 6906 and 18002 are

2   unlawful and in violation of 18 U.S.C. § 594 on their face and as threatened to be applied. Doc. #83

3   ¶ 84. California Elections Code §§ 6906 and 18002 are unlawful and in violation of California

4   Election Code § 18540 on their face and as threatened to be applied. Doc. #83 ¶ 85.

**ARGUMENT**

I.      STANDARD FOR REVIEW OF FED.R.CIV.P. 12(b)(6) MOTIONS.

"[A] party may assert the following defenses by motion: … (6) failure to state a claim upon which relief can be granted . . .." Fed. R. Civ. P. Rule 12(b)(6).

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  When deciding a Rule 12(b)(b) motion, the court must accept the facts pleaded in the complaint as true, and construe them in the light most favorable to the plaintiff. *Faulkner v. ADT Sec. Servs. Inc.* 706 F.3d 1017, 1019 (9th Cir. 2013); *Cousins v. Lockyer,* 568 F.3d 1063, 1067-68 (9th Cir. 2009).

> [I]t is well established that, in passing on a motion to dismiss . . . for failure to state a cause of action, the allegations of the complaint should be construed favorably to the pleader.

*Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). overruled on other grounds by *Davis v. Scherer*, 468 U.S. 183 (1984). When ruling on a motion under Rule 12(b)(6), the Court should "accept as true all well-plead allegations of material fact." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 993, 998 (9th Cir. 2010).

> In appraising the sufficiency of the complaint we follow, of course, the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears <u>beyond doubt</u> that the plaintiff can prove <u>no set of facts</u> in support of his claim which would entitle him to relief."

*Conley v. Gibson*, 355 U. S. 41, 45-46 (1957) (emphasis added, footnote omitted).

1

2

3

As will be explained below, Plaintiff's Amended Complaint more than sufficiently meets the standards necessary to avoid a Rule 12(b)(6) dismissal of the claims against the Individual Capacity Defendants.

4

5

II.   INDIVIDUAL CAPACITY DEFENDANTS ARE NOT ENTITLED TO ABSOLUTE IMMUNITY.

6

7

8

9

An official seeking absolute immunity bears the burden of showing that it is justified. *Burns v. Reed*, 500 U.S. 478, 486 (1991). "Absolute immunity is an extreme remedy, and it is justified only where 'any lesser degree of immunity could impair the judicial process itself." *Kalina v. Fletcher*, 522 U.S. 118, 127 (1997).

10

11

12

13

14

Prosecutors are not entitled to absolute immunity from a civil suit for damages under Section 1983 for administrative or investigative functions, only for initiating a prosecution and presenting a criminal case. See *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976). For example, representing the state in a probable cause hearing does give rise to absolute immunity, but giving legal advice to police is not.

15

16

17

> Absolute immunity is designed to free the *judicial process* from the harassment and intimidation associated with litigation [cite omitted]. That concern therefore justifies absolute prosecutorial immunity only for actions that are connected with the prosecutor's role in judicial proceedings, not for every litigation-inducing conduct.

18

*Burns v. Reed*, 500 U.S. 478, 494 (1991).

19

20

21

22

23

24

25

26

27

A specific decision to prosecute or not prosecute *can* raise entitlement to absolute immunity, but that is not what Plaintiff has alleged. Plaintiff has not alleged that the Individual Capacity Defendants initiated prosecution or presented a criminal case (see Amended Complaint in its entirety). To the contrary, these Defendants were faced with an as-yet-never-used California statute that was directly contrary to well-established federal law, state law, and general Constitutional and democratic principles. They were put on notice that it was chilling the Constitutional rights of Plaintiff and they chose to maintain the intimidation, threat, and coercion hanging over Plaintiff in place. As will be discussed in more detail below, threats of prosecution are part of voter intimidation as has been discussed by courts before.

28

Case No. 5:16-CV-07069

1   Individual Capacity Defendants are not entitled to absolute immunity in which case because

2   Plaintiff's allegations as to their conduct are neither initiating a prosecution nor presenting a

3   criminal case.

4

5   III.   INDIVIDUAL CAPACITY DEFENDANTS ARE NOT ENTITLED TO QUALIFIED
       IMMUNITY BECAUSE THEY VIOLATED CLEARLY ESTABLISHED LAW.

6

7       A.   Standard for Qualified Immunity.

8   Executive officials can sometimes claim qualified immunity for acts taken during their

9   tenure in office, however, they can only do so insofar as their conduct does not violate "clearly

10  established statutory or constitutional rights of which a reasonable person would have known."

11  *Harlow v. Fitzgerald*, 457 U.S. 800 (1982); see also *Mullenix v. Luna,* 136 S.Ct. 305 (2015).

12  For a right to be clearly established, a case directly on point is not required, but "existing

13  precedent must have placed the statutory or constitutional question beyond debate. *Ashcroft v. al-*

14  *Kidd*, 563 U.S. 731, 741 (2011); see also *Mullenix v. Luna,* supra.

