UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

VINZENZ J. KOLLER,

    Plaintiff,

v.

KAMALA D. HARRIS, et al.,

    Defendants.

Case No. 5:16-cv-07069-EJD

**ORDER GRANTING MOTIONS TO DISMISS**

Re: Dkt. Nos. 87, 88, 94

Plaintiff Vinzenz J. Koller ("Plaintiff"), a former Presidential Elector, alleges he was forced, coerced and intimidated by California officials to register his 2016 electoral vote for the Democratic candidates for those offices, Hillary Rodham Clinton and Timothy Kaine. He brought this action against Attorney General Xavier Becerra and Secretary of State Alex Padilla in their official capacities (the "Official Capacity Defendants"), and against Secretary Padilla and former Attorney General Kamala Harris in their individual capacities (the "Individual Capacity Defendants") for a judgment declaring California Elections Code §§ 6906 and 18002 unconstitutional and for violations of 28 U.S.C. § 1983.

Presently before the court are three Motions to Dismiss Plaintiff's First Amended Complaint ("FAC"): one filed by the Official Capacity Defendants, one filed by the Individual Capacity Defendants, and one filed by Intervenor California Republican Party. Dkt. Nos. 87, 88, 94. Though the court previously found there exists "equally plausible opposing views" on Elections Code § 6906 and 18002, and a "serious question" on the merits of the constitutional issue raised by Plaintiff (Koller v. Brown, 224 F. Supp. 3d 871, 879 (N.D. Cal. 2016)), these motions raise doctrines not previously addressed. The application of these doctrines prevents this

Case No.: 5:16-cv-07069-EJD
ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS

1

action from proceeding further.  Thus, the Motions to Dismiss will be granted and all of Plaintiff's causes of action will be dismissed for the reasons explained below.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Presidential Electors, The Constitution, and The Federalist Papers

The FAC begins with reference to the Constitution, and in particular the process it provides for the election of the President.  Plaintiff alleges that since the Constitution was signed in 1787, it has never "called for election to the office of President by popular vote of the citizens of this country."  FAC, at ¶ 13.  Instead, the Constitution has always "called for election to the office of President by Presidential Electors selected by the respective states."  Id. at ¶ 14.  These electors meet every four years, vote by ballot for two persons, make a list of all the persons voted for, and the number of votes cast for each person.  Id. at ¶ 16.[1]  The signed and certified list is then directed to the President of the Senate.  Id. at ¶¶ 16-17.

Plaintiff also alleges what the Constitution does not permit.  In Plaintiff's opinion, the Constitution never "reduced the weighty responsibility" of choosing the President "to a media circus on the second Tuesday of November every four years."  Id. at ¶ 18.  Additionally, Plaintiff alleges the Constitution has never allowed "for foreign influences, threats, or intimidation to restrain or dictate the votes" of electors.  Id. at ¶ 19.

Aside from the Constitution, Plaintiff also references Federalist No. 68 and its discussion of how the President should be selected and the role of Presidential Electors.  Id. at ¶ 46. Federalist No. 68 states, in pertinent part:

> It was desirable that the sense of the people should operate in the choice of the person to whom so important a trust was to be confided.  This end will be answered by committing the right of making it, not to any preestablished body, but to men chosen by the people for the special purpose, and at the particular conjuncture.
>
> It was equally desirable, that the immediate election should be made by men most capable of analyzing the qualities adapted to the station, and acting under circumstances favorable to deliberation,

---

[1] The procedure by which electors choose the President and Vice President is more fully described in Article II, Section 1 of the Constitution, as amended by the Twelfth Amendment.

Case No.: 5:16-cv-07069-EJD
ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS
2

and to a judicious combination of all the reasons and inducements which were proper to govern their choice. A small number of persons, selected by their fellow-citizens from the general mass, will be most likely to possess the information and discernment requisite to such complicated investigations.

Id.

### B. California Statutes Regulating Presidential Electors

Two California statutes applicable to electors are placed at issue by the FAC. The first is Elections Code § 6906, which provides:

> The electors, when convened, if both candidates are alive, shall vote by ballot for that person for President and that person for Vice President of the United States, who are, respectively, the candidates of the political party which they represent, one of whom, at least, is not an inhabitant of this state.