15  In other words, immunity protects "'all but the plainly incompetent or those who knowingly

16  violate the law.'" *Id.;* see also *White v. Pauly*, 137 S. Ct. 548, 551, 2017 WL 69170 (2017).

17  Plaintiff contends that the actions of intimidation, threats, or coercion of a voter, in any

18  election, in any manner, are in violation of clearly established *statutory* law, even before the

19  underlying *constitutional* rights are analyzed.

20  Defendants have not claimed that they did not violate clearly established statutory rights (as

21  would provide basis for 42 U.S.C. § 1983 liability), but merely claim the existence of some

22  ambiguity with respect to constitutional law. Their motion to dismiss must be denied because

23  violation of clearly established statutory law is alone sufficient to destroy a qualified immunity

24  claim.

25

26      B.   Clearly established federal law – 18 U.S.C. § 594 -- prohibits intimidation, threats,
       coercion or interference with the votes place by presidential electors.

27  Federal election law makes it a criminal offense to intimidate, threaten, or coerce any person

28  to vote, or not vote for, any candidate for President and Vice President.

> Whoever intimidates, threatens, coerces, or attempts to intimidate, threaten, or coerce, any other person for the purpose of <u>interfering with the right</u> of such other person to vote or <u>to vote as he may choose</u>, or of causing such other person to vote for, or not to vote for, any candidate <u>for the office of President, Vice President,</u> … at any election held solely or in part for the purpose of electing such candidate, shall be fined under this title or imprisoned not more than one year, or both.

18 U.S.C. § 594 (emphasis added).

Although an odd feature in our republican democracy, our Constitution has dictated, from its founding, that <u>the only persons who vote for President and Vice President of the United States are presidential electors</u>. See U.S. Constitution, Art. II, Sec. 1.  As such, this federal statute referring to votes "for the office of President [and] Vice President" undisputedly protects Plaintiff and his fellow presidential electors – they are the only persons who ever vote for President and Vice President.

The range of actions that constitute intimidation, threats, and coercion against voters has been determined by courts around the country over many years as described in more detail in Section D, below, and includes threats of prosecution.

Individual Capacity Defendants do not argue that they were unaware of this federal law or that they did not violate it; no mention of this 18 U.S.C. § 594 appears in their moving papers. Plaintiff put them on notice (if they were unaware previously) that he felt intimidated or coerced in his impending voting decision before he placed his vote for President and Vice President (see Doc. #30), and both of these Defendants were called upon by this Court to assure Plaintiff that he was not under threat of felony criminal prosecution, but they demurred (see Doc. #36, pg. 23:5-13), with full knowledge their actions under color of state law would affect Plaintiff's voting decision.

C.   <u>Clearly established state law – California Election Code § 18540(a) -- prohibits intimidation, threats, coercion or interference with any voter</u>.

California state law also criminalizing interference with the fundamental rights of voting for the candidate of one's choice.

> Every person who makes use of or threatens to make use of any force, violence, or tactic of coercion or intimidation, to induce or compel any other person … to vote or refrain from voting for any particular person … at any election, or because any

person … voted or refrained from voting for any particular person … is guilty of a felony …"

Election Code § 18540(a). Likewise, "every person who hires or arranges for any other person" to do the same actions is also guilty of a felony. See Election Code § 18540(b).

As noted above, Defendants have not denied that they were unaware of this state law prohibiting threats, coercion or intimation of voters, to induce or compel a voting choice. They have also not denied having actual knowledge that Plaintiff felt these things in advance of placing his vote. Defendants had an opportunity to dispel the coercive pressure on Plaintiff before his vote was cast, but the knowingly, willfully, and purposely did not. They basically dared Plaintiff to take the risk of losing all of his civil rights through a felony conviction in order to vote his conscience.

D. <u>Intimidation of voters comes in many forms, including threats of criminal prosecution</u>.

Prior precedent available to the Individual Capacity Defendants gave guidance on what conduct has previously been considered to be voter intimidation, and also the limits of using threats of prosecution to chill the exercise of constitutional rights.

In *U.S. v. Tan Duc Nguyen*, 673 F.3d 1259 (9th Cir. 2012) the United States District Court for the Central District of California reviewed the propriety of a search warrant relating to a voter intimidation claim.

> "The type of intimidation envisioned by section [18540]" is not limited to displays or applications of force, but can be achieved through manipulation and suggestion." *Hardeman v. Thomas*, 208 Cal.App.3d 153, 170, 256 Cal.Rptr. 158 (1989). "Thus, an individual may violate section 18540 through subtle, rather than forcefully coercive means, although intimidation must be intentional."

*U.S. v. Tan Duc Nguyen*, 673 F.3d 1259, 1265 (9th Cir. 2012). In *Tan Duc*, a letter was sent that "warned recipients that if they voted in the upcoming election their personal information would be collected by a 'new computer system' and that this information could be provided to organizations who are 'against immigration.'" This letter was sent to voters with "Hispanic surnames—that is, those believed to be Latino immigrants." The letters, according to the affidavit submitted to the magistrate, was "mailed by individuals associated with a Republican congressional candidate, and was sent specifically to voters who registered as Democrats or declined to state their party

affiliation … individuals who … would be expected to favor [Nguyen's] Democratic opponent in the upcoming election." *Id.* The *Tan Duc* court acknowledge a "fair probability that the mailing of the letter violated California law."