The second is Elections Code § 18002, which states:

> Every person charged with the performance of any duty under any law of this state relating to elections, who willfully neglects or refuses to perform it, or who, in his or her official capacity, knowingly and fraudulently acts in contravention or violation of any of those laws, is, unless a different punishment is prescribed by this code, punishable by fine not exceeding one thousand dollars ($1,000) or by imprisonment pursuant to subdivision (h) of Section 1170 of the Penal Code for 16 months or two or three years, or by both that fine and imprisonment.

### C. The 2016 Presidential Election

The Democratic candidates for President and Vice President in 2016 were Hillary Rodham Clinton and Timothy Kaine, respectively. Id. at ¶ 28. The Republican candidates for those offices were Donald J. Trump and Michael Pence. Id. at ¶ 29. Election day was November 8, 2016. Id. at ¶ 35. Plaintiff describes the outcome of the election in the FAC as follows:

> Though the Democratic nominees for President and Vice-President won the nationwide popular vote by over 3 million votes, and won the California popular vote by a large margin, the various state-by-state popular votes indicated that Donald Trump and Michael Pence (the Republican presidential and vice presidential nominees) would win the majority of electoral college votes on December 19, 2016 if the electors in each state vote consistent with the popular vote in their respective states.

Id. at ¶ 35.

Case No.: 5:16-cv-07069-EJD
ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS
3

Plaintiff alleges, however, that subsequent to election day but before the vote of the electors on December 19, 2016, "U.S. intelligence agencies confirmed that they possessed evidence showing foreign influence in the presidential election with the purpose of favoring Donald J. Trump and undermining Hillary R. Clinton in that election." Id. at ¶ 32. Plaintiff considered the possibility of foreign interference to be of "grave importance" and sought additional information from the government. Id. at ¶ 33.

Plaintiff further alleges that by early January, 2017, "at least three U.S. intelligence agencies reported a high confidence that Russian President Vladimir Putin ordered actions aimed at undermining public faith in the United States' democratic process and denigrating one candidate (Clinton) and giving preference to the other (Trump)." Id. at ¶ 37. And by mid-February, 2017, "additional reports surfaced indicating that Mr. Trump's campaign may have had numerous contacts with Russian intelligence officers during the campaign, raising further questions about the connection between Mr. Trump and the Russian government." Id. at ¶ 39.

Despite these post-election revelations, Donald J. Trump was in fact confirmed as President upon the vote of electors and was inaugurated on January 20, 2017. Id. at ¶¶ 36, 38.

### D.   Plaintiff's Service as a California Presidential Elector

Plaintiff is a resident of Monterey County who served as an elector in prior elections and continues to meet all qualifications to be selected as a Presidential Elector in subsequent elections. Id. at ¶¶ 1, 26. He was chosen as an elector of the Democratic Party for the 2016 Presidential Election. Id. at ¶ 25.

As to his 2016 service, Plaintiff alleges he and other similar-situated electors should not have been "constitutionally compelled" by Elections Code §§ 6906 and 18002 to vote for Clinton and Kaine, consistent with the popular vote of the state, when "the best interests of the country warranted a different course of action." Id. at ¶ 50. To that end, Plaintiff believes he "should have been allowed to exercise his judgment and free will to vote for whomever he believes to be the most qualified and fit for the offices of President and Vice President within the circumstances and with the knowledge known on December 19, 2016, whether those candidates are Democrats,

1   Republicans, or from a third party." Id.

### E. The Instant Lawsuit

Plaintiff filed the complaint initiating this action on December 9, 2016. Dkt. No. 1. Prior to the vote of electors on December 19, 2016, Plaintiff moved for a temporary restraining order precluding enforcement of Elections Code §§ 6906 and 18002 against Plaintiff. Dkt. Nos. 1, 4. The court ordered expedited briefing on that request, held a hearing on December 16, 2016, and denied Plaintiff's application. Dkt. Nos. 10, 34, 37. Plaintiff appealed from that decision, but voluntary dismissed the appeal four days later. Dkt. Nos. 35, 50.

The court granted the California Republican Party's motion to intervene on January 3, 2017. Dkt. No. 57. Plaintiff then filed the FAC on February 17, 2017. Dkt. No. 83. He seeks the following relief: (1) a declaratory judgment finding that Elections Code §§ 6906 and 18002 are unconstitutional, or in violation of 18 U.S.C. § 594,[2] and/or Elections Code § 18540;[3] (2) an injunction enjoining Defendants from prosecuting any presidential elector on the basis of their vote; and (3) compensatory damages for violation of § 1983.

These motions followed the FAC.