> "We have learned in our modern, advertisement-oriented society that subtle manipulation and suggestion can be a forceful and effective form of influence on our actions. In the final analysis, whether or not a voter is subject to intimidation is a question of fact, left to the trier of fact."

*Hardeman*, at 168.

In a prior case involving Section 18540's predecessor statute (Election Code § 29630), the Court of Appeal, Third District, ruled that a "tactic of coercion or intimidation" to induce voters to vote for a particular candidate was supported by evidence of a person intruding upon a voter and telling them who to vote for without inquiry of whether assistance was desired. See *Stebbins v. White*, 190 Cal.App.3d 769, 235 Cal.Rptr. 656 (1987).

In *U.S. v. McLeod*, 385 F.2d 734, 739–41 (5th Cir. 1967), the Court considered whether alleged conduct of stationing police around meetings of voters, taking down license plate numbers, banning people from the courthouse, and baseless arrests, violated the Civil Rights Act of 1957's prohibition on "intimidat[ion], threaten[ing], or coerc[ion] … for the purpose of interfering with the right of such other person to vote or to vote as he may choose." *Id.*

> [A]cts may violate section [42 U.S.C. §] 1971(b) even though they deprive no one of his constitutional rights. Acts otherwise entirely within the law may violate the statute if they have the proscribed effect and purpose. [cites omitted] The inquiry, therefore, is not whether the defendants have transgressed the Constitution. It is whether they have violated the statute.
>
> As Judge Rives has pointed out, section 1971(b) 'essentially requires proof of two ultimate facts: (1) that there was an intimidation, threat, or coercion, or an attempt to intimidate, threaten or coerce, and (2) that the intimidation was for the purpose of interfering with the right to vote.' United States v. Board of Educ. of Greene County, Mississippi, 5 Cir. 1964, 332 F.2d 40, 46 (concurring opinion). . . .
>
> These acts cannot be viewed in isolation. They must be considered against the background of contemporaneous events in Selma and the general climate prevailing there at the time. [the court cites statistics and repeated judicial findings of discrimination] . . .

> It is difficult to imagine anything short of physical violence[11] which would have a more chilling effect on a voter registration drive than the pattern of baseless arrests and prosecutions revealed in this record. [cites omitted]. This case does not involve a 'single incident'. [cites omitted].

*U.S. v. McLeod*, 385 F.2d 734, 739–41 (5th Cir. 1967).

In *Bantam Books v. Sullivan*, 372 U.S. 58 (1963), the United States Supreme Court also looked at veiled threats made under color of state law in the context of censorship of books. Rhode Island created a Commission to Encourage Morality in Youth whose members went around to booksellers and notified them of objectionable book, "thanked" them for "cooperation" and reminded the booksellers of the Commissions duty to recommend to the Attorney General prosecution against purveyors of obscenity. Lists of offending books were sent to local law enforcement, something that was also told to the bookseller. The booksellers then took steps to stop filling pending orders, or selling the books, fearful of criminal prosecution. "The effect of the said notices was to intimidate" the booksellers and "by reason of such intimidation and threat of prosecution" take actions that resulted in suppressing the sale and circulation of those books. The Court found that these activities were unconstitutional and in violation of First Amendment liberties. Upon being sued, the Commission claimed that it was not actually "suppress[ing]" legal rights, but rather "advis[ing] them of their legal rights." The court disagreed.

> It is true that appellants' books have not been seized or banned by the State, and that no one has been prosecuted for their possession or sale. But though the Commission is limited to informal sanctions—the threat of invoking legal sanctions and other means of coercion, persuasion, and intimidation—the record amply demonstrates that the Commission deliberately set about to achieve the suppression … and succeeded… We are not the first court to look through forms to the substance …

> The acts and practices of the members and Executive Secretary of the Commission…were performed under color of state law and so constituted acts of the State within the meaning of the Fourteenth Amendment. [cites omitted]. These acts and practices directly and designedly stopped the circulation of publications in many parts of Rhode Island. It is true …that Silverstein was 'free' to ignore the Commission's notices, in the sense that his refusal to 'cooperate' would have violated no law. But it was found as a fact that Silverstein's compliance with the Commission's directives was not voluntary. **People do not lightly disregard public officers' thinly veiled threats to institute criminal proceedings against them if they do not come around** … It would be naive to credit the State's assertion that these blacklists are in the nature of mere legal advice, when they plainly serve as instruments of regulation independent of the laws…

Case No. 5:16-CV-07069

1   *Bantam Books, Inc. v. Sullivan,* 372 U.S. 58, 66–69 (1963).