## II. LEGAL STANDARD

### A. Federal Rule of Civil Procedure 12(b)(1)

A motion to dismiss under Rule 12(b)(1) challenges subject matter jurisdiction, and may be either facial or factual. Wolfe v. Strankman, 392 F.3d 358, 362 (9th Cir. 2004). A facial Rule 12(b)(1) motion involves an inquiry confined to the allegations in the complaint. Thus, it functions like a limited-issue motion under Rule 12(b)(6); all material allegations in the complaint are assumed true, and the court must determine whether lack of federal jurisdiction appears from

---

[2] Under 18 U.S.C. § 594, it is a crime to intimidate, threaten, coerce, or attempt to intimidate, threaten, or coerce, "any other person for the purpose of interfering with the right of such other person to vote or to vote as he may choose, or of causing such other person to vote for, or not to vote for," any candidate for the office of President or Vice President, among other federal offices.

[3] Like § 594, Elections Code § 18540 makes it a crime to coerce any person's vote or to intimidate them from voting.

Case No.: 5:16-cv-07069-EJD
ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS
5

the face of the complaint itself. Thornhill Publ'g Co. v. General Tel. Elec., 594 F.2d 730, 733 (9th Cir. 1979).

"The party asserting jurisdiction bears the burden of establishing subject matter jurisdiction." In re Dynamic Random Access Memory (DRAM) Antitrust Litig., 546 F.3d 981, 984 (9th Cir. 2008).

### B. Federal Rule of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure 8(a) requires a plaintiff to plead each claim with sufficient specificity to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotations omitted). A complaint which falls short of the Rule 8(a) standard may be dismissed if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008). Moreover, the factual allegations "must be enough to raise a right to relief above the speculative level" such that the claim "is plausible on its face." Twombly, 550 U.S. at 556-57.

When deciding whether to grant a motion to dismiss, the court generally "may not consider any material beyond the pleadings." Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d 1542, 1555 n. 19 (9th Cir. 1990). However, the court may consider material submitted as part of the complaint or relied upon in the complaint, and may also consider material subject to judicial notice. See Lee v. City of Los Angeles, 250 F.3d 668, 688-69 (9th Cir. 2001).

In addition, the court must generally accept as true all "well-pleaded factual allegations." Ashcroft v. Iqbal, 556 U.S. 662, 664 (2009). The court must also construe the alleged facts in the light most favorable to the plaintiff. Love v. United States, 915 F.2d 1242, 1245 (9th Cir. 1988). However, "courts are not bound to accept as true a legal conclusion couched as a factual allegation." Iqbal, 556 U.S. at 678.

### C. Leave to Amend

Leave to amend a pleading is generally granted with liberality. Fed. R. Civ. P. 15(a)(2)

Case No.: 5:16-cv-07069-EJD
ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS
6

("The court should freely give leave when justice so requires."); Morongo Band of Mission Indians v. Rose, 893 F.2d 1074, 1079 (9th Cir. 1990). But it is not a never-ending privilege. Leave need not be granted where the amendment of the complaint would cause the opposing party undue prejudice, is sought in bad faith, constitutes an exercise in futility, or creates undue delay. Foman v. Davis, 371 U.S. 178, 182 (1962); Janicki Logging Co. v. Mateer, 42 F.3d 561, 566 (9th Cir. 1994).

### III. DISCUSSION

In their motions, the Official Capacity Defendants and the California Republican Party bring facial Rule 12(b)(1) challenges to the FAC, arguing the declaratory and injunctive relief claims must be dismissed based on mootness and lack of standing. For their part, the Individual Capacity Defendants move under Rule 12(b)(6) to dismiss the claim for monetary relief based on prosecutorial and qualified immunity.

Each of these doctrines is discussed in turn.

#### A. Mootness

##### i. General Principles

"Pursuant to Article III of the U.S. Constitution, federal courts can only adjudicate live cases or controversies." Bishop Paiute Tribe v. Inyo Cty., 863 F.3d 1144, 1153 (9th Cir. 2017). As a consequence, the courts lack subject matter jurisdiction to adjudicate moot claims. Id. at 1155.

The Ninth Circuit has provided the following definition of mootness:

> If there is no longer a possibility that an appellant [or a party] can obtain relief for his claim, that claim is moot and must be dismissed for lack of jurisdiction. Mootness has been described as standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness).

Id.

Stated differently, a "case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." City of Erie v. Pap's A.M., 529 U.S.