2          In *Dombrowski v. Pfister,* 380 U.S. 479 (1965), the Supreme Court went beyond *Bantam*

3   *Books* to find that federal courts may enjoin not only threats of prosecution, but indictments and

4   prosecutions that are calculated to infringe upon First Amendment rights. The *Dombrowski* court

5   found that law enforcement officials in Louisiana had used their official powers to chill the First

6   Amendment activities of plaintiffs, civil rights workers active in fostering civil rights for blacks in

7   Louisiana and other southern states. Offices were raided, records seized, and plaintiffs were

8   threatened with prosecution for their activities. Ultimately, indictments were returned against them.

9   In their complaint, plaintiffs attacked the good faith of the law enforcement officials in bringing the

10  indictments, alleging that the officials' threats to enforce the criminal statutes were not made with

11  any expectation of securing valid convictions, but rather were part of a plan which utilized arrests,

12  seizures, and threats of prosecution under color of the statutes to harass plaintiffs and discourage

13  them and their supporters from asserting and attempting to vindicate the constitutional rights of

14  Negro citizens of Louisiana. The Supreme Court held that plaintiffs stated a claim for injunctive

15  relief because they alleged that the prosecutions were brought for the purpose of discouraging the

16  exercise of plaintiffs' First Amendment rights.

17         Following *Bantam Books* and *Dombrowski,* federal courts have granted injunctions against

18  criminal prosecutions brought in bad faith to suppress constitutionally protected activity. See

19  *Council for Periodical Distributors Ass'n v. Evans,* 642 F.Supp. 552 (M.D.Ala.1986), *aff'd,* 827

20  F.2d 1483 (11th Cir.1987) (prosecutor using threats of criminal prosecution to get local bookseller

21  to "voluntarily" stop selling sexually explicit materials); *Penthouse International v. McAuliffe*, 610

22  F.2d 1353 (5th Cir. 1980); *PHE, Inc. v. U.S. Dept. of J.,* 743 F. Supp. 15 (D.D.C. 1990).

23         Plaintiff wanted to vote for candidates other than that of his political party for President and

24  Vice President when the presidential electors voted on December 19, 2016 however, he was

25  coerced into voting for his political party candidates because of a California statute threatening to

26  severely punish him with felony prosecution (and the imprisonment, fines, and stripping of civil

27  rights that come along with felony prosecutions) if he voted for anyone else. Any suggestion that

28  this serious threat does not chill Constitutional rights is naïve and baseless.

The Individual Capacity Defendants had an opportunity in advance of the election, being put on notice that the threat against Plaintiff was in violation of federal and state laws banning intimidation, threats, or coercion of any voters, to advise that they would not enforce the law. They could have removed the intimidation, threats, and coercion from California presidential electors, but they did not. They were even asked, through their counsel, in open court on December 16, 2016, whether Plaintiff would be facing prosecution if he voted for an alternative candidate and they refused to remove the threat. Doc. #36, pg. 23:5-13.

E.   Election Code § 6906 is preempted by federal law under the Supremacy Clause.

"This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; . . . shall be the supreme Law of the Law; and the Judges in every State shall be bound thereby, and Thing in the Constitution or Laws of any state to the Contrary notwithstanding." U.S. Const. Art. VI.

> "The central premise of the Supremacy Clause is that federal law is superior to state law." *Ferguson v. Corinthian Colleges, Inc.*, 733 F.3d 928, 936 (9th Cir.2013). "The Supreme Court has therefore long recognized that any state law that 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress' is preempted." *Id.* (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67, 61 S.Ct. 399, 85 L.Ed. 581 (1941)).

*Nanavati v. Adecco USA, Inc.*, 99 F. Supp. 3d 1072, 1081 (N.D. Cal. 2015).

In addition to the clearly established law relating to voter intimidation, the clearly established law of the Supremacy Clause also undermined any legitimacy of the statutes being challenged here. Under the Supremacy Clause, when California Elections Code § 6906 instructs presidential electors to "vote by ballot for that person for President and that person for Vice President of the United States, who are …" anybody pre-determined and California Elections Code § 18002 applies dire consequences to those who fail to comply with that instructive (felony prosecution, imprisonment, fine, loss of all civil rights corresponding to a felony conviction), those laws are going to be preempted by the federal statute dictating freedom of voters to choose a candidate – 18 U.S.C. § 594 – and the U.S. Constitutional structure for functioning of the electoral college.

1  There is nothing ambiguous here. Clearly established federal law prohibits any intimidate,

2  threats, or coercion being exerted on persons placing votes for President and Vice President, and

3  those persons are the presidential electors, including Plaintiff and his fellow electors.