Case No.: 5:16-cv-07069-EJD
ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS
7

277, 287 (2000) (quoting Cty. of Los Angeles v. Davis, 440 U.S. 625, 631 (1979)). A controversy is not "live" if the plaintiff can win no effective relief. San Lazaro Ass'n, Inc. v Connell, 286 F.3d 1088, 1095 (9th Cir. 2002). "In that case, any opinion as to the legality of the challenged action would be advisory." City of Erie, 529 U.S. at 287.

### ii. Application

#### a. No Effective Relief for the 2016 Presidential Election

Plaintiff recognizes that the 2016 Presidential Election was completed before he amended his pleading. FAC, at ¶ 10. He also concedes in opposition that no form of injunctive relief related to the 2016 Presidential Election can issue.

Despite this recognition, Plaintiff stops short of admitting his declaratory relief claim is moot as to the 2016 election. Instead, the election remains a central part of his claims. For example, Plaintiff alleges he was "forced, coerced, and intimidated by Defendants into his decision of how to vote for the offices of President and Vice-President." Id. at ¶ 51. He also alleges his stated intent to vote for candidates other than Clinton and Kaine after the 2016 election created a risk of criminal prosecution, which "chilled" the exercise of his constitutional rights constituting harm. Id. at ¶¶ 57, 60. And in the FAC's prefatory statement, Plaintiff states he "seeks retroactive relief related to the completed unconstitutional actions against him . . . ." Id. at 2:7-8.

Because these allegations endure, the Official Capacity Defendants argue Plaintiff's declaratory relief claim is moot as to the 2016 election. They are correct.

One paragraph of the FAC is key to this issue. Plaintiff alleges:

> This court can provide declaratory relief because an actual and substantial controversy now exists between Plaintiff[] and the Defendants with respect to Plaintiff's rights and Defendants' rights and duties under Elections Code §§ 6906 and 18002, and such controversy is capable of repetition, yet evading review.

Id. at ¶ 68.

Putting aside for the moment the portion of this paragraph that follows the statutory references, it is beyond debate the preceding language does not describe a "live" controversy with

Case No.: 5:16-cv-07069-EJD
ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS
8

respect to the 2016 election. Since the election has "come and gone," there is simply no extant controversy between Plaintiff and any defendant. Arizona Green Party v. Reagan, 838 F.3d 983, 987 (9th Cir. 2016). The court cannot provide any effective declaratory relief related to the completed vote of California electors, even if he were to prevail on his claim to declare Elections Code §§ 6906 and 18002 unconstitutional. Success on any cause of action could not be retroactive, and would not affect Plaintiff's 2016 vote or change the outcome of the election.

Thus, absent an exception, the court lacks subject matter jurisdiction over Plaintiff's declaratory relief claim to the extent he seeks relief related to the 2016 election because any such claim is moot.

### b. Capable of Repetition, Yet Evading Review

Plaintiff argues the court can nonetheless decide the declaratory relief claim inasmuch as it implicates his service as a 2016 elector because it falls within an exception to mootness for issues that are capable of repetition, yet evading review. FAC, at ¶ 10. Specifically, Plaintiff alleges that "[w]ith the length of a presidential elector's actual service lasting for a single day, and the designation of someone as being a presidential electo[r] never being made more than six weeks prior to that one day, it is impossible for any court case to be completed in time." Id. Plaintiff also alleges he is "reasonably likely to face" the same situation again because he continues to meet all qualifications for service as a Presidential Elector. Id. at ¶ 26.

Defendants disagree the declaratory relief claim falls within the exception to mootness. Defendants are correct.

The "capable of repetition, yet evading review" exception "applies where '(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again.'" FEC v. Wisconsin Right To Life, Inc., 551 U.S. 449, 462 (2007) (quoting Spencer v. Kemna, 523 U.S. 1, 17 (1998)). According to the Supreme Court, the second element is satisfied if "a party has a reasonable expectation that it 'will again be subjected to the alleged illegality'" or will be or "'subject to the threat of prosecution' under the challenged law." Id. at

Case No.: 5:16-cv-07069-EJD
ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS
9

463 (quoting Los Angeles v. Lyons, 461 U.S. 95, 109 (1983); First Nat'l Bank of Boston v. Bellotti, 435 U.S. 765, 774-75 (1978)).

In elections cases like this one, however, the second element does not require "repetition of every 'legally relevant' characteristic . . . down to the last detail," because such a requirement "would effectively overrule" the exception by rendering it "unavailable for virtually all as-applied challenges." Id. (quoting Storer v. Brown, 415 U.S. 724, 737 n.8 (1974)). Though "history repeats itself," it rarely does so in exactly the same way. Id.