4

5  F.   Individual Capacity Defendants violated clearly established federal and state law.

6  Individual Capacity Defendants acted in violation of clearly established federal and state

7  statutory -- 18 U.S.C. § 594 and Election Code § 18540(a) -- and thus are not entitled to dismissal

8  on a claim of qualified immunity. Plaintiff was threatened with felony criminal prosecution, not

9  just by the improper laws being on the books, but having their illegality brought to the attention to

10  those governmental actors who would enforce the law and have those government actors make

11  clear that they would make Plaintiff guess whether they would enforce it or not. As aptly described

12  in *Steffel v. Thompson,* 415 U.S. 452, 462 (1974), Plaintiff was "the hapless plaintiff between the

13  Scylla of intentionally flouting state law and the Charybdis[2] of forgoing what he believes to be

14  constitutionally protected activity in order to avoid becoming enmeshed in a criminal proceeding."

15  
16  > When an individual is subject to such a threat, an actual arrest, prosecution, or other
enforcement action is not a prerequisite to challenging the law. See *Steffel v.
17  *Thompson,* 415 U.S. 452, 459, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974) ("[I]t is not
necessary that petitioner first expose himself to actual arrest or prosecution to be
18  entitled to challenge a statute that he claims deters the exercise of his constitutional
rights"); see also *MedImmune, Inc. v. Genentech, Inc.,* 549 U.S. 118, 128–129, 127
19  S.Ct. 764, 166 L.Ed.2d 604 (2007) ("[W]here threatened action by *government* is
concerned, we do not require a plaintiff to expose himself to liability before
20  bringing suit to challenge the basis for the threat"). Instead, we have permitted pre-
enforcement review under circumstances that render the threatened enforcement
21  sufficiently imminent. Specifically, we have held that a plaintiff satisfies the injury-
in-fact requirement where he alleges "an intention to engage in a course of conduct
22  arguably affected with a constitutional interest, but proscribed by a statute, and there
exists a credible threat of prosecution thereunder." *Babbitt v. Farm Workers,* 442
23  U.S. 289, 298, 99 S.Ct. 2301, 60 L.Ed.2d 895 (1979).

24  
25  *Susan B. Anthony List v. Driehaus,* 134 S. Ct. 2334, 2342 (2014). See also *Virginia v. American*

26  *Booksellers Assn. Inc.,* 484 U.S. 383, 108 S.Ct. 636 (1988) (plaintiffs "alleged an actual and well-

27  _____

28  [2] The phrase "being between Scylla and Charybdis" is an idiom from Greek mythology
similar to "having to choose between two evils" or being "between a rock and a hard place."

15.                                                   Case No. 5:16-CV-07069

1    founded fear that the law will be enforced against them; and *Holder v. Humanitarian Law Project*,

2    561 U.S. 1, 130 S.Ct. 2705 (2010) (plaintiffs "should not be required to await and undergo a

3    criminal prosecution as the sole means of seeking relief.")

4         Defendants were neither required nor entitled to enforce California Election Code §§ 6906

5    and 18002 which stood (1) in violation of clearly established federal law, (2) in violation of clearly

6    established state law, and (3) in violation of the Supremacy Clause. Instead they explicitly used

7    their authority as state actors to hold a virtual baseball bat over the head of Plaintiff, making him

8    guess whether his legally-protected rights would be honored, or whether he would be thrown into

9    jail and lose all of his civil rights in exchange for exercising them.

10        Plaintiff has sufficiently alleged, and can further amend with even more details, that he was

11   subjected to intimidation and coercion in how to place his vote for President and Vice President in

12   December 2016. He was placed in the untenable position of being coerced to vote for candidates

13   who, by the time his vote would be placed, had already withdrawn from the race and could not win,

14   pitted against the situation of growing knowledge of Russian interference with our election and

15   deep reservations about the fitness of Donald J. Trump to be President. He wanted the option to

16   vote for a compromise candidate, to fulfill his constitutional duty of being a presidential elector.

17        Whereas so-called "faithless electors" have existed numerous times throughout our

18   country's history for many reasons, but no criminal prosecutions filed, that history seemed to be

19   changing. Shortly before the electoral college met, Colorado's Attorney General added new threats

20   of criminal prosecution against Colorado electors. See Doc. #33. This added to the coercive effect

21   of the Individual Capacity Defendants' hanging the threat of criminal prosecution over Plaintiff's

22   head.

23        Individual Capacity Defendants' actions, under color of state law, placed a threat over

24   Plaintiff's head such that he could not freely place his vote for President and Vice-President.

25   Because this intimidation, coercion, and threat was contrary to clearly established federal and state

26   law, contrary to the Supremacy Clause, the Individual Capacity Defendants are not entitled to

27   qualified immunity, especially not on a Rule 12(b)(6) motion.

28

1    IV.    INDIVIDUAL    CAPACITY    DEFENDANTS    ALSO    VIOLATED    CLEARLY
2           ESTABLISHED CONSTITUTIONAL LAW.

3           For a constitutional right to be clearly established, its contours "must be sufficiently
             clear that a reasonable official would understand that what he is doing violates that
4            right. This is not to say that an official action is protected by qualified immunity
             unless the very action in question has previously been held unlawful, see *Mitchell*
5            [v. *Forsyth,* 472 U.S. 511,] 535, n. 12, 105 S.Ct. 2806, 86 L.Ed.2d 411; but it is to
             say that in the light of pre-existing law the unlawfulness must be apparent."
6            *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).