Thus, as Plaintiff notes, the Supreme Court has permitted some degree of latitude to the complaining party when examining the "reasonable expectation" element. The Court's opinion in Wisconsin Right to Life demonstrates that strict factual overlap between past and future events is not required before a controversy is found "capable of repetition, yet evading review." Id. Moreover, the Court's opinion in Storer shows that controversies arising during a specific election are not mooted simply because the election has concluded before a judicial decision can be rendered. See Storer, 415 U.S. at 737 n. 8. These observations likely account for one inescapable characteristic of democratic elections; they arise within a limited timeframe and evolve with the issues of the moment, such that the details of each election are seldom repeated. But even with this clarification, Plaintiff cannot completely overcome the mootness problem posed by his declaratory relief claim.

This is because under Wisconsin Right to Life, Storer, and the other cases cited by Plaintiff, the complaining party must still show a reasonable likelihood of personal re-exposure to the challenged illegality. In Wisconsin Right to Life, the plaintiff below "credibly claimed" that it planned on running ads in future elections substantially similar to the ones blocked by statute during a completed election cycle. Similarly, in Storer, Mandel v. Bradley, 432 U.S. 173 (1977), and Anderson v. Celebrezze, 460 U.S. 780 (1983), the independent candidates challenging state laws could again find themselves barred from ballot position in the next election based on the same restrictions underlying their respective legal actions. Furthermore, the indigent party who sought office in Brown v. Chote, 411 U.S. 452 (1973), could again be precluded from the ballot

Case No.: 5:16-cv-07069-EJD
ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS
10

for failure to pay a candidate filing fee. And the facts of North Carolina Right to Life Committee Fund for Independent Political Expenditures v. Leake, 524 F.3d 427 (4th Cir. 2008), are no different. There, the Fourth Circuit easily found "a reasonable expectation" that the challenged provisions of North Carolina's judicial campaign finance law "will be applied against the plaintiffs again during future election cycles."

In contrast, the FAC's allegations do not establish a reasonable likelihood that Plaintiff will face the same or similar dilemma in future elections. In order for Plaintiff to be subjected to an "illegality" or "threat of prosecution" comparable to the one he experienced in 2016, at least four critical events need to occur. First, Plaintiff would need to be re-elected as an elector for the California Democratic Party. Second, the outcome of the 2020 Presidential Election would have to position the current President, or a Republican candidate like the current President, as the expected winner of the Electoral College. Third, Plaintiff would have to object to the expected winner of the Electoral College in the same way he objected to Trump. Fourth, the Democratic candidate would have to win the popular vote in California.

These contingencies, none of which are within Plaintiff's control, render this case distinguishable from elections cases like Wisconsin Right to Life and Storer. Unlike the plaintiffs in those actions, Plaintiff is not exposed to potential consequences under Elections Code §§ 6906 and 18002 simply by declaring candidacy for office or running a political ad. Instead, a cascade of unpredictable developments - each with their own internal sets of possibilities - must align in a particular order before Plaintiff can again be compelled to vote as required by § 6906 and be exposed to potential criminal penalties under § 18002. But as noted, it is unknown whether Plaintiff will serve as an elector in 2020, unknown who will be the Republican candidate for President, unknown which candidate will be expected to win the Electoral College, and unknown which party's candidate will win the California popular vote. Therefore, the allegation that Plaintiff will be eligible to serve as a Presidential Elector in 2020 is not enough. See Sample v. Johnson, 771 F.2d 1335, 1340 (9th Cir. 1985) ("The likelihood of the injury recurring must be calculable and if there is no basis for predicting that any future repetition would affect the present

plaintiffs, there is no case or controversy.").

Accordingly, Plaintiff has not satisfied his burden to place the declaratory relief claim within the exception to mootness for conduct "capable of repetition, yet evading review." See id. at 1342 (holding the burden for showing the likelihood of recurrence is "firmly on the plaintiff"). The claim (the first cause of action) must be dismissed as moot without leave to amend as to 2016 Presidential Election, because there are no additional allegations that could make out a live controversy.

### B.  Standing

#### i.  General Principles

The constitutional standing doctrine "functions to ensure, among other things, that the scarce resources of the federal courts are devoted to those disputes in which the parties have a concrete stake." Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc., 528 U.S. 167, 191 (2000).