7    *Hope v. Pelzer*, 536 U.S. 730, 739 (2002).

8           While perhaps not as specific as the clear violation of federal and state law described above,

9    the unconstitutionality of Election Code §§ 6906 and 18002 cannot be ignored by anyone who

10   actually reads the Constitutional provisions regarding the functioning of the electoral college.

11          California Election Code §§ 6906 and 18002 state requirement pre-determining the vote to

12   be cast by Presidential Electors violates the plain language of Article II, Section 1, of the U.S.

13   Constitution, as amended by the Twelfth Amendment, which indicates that there should not be a

14   way to know in advance what the vote for the highest offices in the land will be –

15          The executive power shall be vested in a President of the United States of America.
16          He … together with the Vice President, chosen for the same term, be elected, as
             follows:
17
18          Each state shall appoint, in such manner as the Legislature thereof may direct, a
             number of electors, equal to the whole number of Senators and Representatives to
19          which the State may be entitled in the Congress: but no Senator or Representative,
             or person holding an office of trust or profit under the United States, shall be
20          appointed an elector.

21          The electors shall meet in their respective states, and vote by ballot for two persons,
             of whom one at least shall not be an inhabitant of the same state with themselves.
22          And they shall make a list of all the persons voted for, and of the number of votes
             for each; which list they shall sign and certify, and transmit sealed to the seat of the
23          government of the United States, directed to the President of the Senate. The
             President of the Senate shall, in the presence of the Senate and House of
24          Representatives, open all the certificates, and the votes shall then be counted. The
             person having the greatest number of votes shall be the President, if such number be
25          a majority of the whole number of electors appointed; and if there be more than one
             who have such majority, and have an equal number of votes, then the House of
26          Representatives shall immediately choose by ballot one of them for President; and if
             no person have a majority, then from the five highest on the list the said House shall
27          in like manner choose the President. But in choosing the President, the votes shall
28

                                                17.                    Case No. 5:16-CV-07069

be taken by States, the representation from each state having one vote; A quorum for this purpose shall consist of a member or members from two thirds of the states, and a majority of all the states shall be necessary to a choice. In every case, after the choice of the President, the person having the greatest number of votes of the electors shall be the Vice President. But if there should remain two or more who have equal votes, the Senate shall choose from them by ballot the Vice President.

The Congress may determine the time of choosing the electors, and the day on which they shall give their votes; which day shall be the same throughout the United States. ...

Doc. #83 ¶ 45. There is nothing about that description of the process that suggests that these "sealed" votes from the states, opened and counted by the President of the Senate, would have been predetermined before the Senate even received. These is nothing about that process that suggests that presidential elector votes should not be secret.

The illegality of intimidation, threats, coercion of voters, or interfering with their voting choice, is not some random, odd legal concept extracted from dusty law books. Freedom of elections, freedom to vote for candidates of one's choice, is fundamental to our democracy and democracies around the world, and preserving that right is of paramount importance.

"No right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live. Other rights, even the most basic, are illusory if the right to vote is undermined." *Wesberry v. Sanders*, 376 U.S. 1 (1964), cited in *Williams v. Rhodes*, 393 U.S. 23, 31, fn 8 (1968).

Both the right of individuals to associate for advancement of their political beliefs and the right of voters to cast their votes "rank among our most precious freedoms" and are protected by the First Amendment, and the Fourteenth Amendment. "'[O]nly a compelling state interest in the regulation of a subject within the State's constitutional power to regulate can justify limiting First Amendment freedoms.' *NAACP* v. *Button,* 371 U.S. 415, 438 (1963)."

Voting without a choice of candidate has long been decried as antithetical to our democratic principles. Even the Universal Declaration of Human Rights issued by the United Nations in 1948, at Article 21, states that elections "shall be held by secret vote or by equivalent free voting procedures."

Election Code §§ 6906 and 18002's dictation of whom a presidential elector voted for should have been questionable on its face, especially by Individual Capacity Defendants who have been entrusted with enforcing fair elections, including Election Code § 18540's prohibition on intimidation, threats, and coercion of voters. The two concepts – dictating who a person can vote for and demanding freedom in voting choices – can stand alongside each other.

Moreover, even a basic level of further legal research would show unequivocally that California's pre-determining of votes to be cast by Presidential Electors violates this country's Founders' intent that the Presidential Electors be a deliberative and independent body free to cast votes for whomever they deem to be the most fit and qualified candidates.

> See The Federalist, No. 68 (Earle ed., 1937), pp. 441-442: "It was desirable that the sense of the people should operate in the choice of the person to whom so important a trust was to be confided. This end will be answered by committing the right of making it, not to any preestablished body, but to men chosen by the people for the special purpose, and at the particular conjuncture.
> "It was equally desirable, that the immediate [presidential election] should be made by men most capable of <u>analyzing</u> the qualities adapted to the station, and acting under circumstances favorable to <u>deliberation</u>, and to a judicious combination of all the <u>reasons</u> and inducements which were proper to govern their choice. A small number of persons, selected by their fellow-citizens from the general mass, will be most likely to possess the information and <u>discernment</u> requisite to such <u>complicated investigations</u>."