Generally, the inquiry critical to determining the existence of standing under Article III of the Constitution is "'whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues.'" Allen v. Wright, 468 U.S. 737, 750-51 (1984) (quoting Warth v. Seldin, 422 U.S. 490, 498 (1975)).  Three basic elements must be satisfied: (1) an "injury in fact," which is neither conjectural or hypothetical, (2) causation, such that a causal connection between the alleged injury and offensive conduct is established, and (3) redressability, or a likelihood that the injury will be redressed by a favorable decision. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992).

The party asserting federal jurisdiction must carry the burden of establishing standing under Article III. DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 341 (2006).  And a plaintiff must at the pleading stage "clearly . . . allege facts" demonstrating each of these elements. Warth, 422 U.S. at 518.

#### ii.  Application

Defendants argue Plaintiff lacks standing to assert claims for declaratory or injunctive

1  relief for future elections. The basis for this challenge mirrors the mootness argument, since
2  Defendants contend that Plaintiff cannot show an "injury in fact" due to "multiple layers of
3  speculation" about future events. Stated in terms of standing, this argument questions whether
4  Plaintiff has shown a "certainly impending" injury. Clapper v. Amnesty Int'l USA, 568 U.S. 398,
5  409 (2013). Plaintiff has not done so.

6  The Supreme Court has held that a claim is not "certainly impending" for standing
7  purposes if a "speculative chain of possibilities" must occur to establish an injury. Id. at 414;
8  accord Munns v. Kerry, 782 F.3d 402, 409 (9th Cir. 2015) ("Rather than requiring literal certainty,
9  the Court has sometimes framed the injury requirement as a 'substantial risk' that the harm will
10 occur."). Moreover, the Court has been reluctant "to endorse standing theories that rest on
11 speculation about the decisions of independent actors." Id.

12 Applying this rubric to the FAC, Plaintiff has not alleged a "certainly impending" injury
13 related to future elections. As explained above in the context of mootness, a "speculative chain of
14 possibilities" needs to occur before Plaintiff can be exposed to potential future injury from
15 Elections Code §§ 6906 and 18002, even if Plaintiff still qualifies to serve as a Presidential
16 Elector, and even assuming Plaintiff has alleged a personal rather than an official injury.
17 Furthermore, independent actors must make a litany of decisions in a certain way before Plaintiff's
18 standing emerges from being conjectural to becoming real. These actors include the thousands of
19 voters who make up the California electorate, who must ultimately decide to cast a majority of
20 ballots for the future Democratic candidate for President. The FAC's allegations, therefore, only
21 allege the possibility of a future injury that is insufficient to establish an injury in fact.

22 The court finds that Plaintiff lacks standing to pursue declaratory and injunctive relief for
23 future elections. The court also finds that Plaintiff cannot add plausible factual allegations to
24 make up for the list contingencies which prevent his claims from being "certainly impending."
25 Accordingly, the claims for declaratory and injunctive relief related to future elections (the first
26 and third causes of action) will be dismissed without leave to amend.

27

28 Case No.: 5:16-cv-07069-EJD
ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS
13

### C. Prosecutorial Immunity

#### i. General Principles

Prosecutorial actions that are "intimately associated with the judicial phase of the criminal process" are absolutely immunized from liability in § 1983 lawsuits. Van de Kamp v. Goldstein, 555 U.S. 335, 340-41 (2009) (quoting Imbler v. Pachtman, 424 U.S. 409, 430 (1976)). This immunity applies "when a prosecutor prepares to initiate a judicial proceeding, or appears in court to present evidence in support of a search a warrant application." Id. at 343 (internal citations omitted); Buckley v. Fitzsimmons, 509 U.S. 259, 273 (1993) ("[A]cts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity."). It also applies to a prosecutor's decision not to prosecute. Roe v. City & Cty. of San Francisco, 109 F.3d 578, 583 (9th Cir. 1997).

However, prosecutors are not entitled to absolute immunity for administrative or investigative functions. Id. Thus, "absolute immunity does not apply when a prosecutor gives advice to police during a criminal investigation, when the prosecutor makes statements to the press, or when a prosecutor acts as a complaining witness in support of a warrant application." Van de Kamp, 555 U.S. at 343 (internal citations omitted); Buckley v. Fitzsimmons, 509 U.S. at 273 ("A prosecutor's administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings are not entitled to absolute immunity.").

To determine whether an action was judicial, administrative, or investigative, court looks to the nature of the function performed, not the role of who performed it. Roe, 109 F.3d at 583.