Quoted in *Ray v. Blair*, 343 U.S. 214. Doc. #83 ¶ 46. The words "analyze," "deliberation," "reason," "discernment," and "complicated investigations" are never descriptive of rubberstamp voters or the placing of ceremonial votes.

The closest Supreme Court decision to the question presented by Plaintiff was the *Ray v. Blair* case which declined to find pledges to be unconstitutional, but directly cautioned against trying to enforce any such pledges.

> [E]ven if such promises of candidates for the electoral college are legally unenforceable because violative of an assumed constitutional freedom of the elector under the Constitution, Art. II, § 1, to vote as he may choose in the electoral college, it would not follow that the requirement of a pledge in the primary is unconstitutional.

*Ray,* 343 U.S. at 230. The Supreme Court actually assumed that a promise in how to vote would be "violative of an assumed constitutional freedom of the elector … to vote as he may choose in the

1  elector college." That freedom cannot be taken away by state statute claiming to deprive

2  presidential electors of that freedom.

3  Though the states have authority to appoint electors pursuant to Article II § 1, that power

4  cannot "be exercised in such a way as to violate express constitutional commands that

5  specifically bar  States from passing certain kinds of laws." *Williams v. Rhodes*, 393 U.S. 23, 29

6  (1968). A state imposed restriction that adds conditions to requirements set forth in the

7  Constitution (such as state imposed term limits for US Senators) "is contrary to the 'fundamental

8  principle of our representative democracy,' embodied in the Constitution." See *US Term Limits v.*

9  *Thornton*, 514 U.S. 779 (1995).

10  Presidential Electors are to "vote for some fit person as President" (*Id.* at 413) such that  the

11  country would be

12  "afford[ed] a moral certainty that the office of President will seldom fall to the lot

13  of any man who is not in an eminent degree endowed with the requisite

 qualifications. Talents for low intrigue, and the little arts of popularity, may alone

14  to suffice to elevate a man to the first honors in a single State; but it will require

 other talents, and a different kind of merit, to establish him in the esteem and

15  confidence of the whole Union …."

16  *Id.* at 414.

17  The statutes challenged here places political party interests ahead of the interests of the

18  country and that is unconstitutional. "[P]olitical parties in the modern sense were not born with

19  the Republic. They were  created by necessity, by the need to organize the rapidly increasing

20  population, scattered over our Land, so as to coordinate efforts to secure needed legislation and

21  oppose that deemed  undesirable." *Ray v. Blair*, 343 U.S. 214, 220-21, (1952).[3]  Sadly, statutes

22  like those addressed here have become an effort to elevate political party loyalty over loyalty to

23  the Constitution and the careful checks and balances placed within it, including the electoral

24  college. If the electors in California are required to vote for the candidate of the party that wins

25  the majority of  the popular vote in California, the electors serve no purpose and are rendered

26  _____

27  [3] *Ray* came about when the Democrats in Alabama in the 1948 presidential election

 refused to  vote for Truman because of the pro-civil rights platform, and, instead, voting for

28  Strom  Thurmond and forming the Dixiecrats. The party thereafter instituted a pledge for electors

 that  they vote for the party's nominee.

1   superfluous. This Court is no more authorized to assume that this part of the Constitution is

2   superfluous (see *Hurtado v. California*, 110 U.S. 516, 534 (1884)) than it can amend the

3   Constitutional itself.

4       Within the context of general democratic principles, and multiple federal and state statutes

5   prohibiting intimidation and coercion of voters, the fact that Election Code §§ 6906 and 18002 are

6   clearly unconstitutional becomes difficult to ignore.

7       Any debate about whether Individual Capacity Defendant's actions were in violation of

8   clearly established constitutional law (in addition to clearly established federal and state law) is at

9   least worthy of proceeding beyond a Rule 12(b)(6) dismissal and thus, their motion to dismiss

10  should be denied.

11  V.      THE SECOND CAUSE OF ACTION FOR DEPRIVATION OF CIVIL RIGHTS, 28

12          U.S.C. § 1983, FOR PAST CONDUCT, IS SUFFICIENTLY PLEADED.

13      42 U.S.C. § 1983 creates liability for "persons" who, while acting "under color" of state or

14  territorial law, deprive citizens or other persons of rights, privileges, or immunities secured by the

15  Constitution or federal law.

16
        Every person who, under color of any statute, ordinance, regulation, custom, or
17      usage, of any State or Territory or the District of Columbia, subjects, or causes to be
        subjected, any citizen of the United States or other person within the jurisdiction
18      thereof to the deprivation of any rights, privileges, or immunities secured by the
        Constitution and laws, shall be liable to the party injured in an action at law, suit in
19      equity, or other proper proceeding for redress, except that in any action brought
        against a judicial officer for an act or omission taken in such officer's judicial
20      capacity, injunctive relief shall not be granted unless a declaratory decree was
        violated or declaratory relief was unavailable. …
21

22  42 U.S.C. § 1983.