#### ii. Application

In the FAC, Plaintiff asserts the Individual Capacity Defendants are liable for compensatory damages under § 1983 because they deprived him of constitutional rights as a Presidential Elector. Plaintiff alleges they did so by "failing and refusing to disclaim any intent to criminally prosecute" him under Elections Code §§ 6906 and 18002. FAC, at ¶¶ 72-75.

Case No.: 5:16-cv-07069-EJD
ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS
14

As Defendants point out, Plaintiff essentially seeks to impose liability on the Individual Capacity Defendants for declining to guarantee immunity from prosecution if Plaintiff voted for candidates other than Clinton and Kaine. Applying the functionality test, the court finds that a decision not to offer immunity from prosecution, or a refusal to disclaim an intent to prosecute, is intimately tied to the judicial process and to the prosecutor's role as an advocate; that is, a decision not to offer immunity under these circumstances is intertwined with the decision whether or not to charge an individual with a crime. That charging decision "may well be the most critical determination in the entire prosecutorial process." Roe, 109 F.3d at 583. Indeed, even Plaintiff recognizes the relationship between offers of immunity and charging decisions, since the allegation critical to his theory is couched in reference to potential criminal prosecution.

In opposition, Plaintiff recognizes that administrative and investigative functions fall outside the bounds of absolute immunity. But he fails to convincingly explain why the FAC's allegations describe those types of functions rather than describing conduct associated with the judicial phase of the criminal process. As such, the court is unable to characterize Plaintiff's allegations as embodying administrative or investigative functions.

Based on this discussion, the Individual Capacity Defendants are absolutely immune for refusing to disclaim an intent to prosecute Plaintiff under Elections Code §§ 6906 and 18002. The damages claim for violation of § 1983 (the second cause of action) will be dismissed without leave to amend because no additional facts could be pled to place this claim outside of the immunity bar.

### D. Qualified Immunity

#### i. General Principles

"The defense of qualified immunity protects 'government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Romero v. Kitsap Cty., 931 F.2d 624, 627 (9th Cir. 1991) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). It "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." Hunter v. Bryant, 502

U.S. 224, 229 (1991). The doctrine also "balance[s] two important, competing interests: the need to hold public officials accountable for irresponsible actions, and the need to shield them from liability when they make reasonable mistakes." Morales v. Fry, 873 F.3d 817, 822 (9th Cir. 2017). "Therefore, regardless of whether the constitutional violation occurred, the officer should prevail if the right asserted by the plaintiff was not 'clearly established' or the [official's] could have reasonably believed that his particular conduct was lawful." Romero, 931 F.2d at 627.

"Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." Ashcroft v. al-Kidd, 563 U.S. 731, 735 (2011). The district court has "discretion to decide which of the two prongs of qualified-immunity analysis to tackle first." Id. A failed showing of either prong results in immunity to the official. N.E.M. v. City of Salinas, No. 5:14-cv-05598-EJD, 2017 WL 5128008, at *6 (N.D. Cal. Nov. 6, 2017) (citing White v. Pauly, 137 S. Ct. 548, 551 (2017)).

### ii. Application

The Individual Capacity Defendants argue that even if prosecutorial immunity does not apply, they are nonetheless entitled to qualified immunity for the alleged decision to disclaim an intent to prosecute Plaintiff under Elections Code §§ 6906 and 18002. The court agrees.

For a constitutional right to be clearly established under the second prong of the qualified immunity analysis, "its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Maxwell v. Cty. of San Diego, 708 F.3d 1075, 1082 (9th Cir. 2013). Precedent in existence at the time of the alleged harm "must have placed the . . . constitutional question beyond debate." al-Kidd, 563 U.S. at 740. Absent controlling authority on a topic, there must exist a "robust consensus of cases of persuasive authority" to find a clearly-established right. Id. at 741-42.