23      As in any suit under § 1983 the first inquiry is "whether the plaintiff has been deprived of a

24  right `secured by the Constitution and laws." *Baker v. McCollan,* 443 U.S. 137, 140 (1979).

25      In this case, Plaintiff is claiming deprivation of a number of rights under both the

26  Constitution and federal law: (1) right to perform his constitutional duty as a presidential elector

27  casting his vote for President and Vice President under U.S. Constitution, Art. II, Sec. 1 and the

28  Twelfth Amendment; (2) right to vote for President and Vice President without being intimidated,

1  coerced, or threatened, under 18 U.S.C. § 594 and Elections Code § 18540(a); and (3) freedom of

2  speech and association under the First Amendment.

3       In fairness, the Individual Capacity Defendants may not the most culpable parties in the

4  widespread intimidation, threats, and coercion against presidential electors during the 2016

5  election. There are reports of death threats, harassing email and phone calls, etc. from electors. But

6  while the Individual Capacity Defendants may not have been the most culpable, Plaintiff has more

7  than sufficiently plead in his Amended Complaint they still are culpable.

8       Neither a state attorney general nor a secretary of state overseeing the conduct of elections

9  is required to enforce an unconstitutional law, nor to enforce or threaten enforcement, of state laws

10  that violate clearly established federal and state laws prohibiting intimidation, threats, coercion,

11  and interference with voters, and violate any fair reading of the U.S. Constitution and its related

12  history and caselaw.

13       When placed on notice that at least one presidential elector – Plaintiff – was feeling

14  intimidated and coerced -- the Individual Capacity Defendants had an opportunity to advise

15  California's presidential electors that they would not be criminally prosecuted based on their votes

16  for President and Vice President. They did not, even when explicitly asked by a federal judge just

17  before the election.

18       Plaintiff's Amended Complaint is sufficiently plead to overcome the Individual Capacity

19  Defendants' Rule 12(b)(6) challenge and claim of absolute or qualified immunity.

20

21  **VI.     LEAVE TO AMEND SHOULD BE FREELY GIVEN, IF NEEDED.**

22       A "court should freely give leave [to amend a complaint] when justice so requires." Fed. R.

23  Civ. P. 15(b). Rule 15(b)'s "mandate is to be heeded." *Foman v. Davis,* 371 U.S. 178, 182 (1962).

24       If the underlying facts or circumstances relied upon by a plaintiff may be a proper
       subject of relief, he ought to be afforded an opportunity to test his claim on the

25       merits." [*Foman,* supra] Denying leave to amend is thus an abuse of discretion and
       "inconsistent with the spirit of the Federal Rules," *id.* unless the court provides a

26       sufficient reason for so doing, such as "futility of amendment, undue delay, bad
       faith, dilatory motive, undue prejudice, or repeated failure to cure deficiencies by

27       previous amendments." *Boyd v. District of Columbia,* 465 F.Supp.2d 1, 3

28       (D.D.C.2006) (other citation omitted) (citing *Foman,* 371 U.S. at 182, 83 S.Ct. 227).

1

2      *Gilliam v. Dept. of Justice*, 128 F. Supp. 3d 134 (D.C. 2015).

3              Although Plaintiff contends that the Amended Complaint is sufficient as it stands to avoid

4      dismissal under 12(b)(6), Plaintiff does have additional facts at his disposal that he can use to amend

5      the operative complaint further.

6

7                                        **CONCLUSION**

8              For the reasons set forth above, Plaintiff respectfully requests that the Court deny the

9      Individual Capacity Defendants' Motion to Dismiss.  Individual Capacity Defendants have not

10     demonstrated a Rule 12(b)(6) basis for dismissal of this case and have not demonstrated

11     entitlement to either absolute or qualified immunity.

12

13     Dated this 30th day of June, 2017.

14

15                              By:        /s/ Melody A. Kramer
                                           Melody A. Kramer, Esq.
16                                         KRAMER LAW OFFICE, INC.
                                           Attorney for Plaintiff
17

18

19

20

21

22

23

24

25

26

27

28

**PROOF OF SERVICE**

I, Melody A. Kramer, declare:  I am and was at the time of this service working within in the County of San Diego, California.  I am over the age of 18 year and not a party to the within action.  My business address is the Kramer Law Office, Inc., 4010 Sorrento Valley Blvd., Suite 400, San Diego, California, 92121.

On Friday, June 30, 2017 I served the following documents:

**OPPOSITION TO INDIVIDUAL CAPACITY DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT [Doc. #94]**

Pursuant to Local Rules, I electronically filed this document via the CM/ECF system for the United States District Court for the Northern District of California

I declare that the foregoing is true and correct, and that this declaration was executed on Friday, June 30, 2017, in San Diego, California.

/s/ Melody A. Kramer

Melody A. Kramer

Case No. 5:16-CV-07069