Here, Plaintiff has not satisfied his burden to show the Individual Capacity Defendants violated a clearly-established right. See Romero, 931 F.2d at 627. To the extent Plaintiff suggests the unconstitutionality of Elections Code §§ 6906 and 18002 would have been obvious to any

official, or that rights were established under the Supremacy Clause, he fails to support these contentions with either controlling authority or a "robust consensus" of persuasive authority placing the constitutional question beyond debate. In any event, this court determined the contrary was true. In conjunction with Plaintiff's restraining order request, the court recognized the constitutionality of Elections Code §§ 6906 and 18002 was not settled, specifically observing that an analogous issue was left undecided by the Supreme Court's opinion in Ray v. Blair, 343 U.S. 214 (1952). Koller, 224 F. Supp. 3d at 878-79. The court also predicted it was "possible if not likely" the Supreme Court would apply the reasoning from Ray to find that state-imposed restrictions on Presidential Electors are constitutional. Id. at 879. For these reasons, this case is not one involving an "obvious" or "run-of-the-mill" violation of clearly-established rights. See S.B. v. Cty. of San Diego, 864 F.3d 1010, 1017 (9th Cir. 2017).

Furthermore, cases cited by Plaintiff involving specific forms of intimidation or coercion, such as United States v. Nguyen, 673 F.3d 1259 (9th Cir. 2012), United States v. McLeod, 385 F.3d 734 (5th Cir. 1967), Bantam Books v. Sullivan, 372 U.S. 58 (1963), and Dombrowski v. Pfister, 380 U.S. 479 (1965), are incapable of providing adequate notice to the Official Capacity Defendants under the FAC's allegations. Given their diverse facts, these cases do not place beyond debate the constitutionality of Elections Code §§ 6906 and 18002, even under a "specific factor" comparison. See Isayeva v. Sacramento Sheriff's Dep't, 872 F.3d 938, 947 (9th Cir. 2017).

Plaintiff's reliance on 18 U.S.C. § 594 is similarly misplaced. The text of that statute generally prohibits voter intimidation or coercion. But without case law demonstrating how § 594's general premise applies in the context of a state's regulation of Presidential Electors, the statute "is of little help in determining whether the violative nature of particular conduct is clearly established." al-Kidd, 563 U.S. at 742.

Finally, Elections Code § 18540 does not assist Plaintiff. To the extent he cites it as law prohibiting voter intimidation and coercion, it is subject to the same analysis as § 594. For anything more than that, § 18540 cannot sustain a § 1983 claim as a matter of law. See Moreland

v. Las Vegas Metro. Police Dep't, 159 F.3d 365, 371 (9th Cir. 1998) (holding that "state law violations do not, on their own, give rise to liability under § 1983"); see also Lovell v. Poway Unified Sch. Dist., 90 F.3d 367, 370-71 (9th Cir. 1996).

In sum, Plaintiff has not convincingly shown why it was clearly-established in 2016 that Elections Code §§ 6906 and 18002 were unconstitutional and could not be enforced. The Individual Capacity Defendants are therefore entitled to qualified immunity for their alleged failure to disclaim the intent to prosecute Plaintiff for a violation of those statutes. The damages claim for violation of § 1983 (the second cause of action) is subject to dismissal on this ground, without leave to amend, because no additional facts can alter the outcome of the legal analysis undertaken for the second prong of qualified immunity.

**IV.  ORDER**

Based on the foregoing, the Motions to Dismiss (Dkt. Nos. 87, 88, 94) are GRANTED, as follows.

1. The first and third causes of action are DISMISSED WITHOUT PREJUDICE but WITHOUT LEAVE TO AMEND. See Fleck & Assocs. v. City of Phoenix, 471 F.3d 1100, 1106-1107 (9th Cir. 2006) (holding that a dismissal for lack of standing is one for lack of subject matter jurisdiction, which should be without prejudice); see also Tur v. YouTube, Inc., 562 F.3d 1212, 1214 (9th Cir. 2009) (holding that a dismissal on mootness grounds is one for lack of jurisdiction); Hampton v. Pac. Inv. Mgmt. Co. LLC, 869 F.3d 844, 846 (9th Cir. 2017) ("Dismissals for lack of subject-matter jurisdiction . . . must be without prejudice, because a lack of jurisdiction deprives the dismissing court of any power to adjudicate the merits of the case.").

2. The second cause of action is also DISMISSED WITHOUT LEAVE TO AMEND, but WITH PREJUDICE. See Hampton, 869 F.3d at 846 ("Dismissals under Rule 12(b)(6) . . . are judgments on the merits."); see also Cmty. House, Inc. v. City of Boise, 623 F.3d 945, 965 (9th Cir. 2010) (holding that qualified immunity is an immunity from suit rather than a defense to liability).

All other matters and TERMINATED and VACATED.

Judgment will be entered in favor of Defendants, and the Clerk shall close this file.

**IT IS SO ORDERED.**

Dated: April 20, 2018

                                       EDWARD J. DAVILA
                                       United States District Judge